IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| NEBRASKA PUBLIC POWER DISTRICT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 01-116C |
| v. | ) | (Judge Sypolt) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

Pursuant to this Court's order dated October 14, 2004, defendant, the United States, respectfully submits this response to plaintiff's response to the Court's October 14, 2004 order to show cause.

DISCUSSION

I. WITH ALL DUE RESPECT, WE HAVE BEEN UNABLE TO IDENTIFY A BASIS UPON WHICH TO QUESTION THE SOLICITOR GENERAL'S PAST ANALYSIS REGARDING THE APPROPRIATE FORUM FOR CONTRACT-BASED CLAIMS ARISING UNDER THE STANDARD CONTRACT

In its October 14, 2004 order, this Court requested that the plaintiffs in this and three other spent nuclear fuel ("SNF") cases show cause as to "why their claims based on defendant's alleged breach of a contract to begin to dispose of SNF before the date set out at Section 302(a)(5)(B) of the" Nuclear Waste Policy Act ("NWPA"), 42 U.S.C. 10101-10270, "should not be dismissed for lack of jurisdiction or transferred to a federal circuit court of appeals with original and exclusive jurisdiction to hear challenges to the Department of Energy's ("DOE") purported actions or failures to act in conformity with the statute." Order, at 36 (Oct. 14, 2004). The basis of the Court's order for the plaintiffs to show cause was its preliminary analysis that, "although the Act clearly contemplates a 'contract,' it just as clearly did not provide for review of that contract in the usual forum, the Court of Federal Claims." Order, at 10. The Court indicated

its preliminary view that the judicial review provisions of the NWPA, which are set forth at 42 U.S.C. 10139, provide for original and exclusive jurisdiction in the Federal circuit courts of appeals of any challenge to the Secretary of Energy's action or failure to take an action required by the NWPA and that this exclusive jurisdiction includes actions under the contract mandated by 42 U.S.C. 10222(a)(5). Id.

In response to the Court's October 14, 2004 order, the plaintiffs have made various arguments objecting to the Court's show cause order that lack merit. The plaintiffs argue that, because the United States Court of Appeals for the District of Columbia Circuit has already determined that this Court possesses jurisdiction to entertain damages suits arising from the contracts mandated by the NWPA, this Court has jurisdiction to entertain such actions. Pl. Resp. 19. Yet, this Court is not bound by decisions of the D.C. Circuit, precluding the plaintiffs' argument.

The plaintiffs also argue that, because each of them joined in the petition for review that was submitted to the D.C. Circuit in Northern States Power Co. v. Department of Energy, 128 F.3d 754 (D.C. Cir. 1997), and two of them joined in the petition in Alabama Power Co. v. United States Department of Energy, 307 F.3d 1300 (11th Cir. 2002), this Court is barred from revisiting the issue of jurisdiction. Pl. Resp. 19. However, neither the D.C. Circuit in Northern States nor the 11th Circuit in Alabama Power decided that jurisdiction was proper in this Court, precluding the res judicata argument that the plaintiffs attempt to raise. Further, even if the appellate courts had made such a decision in Northern States or Alabama Power, those courts can decide whether they possess jurisdiction to entertain a claim, but they cannot conclusively decide that this Court possesses such jurisdiction. See Order, at 23 (Oct. 14, 2004) (citing United States

v. Cook County, 170 F.3d 1084, 1091-92 (Fed. Cir. 1999); see also Christianson v. Colt Industries, 486 U.S. 800, 815-818 (1988); Amen v. City of Dearborn, 718 F.2d 789, 793-94 (6th Cir. 1983), *cert. denied*, 465 U.S. 1101 (1984). Accordingly, the plaintiffs' assertions that the Court is barred by res judicata from considering its own jurisdiction is incorrect.

Nevertheless, after evaluating the Court's show cause order and the positions that the Solicitor General has taken in past litigation under the NWPA, and with all due respect, we cannot identify a basis upon which to modify the Federal Government's past positions regarding the proper forum for review of contractual claims arising under the Standard Contract. We understand the basis upon which the Court, in its show cause order, has preliminarily determined that jurisdiction to review claims arising under the contract mandated by 42 U.S.C. 10222(a)(5) "arise under" the NWPA. We agree that, because section 302(a)(5) of the NWPA mandates that the Secretary enter into contracts with the owners and generators of SNF and mandates that certain terms be included in those contracts, challenges to the terms of the contracts themselves (and challenges to the absence of specific terms that nuclear utilities might have wanted to include in the contracts) had to be presented to a Federal circuit court of appeals within 180 days of the promulgation of those terms. Further, we agree that current challenges to actual terms of the Standard Contract – and nuclear utility plaintiffs' attempts to add terms to the Standard Contract long after the contract's promulgation – are wholly untimely and inappropriate. However, we have no basis for departing from the Solicitor General's prior analyses -- presented in his opposition to a petition for certiorari in Consolidated Edison Co. of New York v. Department of Energy, No. 98-1358 (D.C. Cir. Apr. 16, 1999) *respondent's opposition to petition for cert. filed,* 2000 WL 34005420 (U.S. Feb. 2000), *cert. denied* 529 U.S. 1003 (U.S. Mar. 6,

2000) (No.99-766), and in his petition for certiorari in United States v. Northern States Power Company. 128 F.3d 754 (D.C. Cir. 1997), *petition for cert. filed*, (U.S. Sept. 1998), *cert. denied* 525 U.S. 1016 (U.S. Nov. 30, 1998) (No. 98-384)[1] -- in which he determined that challenges to the Secretary's failure to act in accordance with the express terms of the promulgated and executed contracts were not reviewable under the NWPA but, instead, were properly presented to this Court under the Tucker Act. In light of the Solicitor General's position presented to the Supreme Court, and with all due respect, we cannot support the Court's preliminary view that jurisdiction to entertain challenges to DOE's actions under the Standard Contract belong in the Federal circuit courts of appeal, rather than this Court.

## II. THIS COURT SHOULD DETERMINE WHETHER DOE MAY INVOKE THE "UNAVOIDABLE DELAYS" PROVISION OF THE STANDARD CONTRACT

We believe that this Court properly possesses jurisdiction to revisit an issue that the plaintiffs believe was conclusively resolved in Northern States Power Co. v. Department of Energy, 128 F.3d 754 (D.C. Cir. 1997). As mentioned above, the Government consistently has taken the position that the Court of Federal Claims has the exclusive jurisdiction to resolve issues concerning the construction and administration of the Standard Contract. Indeed, it is for this very reason that this Court can, and should, notwithstanding the D.C. Circuit's decision in Northern States Power, resolve the issue of whether DOE may properly invoke the "unavoidable delay" provision of the Standard Contract.

After the D.C. Circuit's decision in Indiana Michigan Power Co. v. Department of Energy, 88 F.3d 1272 (D.C. Cir. 1996), DOE determined, in response to comments received by

[1]The relevant portions of these pleadings are attached to this filing.

contract holders regarding the anticipated delay in building a permanent geological repository or interim storage facility, that pursuant to Article IX of the Standard Contract, DOE was "not obligated to provide a financial remedy for the delay" because the delay was unavoidable. Northern States at 757.

In Northern States, various utilities and state agencies sought a writ of mandamus from the D.C. Circuit requiring DOE to comply with the Court's previous decision in Indiana Michigan, and begin disposal of spent nuclear fuel by the January 31, 1998 statutory deadline contained in the NWPA. 42 U.S.C. 10222(a)(5)(B).

The D.C. Circuit denied the writ in part, concluding that the Standard Contract provides a "potentially adequate remedy if DOE fails to fulfill its obligations" by January 31, 1998. Id. at 756. However, the D.C. Circuit granted petitioners' writ in part, precluding DOE from relying upon the "unavoidable delays" provision of the Standard Contract to excuse its delay on the grounds that DOE had not yet built a federal repository or interim storage facility. Id.

DOE filed a petition for rehearing, contending that the D.C. Circuit lacked jurisdiction to determine the applicability of the "unavoidable delays" provision of the Standard Contract. DOE explained in the rehearing petition that questions concerning the construction and administration of the Standard Contract are entrusted to the Court of Federal Claims. The D.C. Circuit denied DOE's motion for rehearing, concluding that:

> The DOE . . . suggest[s] that this Court has erroneously designated itself as the proper forum for adjudication of disputes arising under the Standard Contract. As the above should make clear, we did not; we merely prohibited the DOE from implementing an interpretation that would place it in violation of its duty under the NWPA to assume an unconditional obligation to begin disposal by January 31, 1998. The statutory duty to include an unconditional

> obligation in the contract is independent of any rights under the contract. The Tucker Act does not prevent us from exercising jurisdiction over an action to enforce compliance with the NWPA.

Northern States Power Co. v. United States Dep't of Energy, No. 97-1064, 98-1069, 98-1070, 97-1065, 97-1370, 97-1398, 1998 WL 276581 (D.C. Cir. May 5, 1998).

DOE filed a petition for certiorari to the United States Supreme Court, contending that the D.C. Circuit's decision intruded upon the exclusive jurisdiction of the Court of Federal Claims, and that by determining that DOE could not invoke the "unavoidable delays" provision of the Standard Contract, had pretermitted the orderly disposition of a contract dispute that could have potentially great consequences both the for the liability of the United States and for the continued economic viability of nuclear generating facilities.[2] The Supreme Court denied DOE's certiorari petition. Department of Energy v. Northern States Power Co., 525 U.S. 1016 (1998).

To the extent that the D.C. Circuit lacked jurisdiction to determine the applicability of the "unavoidable delays" clause of the Standard Contract, the D.C. Circuit's decision does not have preclusive effect and, consequently, this Court may determine the applicability of this contractual provision in the first instance. Christopher Village v. United States, 360 F.3d 1319 (Fed. Cir. 2004). In Christopher Village, owners of federally subsidized low-income housing sought a writ of mandamus and injunctive and declaratory relief under the Administrative Procedures Act ("APA") in the United States District Court for the Southern District of Texas, contending that the Department of Housing and Urban Development ("HUD") had illegally demanded $2 million in escrow and illegally refused to consider its request for a rent increase. Id. at 1323. The

[2]Many of the anomalies described by this Court in its show cause order would be resolved if this Court determined the DOE could invoke the "unavoidable delays" provision.

plaintiffs also sought a declaratory judgment that their obligation to maintain the property was contingent upon receiving adequate rent revenue. Id. The district court granted summary judgment in HUD's favor, and plaintiffs appealed. Id.

While the case was pending in the United States Court of Appeals for the Fifth Circuit, HUD sold the property in a foreclosure sale, mooting the basis for the APA action. Id. The Fifth Circuit held that although the foreclosure sale mooted the request for an injunction and mandamus relief, the request for a declaratory judgment was a live dispute because the plaintiffs "could use the declaration as a predicate for a damages action against HUD in the Court of Federal Claims." Id. at 1324. On the merits, the Fifth Circuit reversed the district court's grant of summary judgment and held that the Government had breached its obligations to the plaintiffs. Id.

The plaintiffs subsequently filed a breach of contract action in the Court of Federal Claims, contending that they were entitled to a finding of liability against HUD as a matter of law because the Fifth Circuit's ruling barred the Government from relitigating the issue of breach of contract. Id. However, while the breach of contract action was pending in the Court of Federal Claims, collateral criminal litigation involving one of the plaintiffs was settled in the United States District Court of the Northern District of California. Id. at 1325. The result of the settlement was that it established that plaintiffs had breached their obligation to HUD. Id. The Court of Federal Claims rejected plaintiffs' contention that it was bound by the Fifth Circuit's decision, explaining that the Fifth Circuit lacked jurisdiction to determine contract liability, and further because the criminal plea had not been before the Fifth Circuit, the issue of prior material breach had not been decided by the Fifth Circuit. Id. at 1326. Consequently, the Court of Federal

Claims granted the Government's motion for summary judgment, concluding that the plea agreement evidenced a prior material breach by plaintiffs, thereby excusing HUD of any liability for a later breach that HUD may have committed. Id.

On appeal to the Federal Circuit, the plaintiffs contended that the Fifth Circuit's determination that HUD had breached its obligations was res judicata and collateral estoppel. Id. The Federal Circuit rejected this argument and concluded that the Fifth Circuit's decision should not be given preclusive effect, because the Fifth Circuit lacked jurisdiction when it rendered its decision. Id. at 1328. The Federal Circuit acknowledged that the district court properly had jurisdiction to adjudicate the APA challenge, but, once HUD had sold the subject property, the sole remaining claim was in essence one for monetary damages. Id. at 1327. Therefore, the Fifth Circuit lacked jurisdiction to award relief and the appeal should have been dismissed. The Federal Circuit explained:

> [T]he fact that a court did not have jurisdiction over a suit in which it issued a decision does not automatically strip that decision of preclusive effect. In most circumstances a judgment may not be collaterally attacked on the ground that the original tribunal lacked subject matter jurisdiction, even if the issue of subject matter jurisdiction has not been litigated in the first action . . . The Restatement similarly notes that a court's "judgment precludes the parties from litigating the question of the court's subject matter jurisdiction" on collateral review. The Restatement, however, also recognizes exceptions to this rule, including when "[a]llowing the judgment to stand would substantially infringe the authority of another tribunal or agency of the government."

Id. at 1329-30 (citations omitted) (emphasis added).

The Federal Circuit concluded that the Fifth Circuit's ruling "did not merely exceed the court's jurisdiction, it 'directly implicat[ed] issues of sovereign immunity' and is therefore void."

Id. at 1333. Consequently, the Federal Circuit held that the Fifth Circuit's decision was not entitled to preclusive effect. Id.

Similarly, should this Court conclude that it properly possesses jurisdiction to resolve issues concerning the administration and construction of the Standard Contract, we respectfully request that the Court consider whether the "unavoidable delays" provision has applicability under these circumstances. As in Christopher Village, in which the Fifth Circuit's decision was not afforded preclusive effect because it lacked jurisdiction, the D.C. Circuit in Northern States lacked jurisdiction when it held that DOE could not invoke the "unavoidable delays" provision of the Standard Contract. Indeed, the D.C. Circuit's ruling directly implicates the issue of sovereign immunity, as the Court of Federal Claims has the exclusive jurisdiction to resolve claims of money damages against the Government. Accordingly, the D.C. Circuit's decision need not be given preclusive effect, and this Court properly may determine whether DOE may invoke the "unavoidable delays" provision of the Standard Contact.

## CONCLUSION

For the foregoing reasons, we respectfully believe that the Court can resolve the jurisdictional issues in this case including properly determining those issues related to the contractual claims arising under the Standard Contract.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
Department of Energy
1000 Independence Avenue, S.W.
Washington, D.C. 20585

s/Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/Heide L. Herrmann
HEIDE L. HERRMAN
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 514-4325
Fax: (202) 307-2503

January 4, 2005

Attorneys for Defendant

CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of January 2005, a copy of foregoing response to the Court's October 14, 2004 Order, was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/Stephen Finn

No. 99-766

# In the Supreme Court of the United States

CONSOLIDATED EDISON COMPANY OF NEW YORK, ET AL., PETITIONERS

*v.*

UNITED STATES DEPARTMENT OF ENERGY, ET AL.

*ON PETITION FOR A WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT*

## BRIEF FOR THE RESPONDENTS IN OPPOSITION

SETH P. WAXMAN
*Solicitor General*
*Counsel of Record*

LOIS J. SCHIFFER
*Assistant Attorney General*

JOHN A. BRYSON
*Attorney*

*Department of Justice*
*Washington, D.C. 20530-0001*
*(202) 514-2217*

review filed in this case was premised on a contrary view of the law, the court of appeals correctly held that its prior judgment—which rested on the contrary premise as the foundation for its holding—barred petitioners' claims.

3. Petitioners also contend (Pet. 19-25) that the court of appeals erred in declining to exercise jurisdiction over the contract claims asserted in their complaint. They argue (Pet. 19) that "[w]hen Congress granted 'original and exclusive' jurisdiction to the courts of appeals [in 42 U.S.C. 10139(a)(1)], it divested any other court, including the United States Court of Federal Claims, of jurisdiction over any action under the NWPA, including actions for breach of the statutory contract alleged in the complaint." That argument is without merit.

In its order denying rehearing in *Northern States*, the court of appeals recognized that its jurisdiction under 42 U.S.C. 10139 does not extend to claims for breach of the Standard Contract. Pet. App. 22c-23c. The court explained that while the NWPA requires the inclusion of certain terms within the Standard Contract, the Act "does not itself require performance. Breach by the DOE does not violate a statutory duty; thus, our jurisdiction to hear allegations of failure to take an action required under the NWPA, see 42 U.S.C. § 1[0]139(a)(1)(B), does not provide a basis for a move-fuel order." *Id.* at 23c.[4]

[4] In the concluding paragraph of its order denying rehearing in *Northern States*, the court of appeals reiterated its understanding that its jurisdiction is limited to claims of NWPA violations and does not extend to disputes arising under the Standard Contract. Pet. App. 23c-24c. There is simply no basis for petitioners' contention (Pet. 20) that "in all ongoing proceedings, one issue remains unaddressed: whether the D.C. Circuit has 'original and exclusive'

The NWPA's judicial review provision vests the courts of appeals with "original and exclusive" jurisdiction over specified categories of suits (see 42 U.S.C. 10139(a)(1)(A)-(F)), not over every challenge to DOE's implementation of the nuclear waste program. Nothing in Section 10139 suggests that the courts of appeals are authorized to entertain contractual claims. Any ambiguity in Section 10139(a)(1) should be resolved, moreover, in light of the settled background rule that "[t]he sole remedy for an alleged breach of contract by the federal government is a claim for money damages, either in the United States Claims Court [now the Court of Federal Claims] under the Tucker Act, * * * or, if damages of no more than $10,000 are sought, in district court under the Little Tucker Act." *Sharp* v. *Weinberger*, 798 F.2d 1521, 1523 (D.C. Cir. 1986) (Scalia, J.). Accord, *e.g.*, *Transohio Sav. Bank* v. *Director, OTS*, 967 F.2d 598, 609-610 (D.C. Cir. 1992); *Megapulse, Inc.* v. *Lewis*, 672 F.2d 959, 967 (D.C. Cir. 1982).[6]

Petitioners also contend (Pet. 21-25) that review of contract claims in the court of appeals is necessary in order to ensure that the NWPA is administered in the

---

jurisdiction over claims for breach of the statutory contract under 42 U.S.C. § 10139."

[6] If (as petitioners contend) suits for breach of the Standard Contract fall within the "original and exclusive" jurisdiction of the courts of appeals under 42 U.S.C. 10139(a), it necessarily follows that such actions may not be brought in the Court of Federal Claims. Because it is "a cardinal principle of statutory construction that repeals by implication are not favored," *Radzanower* v. *Touche Ross & Co.*, 426 U.S. 148, 154 (1976), Section 10139(a)—which contains no express reference to contract actions—should not be construed to divest the Court of Federal Claims of its jurisdiction over this category of contract suits against the federal government.

manner that Congress intended. In enacting the NWPA, however, Congress chose not to impose upon DOE a freestanding statutory obligation to accept SNF by a particular date. Rather, Congress directed DOE to enter into contracts containing specified provisions, see 42 U.S.C. 10222(a)(5), and expressly authorized DOE to establish additional contractual terms, 42 U.S.C. 10222(a)(6). In choosing that means of achieving the statutory objectives, Congress must be presumed to have intended that disputes regarding the precise nature of the parties' obligations, and the remedies for any breach thereof, would be resolved in the manner appropriate for contract claims.

## CONCLUSION

The petition for a writ of certiorari should be denied.

Respectfully submitted.

SETH P. WAXMAN
*Solicitor General*

LOIS J. SCHIFFER
*Assistant Attorney General*

JOHN A. BRYSON
*Attorney*

FEBRUARY 2000

No. 98-384

# In the Supreme Court of the United States

OCTOBER TERM, 1997

UNITED STATES OF AMERICA, ET AL., PETITIONERS

*v.*

NORTHERN STATES POWER COMPANY, ET AL.

*ON PETITION FOR A WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE DISTRICT OF COLUMBIA CIRCUIT*

## PETITION FOR A WRIT OF CERTIORARI

SETH P. WAXMAN
*Solicitor General*
*Counsel of Record*

LOIS J. SCHIFFER
*Assistant Attorney General*

LAWRENCE G. WALLACE
*Deputy Solicitor General*

MALCOLM L. STEWART
*Assistant to the Solicitor General*

JOHN A. BRYSON
*Attorney*

*Department of Justice*
*Washington, D.C. 20530-0001*
*(202) 514-2217*

January 31, 1998," and it specifically "preclude[d] DOE from concluding that its delay is unavoidable on the ground that it has not yet prepared a permanent repository or that it has no authority to provide storage in the interim." *Id.* at 13a.[6]

6. DOE filed a petition for rehearing, arguing that the court of appeals lacked jurisdiction to determine the applicability of the "unavoidable delays" provision of the Standard Contract to disputes between DOE and the utilities. App., *infra,* 18a-19a. DOE's rehearing petition explained that questions concerning the construction and administration of the Standard Contract are entrusted to the Court of Federal Claims, which exercises exclusive jurisdiction under the Tucker Act, 28 U.S.C. 1491 (1994 & Supp. II 1996), over any damage action founded on a contract with the United States. One of the utilities, Yankee Atomic Company (Yankee), also filed a rehearing petition; the remaining utilities and the States that were parties to the case filed motions to enforce or expand the mandate.[7] App., *infra,* 15a-19a.

---

[6] The court further stated: "This necessarily means, of course, that DOE not implement any interpretation of the Standard Contract that excuses its failure to perform on the grounds of 'acts of Government in either its sovereign or contractual capacity'." Pet. App. 13a (quoting Article IX.A of the Standard Contract, 10 C.F.R. 961.11). It held on that basis that "this provision in the Standard Contract, insofar as it is applied to DOE's failure to perform by 1998, is inconsistent with DOE's statutory obligation to assume an unconditional duty." *Id.* at 14a.

[7] Yankee argued that the remedy of adjustment of fees under the "[a]voidable delays" provision was inadequate as applied to Yankee because that utility had ceased nuclear power generation and was no longer paying the fee. Yankee requested the court to order DOE to begin moving Yankee's spent fuel off its site. The States and remaining utilities contended that the equitable

> not; we merely prohibited the DOE from implementing an interpretation that would place it in violation of its duty under the NWPA to assume an unconditional obligation to begin disposal by January 31, 1998. The statutory duty to include an unconditional obligation in the contract is independent of any rights under the contract. The Tucker Act does not prevent us from exercising jurisdiction over an action to enforce compliance with the NWPA.

App., *infra*, 18a-19a.

To date, only one party to the Standard Contract (the Wisconsin Electric Power Company) has filed with DOE a request for equitable adjustment of the fees under the avoidable delays provision. Eleven utilities have filed suits in the Court of Federal Claims, seeking damages ranging from $70 million to $1.5 billion. Other utilities have again sought relief in the D.C. Circuit. In addition, the States and state regulatory commissions that are parties to this case have filed a petition for a writ of certiorari from the judgment and orders below. See *State of Michigan* v. *Dep't of Energy*, No. 98-225.

## REASONS FOR GRANTING THE PETITION

The court of appeals has issued a writ of mandamus prohibiting the DOE from treating its delay in accepting SNF as "[u]navoidable" within the meaning of the *force majeure* clause of the Standard Contract (10 C.F.R. 961.11) between the Department of Energy and utilities that own and generate such fuel. The court's decision intrudes upon the jurisdiction of the Court of Federal Claims—the tribunal vested with exclusive authority to adjudicate contract claims against the United States. Moreover, in dictating the appropriate resolution of an issue that is reserved for administra-

tive processes prescribed by the contract, and that is ultimately entrusted to another court, the court of appeals has pretermitted the orderly disposition of a contractual dispute that has potentially great consequences both for the liability of the United States and for the continued economic viability of nuclear generating facilities. Review by this Court is warranted both to restore the proper division of jurisdiction in contract cases between the regional courts of appeals and the Court of Federal Claims, and to prevent disruption of an important national program.

1. It is well established that "[t]he sole remedy for an alleged breach of contract by the federal government is a claim for money damages, either in the United States Claims Court under the Tucker Act, 28 U.S.C. § 1491(a)(1) (1982), or, if damages of no more than $10,000 are sought, in district court under the Little Tucker Act, 28 U.S.C. § 1346(a)(2) (1982)." *Sharp* v. *Weinberger*, 798 F.2d 1521, 1523 (D.C. Cir. 1986) (Scalia, J.). Accord, *e.g.*, *Transohio Savings Bank* v. *Director, OTS*, 967 F.2d 598, 609-610 (D.C. Cir. 1992); *Megapulse, Inc.* v. *Lewis*, 672 F.2d 959, 967 (D.C. Cir. 1982). The court of appeals' authority to review "any final decision or action of the Secretary" of Energy *under the NWPA*, 42 U.S.C. 10139(a)(1)(A), does not extend to a contracting party's claim that the Secretary has violated its rights *under the contract*.[8]

---

[8] Section 119(a), 5 U.S.C. 10139(a), is a grant of subject matter jurisdiction, and litigants invoking that provision must also identify an appropriate waiver of sovereign immunity. See *General Elec. Uranium Management Corp.* v. *U.S. Dep't of Energy*, 764 F.2d 896, 900-904 (D.C. Cir. 1985) (characterizing Section 119 as addressing subject matter jurisdiction); *Wisconsin Elec. Power Co. v. Department of Energy*, 778 F.2d 1, 2-3 (D.C. Cir. 1985) (applying *General Electric Uranium*). The only waiver of sovereign

The court of appeals purported to accept that restriction on its authority, stating (in its order on denial of rehearing) that its grant of mandamus relief in *Northern States* "does not place the question of contract remedies in this court." App., *infra,* 18a. Its decision in this case, however, cannot be reconciled with that jurisdictional limit. The court expressly "preclude[d] DOE from concluding that its delay is unavoidable on the ground that it has not yet prepared a permanent repository or that it has no authority to provide storage in the interim." App., *infra,* 13a. The words "avoidable" and "unavoidable," however, do not appear in the NWPA itself, but only in the Standard Contract. The court of appeals' determination that DOE's delay must be treated as "avoidable" thus goes directly, and exclusively, to the manner in which the Standard Contract is construed and its remedial provisions implemented. Indeed, the writ of mandamus issued by the court in *Northern States* is on its face a directive to DOE regarding the interpretation and administration of the

---

immunity potentially applicable here is that found in the Administrative Procedure Act (APA), 5 U.S.C. 702. However, parties may not obtain judicial review under the APA "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U.S.C. 702. The Tucker Act, 28 U.S.C. 1491 (1994 & Supp. II 1996), provides a damages remedy for actions founded on a contract with the United States and impliedly forbids any other type of relief on the contract in any other court. See *Sharp*, 798 F.2d at 1523 ("The waiver of sovereign immunity in the Administrative Procedure Act does not run to actions seeking declaratory relief or specific performance in contract cases, because that waiver is by its terms inapplicable if 'any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought,' 5 U.S.C. § 702, and the Tucker Act and Little Tucker Act impliedly forbid such relief."); *Transohio*, 967 F.2d at 609.

Standard Contract. See, *e.g.*, App., *infra,* 11a ("DOE's current approach toward contractual remedies violates our directives in *Indiana Michigan*"). The court of appeals erred in resolving an issue of contract interpretation that is reserved, following administrative consideration of the claims by DOE, for the exclusive jurisdiction of the Court of Federal Claims.

2. The court of appeals concluded that mandamus relief was appropriate "because DOE has not abided by our prior conclusion that the NWPA imposes an unconditional obligation on the Department to begin disposal of the SNF by January 31, 1998." App., *infra,* 14a; see also *id.* at 19a (order on denial of rehearing) (characterizing prior opinion as "prohibit[ing] the DOE from implementing an interpretation that would place it in violation of its duty under the NWPA to assume an unconditional obligation to begin disposal by January 31, 1998."). The court thus treated the writ of mandamus as a means of "compel[ling] DOE to comply with our prior mandate in *Indiana Michigan.*" *Id.* at 11a. That conclusion is flawed in two distinct respects.[9]

---

[9] The analysis that follows assumes that the court of appeals in *Indiana Michigan* properly exercised jurisdiction, pursuant to 42 U.S.C. 10139, when it held that DOE's obligation to accept SNF in January 1998 was not contingent on the existence of a suitable disposal facility. In light of the court of appeals' subsequent opinions, however, that premise is open to substantial doubt. The court in *Indiana Michigan* held that "section 302(a)(5)(B) [42 U.S.C. 10222(a)(5)(B)] creates an obligation in DOE, reciprocal to the utilities' obligation to pay, to start disposing of the SNF no later than January 31, 1998." App., *infra,* 38a. The court has since recognized, however, that its initial formulation was not accurate. In its order on denial of rehearing, the court acknowledged that "[w]hile the [NWPA] requires the DOE to include an unconditional obligation in the Standard Contract, it does not itself require performance. Breach by the DOE does not violate a statutory duty." *Id.* at

A. Except in extraordinary circumstances not applicable here, mandamus is unavailable "as a mode of review where a statutory method of appeal has been prescribed." *Roche* v. *Evaporated Milk Ass'n*, 319 U.S. 21, 27-28 (1943); see also *In re Sindram*, 498 U.S. 177, 179 (1991) (per curiam); *In re Ojeda Rios*, 863 F.2d 202 (2d Cir. 1988). Moreover, a mandamus order is appropriately issued under the All Writs Act, 28 U.S.C. 1651(a), only when the case that it affects is "one that may lie within the prospective future jurisdiction of the court of appeals, or that has in fact come within its jurisdiction in the past." 16 C. Wright et al., *Federal Practice and Procedure* § 3932, at 471 (1996); see also *id.* at 477 ("a court of appeals could not issue a writ to a district court sitting in another circuit, nor to any other tribunal properly reviewable only in another circuit"); *Ojeda Rios*, 863 F.2d at 204-205; *Telecommunications Research and Action Ctr.* v. *FCC*, 750 F.2d 70, 77-78 (D.C. Cir. 1984).

As we explain above, following administrative consideration by DOE, adjudication of claims arising under

---

18a. Because DOE's obligation to accept SNF by January 31, 1998, is contractual rather than statutory, the nature (conditional or unconditional) of that obligation is at bottom a question of contract interpretation—a matter that lies outside the jurisdiction of the court of appeals.

If the court of appeals had not previously issued its decision in *Indiana Michigan*, it is altogether clear that the Contracting Officer's preliminary determination regarding the "unavoidable" character of DOE's delay in performance would not have been subject to review under 42 U.S.C. 10139. That is so not only because the Contracting Officer's determination was one of contract construction, but also because her preliminary determination was subject to further review within the agency and therefore was not a "final decision or action of the Secretary." 42 U.S.C. 10139(a)(1)(A).

the Standard Contract is solely entrusted to the Court of Federal Claims, and thus is subject to appellate review in the Federal Circuit. See 28 U.S.C. 1295(a)(3) (Federal Circuit has exclusive jurisdiction over "an appeal from a final decision of the United States Court of Federal Claims"). There is consequently no prospect that the D.C. Circuit will be called upon to resolve any future dispute that may arise concerning the proper interpretation of the Delays Clause (Art. IX, 10 C.F.R. 961.11) of the Standard Contract. Because any suit arising under the Standard Contract will be "properly reviewable only in another circuit," Wright, *supra*, at 477, the court of appeals exceeded its authority in directing DOE not to treat the delay as "unavoidable" in implementing the contract's remedial provisions.[10]

---

[10] The government's petition for a writ of certiorari in *FCC* v. *Iowa Utilities Board, et al.*, No. 97-1519, raises a similar issue. In that case, the court of appeals for the Eighth Circuit issued a writ of mandamus declaring invalid a Federal Communications Commission (FCC) order. The Eighth Circuit acknowledged that direct review of the FCC order in question fell within the exclusive jurisdiction of the D.C. Circuit, but concluded that mandamus relief was justified as a means of enforcing its mandate entered in a prior review proceeding concerning a separate agency order. The government's petition for certiorari argues, *inter alia*, that the Eighth Circuit exceeded its authority by issuing a writ of mandamus, and that the mandamus order subverts Congress's decision to consolidate judicial review of a defined class of FCC actions in the D.C. Circuit. See 97-1519 Pet. 24-27; 97-1519 Reply Br. 7-9. The government's petition in No. 97-1519 is currently pending before this Court.

The fact that the D.C. Circuit exceeded its authority in issuing a writ of mandamus does not mean that its decision in *Indiana Michigan* would be without force in appropriate litigation under the contract in the Court of Federal Claims. In any such litigation, the utilities would be free to argue that the D.C. Circuit's decision in *Indiana Michigan* (1) is entitled to preclusive effect and (2)

B. There is, in any event, no merit to the court of appeals' conclusion that DOE's reliance on the "[u]navoidable delays" provision of Article IX is logically irreconcilable with the *Indiana Michigan* holding. Observing that treatment of the agency's delay as "unavoidable" would "let DOE off the hook for monetary damages," the court concluded that "DOE cannot now render its obligation contingent, and free itself of the costs caused by its delay." App., *infra,* 12a, 13a. The court of appeals' apparent premise was that DOE's failure to fulfill a contractual obligation *necessarily* requires the payment of damages for any losses incurred as a result of the breach—*i.e.*, that a denial of monetary relief should be regarded as the practical and legal equivalent of a determination that no contractual obligation exists.

That premise has no basis in the law of contracts and would, if pursued to its logical conclusion, render the doctrine of *force majeure* a nullity. The Standard Contract's "[u]navoidable delays" provision presupposes a "failure" by one of the contracting parties "to perform its obligations" under the contract. Art. IX.A, 10 C.F.R. 961.11. The provision is included in the Standard Contract precisely to ensure that a failure of performance will *not* give rise to monetary liability "if such

---

logically forecloses DOE from treating its delay in performance as "unavoidable" within the meaning of Article IX. It is therefore possible that the D.C. Circuit's decision in *Indiana Michigan* could ultimately affect the outcome of litigation regarding claims under the Standard Contract. The Court of Federal Claims, however, is fully capable of resolving any preclusion issues that may arise in suits falling within its jurisdiction. The D.C. Circuit's authority to enforce its mandate in *Indiana Michigan* does not extend to defining the scope of that decision's preclusive effect in suits coming within the exclusive jurisdiction of another federal court.

failure arises out of causes beyond the control and without the fault or negligence of the party failing to perform." *Ibid.*[11] Article IX.A thus reflects an unambiguous determination (and agreement) that a contracting party's failure to perform its obligations in a timely manner does not logically compel the provision of a monetary remedy.[12]

Moreover, quite apart from the court of appeals' failure to distinguish between contractual rights and remedies, the court erred in equating DOE's argument (in *Indiana Michigan*) that its obligation to accept SNF

---

[11] A *force majeure* clause excusing failures of performance caused by events beyond the control of the contracting party is a standard feature of government procurement contracts. Compare 48 C.F.R. 52.249-8(c); 48 C.F.R. 52.249-14.

[12] The court of appeals did not squarely hold that the "[u]navoidable delays" provision was contrary in its entirety to the holding in *Indiana Michigan*. The court did not, for example, expressly foreclose application of that provision to delays caused by "fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes and unusually severe weather." Art. IX.A, 10 C.F.R. 961.11. Rather, the court "preclude[d] DOE from concluding that its delay is unavoidable on the ground that it has not yet prepared a permanent repository or that it has no authority to provide storage in the interim," and it stated that "DOE [may] not implement any interpretation of the Standard Contract that excuses its failure to perform on the grounds of 'acts of Government in either its sovereign or contractual capacity.'" App., *infra*, 13a (quoting Art. IX.A, 10 C.F.R. 961.11). The court's decision to grant mandamus relief, however, was based on (1) its conclusion, drawn from the *Indiana Michigan* opinion, that DOE's obligation to accept SNF is "[u]nconditional," *id.* at 11a; and (2) its apparent belief that the existence of an "unconditional" contract obligation necessarily implies a duty to pay money damages if any breach occurs. The logic of the court's analysis would therefore appear to extend to delays caused by natural disasters or other occurrences wholly outside the control of any arm of the federal government.

was contingent on the existence of a suitable facility with its subsequent preliminary determination that its delay in performance was "unavoidable." See App., *infra*, 12a (stating that in characterizing its delay in performance as "unavoidable," "DOE is simply recycling the arguments rejected by this court in *Indiana Michigan*."). In reaching her preliminary determination that DOE's delay in accepting SNF was "unavoidable" within the meaning of Article IX, the Contracting Officer did not rely solely on the fact that no repository or other facility was available. Instead, she examined the reasons for that state of affairs. For example, she analyzed at length the many technical difficulties that had been encountered in the course of an unprecedented scientific and engineering project—a project that has as its goal the safe isolation of highly radioactive waste from the human environment "for at least 10,000 years." Resp. Exh. 6 (Contracting Officer's Preliminary Determination), *supra* note 5, at 4. She also considered the numerous regulatory hurdles that have impeded the project, the legislative actions that have constrained alternative approaches, and the effects of third-party legal challenges to and oversight of project activities. *Id.* at 6-16. Her preliminary determination regarding the proper application of the Delays Clause was based not simply on the fact that no repository or other suitable facility existed, but on her finding that the absence of such a facility was the result of factors beyond DOE's control.

For the foregoing reasons, the court of appeals lacked authority to direct DOE in its construction and implementation of the existing Standard Contract, since questions of contract interpretation are reserved for the Court of Federal Claims.