# SUPPLEMENTAL APPENDIX

CONF-831217

# Proceedings of the 1983 Civilian Radioactive Waste Management Information Meeting

December 12-15, 1983
Washington, D.C.

February 1984

Sponsored by:
**U.S. Department of Energy**
Office of Civilian Radioactive Waste Management
Washington, D.C. 20585

DEFENDANT'S EXHIBIT 001

SN069588 [D]

Protected Material Subject to Protective Order

SN069588 [D]

SNP0118459

## FOREWORD

On January 7, 1983, President Reagan signed into the law the Nuclear Waste Policy Act of 1982. This act established a process whereby the President, the Congress, the affected individual States and Indian tribes, the U.S. Department of Energy and other Federal agencies could work together in the siting, construction, and operation of facilities for the storage and disposal of nuclear waste.

This proceedings document from the 1983 Civilian Radioactive Waste Management Information Meeting serves to highlight developments since the passage of the Act, and reviews program activities necessary to provide for the permanent disposal and storage of commercially generated high-level radioactive waste. Presentations included in this program cover topics concerning interim spent fuel, monitored retrievable storage, geologic repository deployment as well as management of the Nuclear Waste Fund.



SN069589

Protected Material Subject to Protective Order

SN069589



SNP0118460

## NUCLEAR WASTE FUND MANAGEMENT

Loring Mills, Vice President
Nuclear Activities, Edison Electric Institute

We recognize that a key that unlocked the Congressional log-jam to achieve the waste bill was the establishment of contracts, and Bob suggested that I might spend my time talking a little about the contracts. I have crossed out a lot of the words that I had prepared because others have already touched on them. It does provide that mechanism for funding a program without using general tax dollars. As indicated, we have 70 contracts in existence. The process of developing that contract language last spring was a rather interesting one in which a lot of us had some dialogue. Four-letter words were exchanged, also. The Department of Energy, (DOE) did consider the contract concerns of utilities and others, consequently substantial improvements were made over the initial draft as a result of the rule-making process, but there are still some open questions.

Basically these contracts do call for regular large payments to DOE; and as was indicated, these monies are flowing at a rate of over $300 million a year. Those of us in the investor-owned utilities support the concept of cost-work in progress. There are others that don't always do that, but we do support that, and encourage it to be used in our own area, too.

The money will continue to flow as long as electricity is generated by nuclear power plants. While Congress did set the initial rate at 1 mil per kilowatt hour, it also gave DOE the permission to change that fee to make sure they covered the full cost of the program. In addition to money, we are providing a great deal of information on the spent fuel quantity and characteristics.

In return for the money within the contracts, DOE has promised that it will take the nuclear waste some unspecified day, at some unspecified rate, hopefully, starting in 1998. The DOE promise must be carried out, and it is our task as contract holders to do everything we can to assure that it is achieved.

Now, there are some folks who are concerned about how rapidly the money flows out. There are those in the Federal Government; I won't name any place like OMB or any other, who may try to balance the budget by minimizing the amount of outflow of the money, and we must resist that. Congress recognized that you will not always have a balanced cash flow in any one year. They provided a mechanism so that wasn't necessary. While the program must be funded sufficiently to assure full cost recovery, it does not require that balanced cash flow in any one year.

There are some who are concerned about the equity associated in the contracts, but we are pleased to have them. They provide the lubrication to get the job done. We really were never under an illusion that we would get a fair and equitable contract with DOE, with firm commitments and detailed performance standards, with penalties for non-performance. We were not really looking for that, however, there were many concerns expressed by the utilities that were not resolved, as we believe equitably during the contract generation process. Because several concerns were not handled satisfactorily, we fully expect to see a petition initiated for rule-making to achieve a more reasonable understanding on several issues. The money question is not involved. It is a matter of some of the performance assurances, to include some of the things we heard this morning which were not embodied in the contract.

While no petition has been initiated yet, the utility industry has identified several elements that appear to be worthy of such a position, and it can be done by anyone at any time. In all probability it will be revisited several times over the many decades that these contracts are in force. After all, these contracts are expected to be paying in as long as any utility is generating nuclear electricity, and that, we hope, is for several decades. When the contracts have been signed, one could question about deliverables compared to the time in which the payments are made. Any court review of the contract might challenge whether the equity principle is satisfied or whether the contracts really bind only one party; the utilities. That won't be resolved, but it is a question. While most persons are resigned for the time being to the contract as it exists, a few utilities and an owner of spent fuel, have initiated lawsuits against DOE on specific provisions of the





Protected Material Subject to Protective Order

SN069619

YL03-04-01

YANKEE ATOMIC ELECTRIC COMPANY

Telephone (508) 779-6711
TWX 710-380-7619

YANKEE

580 Main Street, Bolton, Massachusetts 01740-1398

September 25, 1992
FMD 92-621

U.S. Department of Energy
DOE Contracting Officer
Office of Placement and Administration
PR-322.1
1000 Independence Avenue, S.W.
Washington, DC 20585

Dear Sir or Madam:

Enclosed are completed Delivery Commitment Schedules for Yankee Atomic Electric Company. Please note that because the Yankee Nuclear Power Station is permanently shutdown and to facilitate decommissioning, we are requesting that DOE accept all of the spent nuclear fuel in storage at the station over a three year period starting in 1998 as indicated on the DCSs.

Please do not hesitate to call if you have any questions.

Sincerely,

R. M. Grube

R. M. Grube, Director
Fuel Management Department

RMG/JMB/cmc

Enclosure

c: U.S. Department of Energy
Chief, Logistics and Utility Interface Branch
Office of Civilian Radioactive Waste Management
RW-432
1000 Independence Avenue, S.W.
Washington, DC 20585

DEFENDANT'S EXHIBIT 030.002



YDK008922

bc: A. C. Kadak
J. M. Buchheit
A. A. H. Koch
R. A. Mellor
F. X. Quinn

NWPA-830C

DISAPPROVED BY DOE December 1, 1992

OMB No.: 1901-0260
Expires: 11/30/93

# U.S. DEPARTMENT OF ENERGY

## APPENDIX C - DELIVERY COMMITMENT SCHEDULE

This information is being collected under mandatory authorities vested in the U.S. Department of Energy under Public Law 97-425 and Article V.B. of the Standard Contract for Disposal of Spent Nuclear Fuel and/or High Level Radioactive Waste (10 CFR 961). Data collected on this form are not considered to be confidential. Public reporting burden for this collection of information is estimated to average 5 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Office of Statistical Standards, EI-73, 1000 Independence Ave., S.W., Washington, D.C. 20585 and to the Office of Information and Regulatory Affairs, Office of Management and Budget, Washington, D.C. 20503.

### 1.0 IDENTIFICATION INFORMATION

1.1 DCS Identification Number: 985601442801

1.2 Contact Person:
(a) Name: J. H. Duchheit
(b) Telephone (include Area Code): 508-779-6711

1.3 Contract Number: DE-CR01-83NE44426

1.4 Reactor/Facility Information:
(a) Name: Yankee Nuclear Power Station
(b) Address: Star Route
(c) City, State & Zip Code: Rowe, MA 01367

### 2.0 DELIVERY COMMITMENT INFORMATION

2.1 Type Cask Required (Maximum loaded lifting weight, in tons): 37
2.2 Shipping Lot Number: (Not Required) (Assigned by DOE)
2.3 Proposed Shipping Mode: Truck X ; Rail ___ ; Barge ___
2.4 Proposed Delivery Date: 1998
2.5 DOE Assigned Delivery Commitment Date: (Not Required) (Assigned by DOE)
2.6 Range of Discharge Dates: 2 12 72 to 10 1 91
(Earliest to Latest) Mo / Day / Yr to Mo / Day / Yr
2.7 Metric Tons Uranium: (Initial) 34.8 (Discharged) (Not Required)
2.8 Number of Assemblies: BWR ___ PWR 135 Other ___

### 3.0 CERTIFICATIONS

Purchaser hereby certifies that the spent nuclear fuel to be delivered pursuant to this Delivery Commitment Schedule is of domestic origin, has been discharged from a civilian nuclear power reactor, is covered by Purchaser's Contract (identified in item 1.3 above) and that purchaser has the legal right to deliver such spent nuclear fuel to DOE.

3.1 [signature] 25 Sept 1992
Authorized Purchaser Signature — Date

3.2 Rudolph M. Grube
Name (Please Type or Print)

3.3 Director, Fuel Management Department
Title (Please Type or Print)

TITLE 18 USC 1001 makes it a crime for any person to knowingly and willfully make to any agency of the United States any false, fictitious, or fraudulent statements as to any matter within its jurisdiction.

### 4.0 NOTIFICATION OF DOE APPROVAL

4.1 Approved by DOE

Technical Representative — Title — Date

4.2
Contracting Officer — Date

Copy Distribution: 1 White, DOE-Contracting Officer; 2 Blue, DOE-OCRWM; 1 Pink, DOE-EIA; 1 Goldenrod, Utility Copy

YDK008924

NWPA-830C

DISAPPROVED BY DOE December 1, 1992

OMB No.: 1901-0260
Expires: 11/30/93

# U.S. DEPARTMENT OF ENERGY

## APPENDIX C - DELIVERY COMMITMENT SCHEDULE

This information is being collected under mandatory authorities vested in the U.S. Department of Energy under Public Law 97-425 and Article V.B. of the Standard Contract for Disposal of Spent Nuclear Fuel and/or High Level Radioactive Waste (10 CFR 961). Data collected on this form are not considered to be confidential. Public reporting burden for this collection of information is estimated to average 5 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Office of Statistical Standards, EI-73, 1000 Independence Ave., S.W., Washington, D.C. 20585 and to the Office of Information and Regulatory Affairs, Office of Management and Budget, Washington, D.C. 20503.

### 1.0 IDENTIFICATION INFORMATION

1.1 DCS Identification Number: 995601442801

1.2 Contact Person:
(a) Name: J. M. Buchheit
(b) Telephone (include Area Code): 508-779-6711

1.3 Contract Number: DE-CR01-83NE44425

1.4 Reactor/Facility Information:
(a) Name: Yankee Nuclear Power Station
(b) Address: Star Route
(c) City, State & Zip Code: Rowe, MA 01367

### 2.0 DELIVERY COMMITMENT INFORMATION

2.1 Type Cask Required (Maximum loaded lifting weight, in tons): 37

2.2 Shipping Lot Number: (Not Required) (Assigned by DOE)

2.3 Proposed Shipping Mode: Truck X ; Rail ____ ; Barge ____

2.4 Proposed Delivery Date: 1999

2.5 DOE Assigned Delivery Commitment Date: (Not Required) (Assigned by DOE)

2.6 Range of Discharge Dates: 2 12 72 to 10 1 91
(Earliest to Latest) Mo / Day / Yr to Mo / Day / Yr

2.7 Metric Tons Uranium: (Initial) 45.1 (Discharged) (Not Required)

2.8 Number of Assemblies: BWR ____ PWR 194 Other ____

### 3.0 CERTIFICATIONS

Purchaser hereby certifies that the spent nuclear fuel to be delivered pursuant to this Delivery Commitment Schedule is of domestic origin, has been discharged from a civilian nuclear power reactor, is covered by Purchaser's Contract (identified in item 1.3 above) and that purchaser has the legal right to deliver such spent nuclear fuel to DOE.

3.1 [signature] ... 1992
Authorized Purchaser Signature — Date

3.2 Rudolph H. Grube
Name (Please Type or Print)

3.3 Director, Fuel Management Department
Title (Please Type or Print)

TITLE 18 USC 1001 makes it a crime for any person to knowingly and willfully make to any agency of the United States any false, fictitious, or fraudulent statements as to any matter within its jurisdiction.

### 4.0 NOTIFICATION OF DOE APPROVAL

4.1 Approved by DOE

Technical Representative — Title — Date

4.2 
Contracting Officer — Date

Copy Distribution: 1 White, DOE-Contracting Officer; 2 Blue, DOE-OCRWM; 1 Pink, DOE-EIA; 1 Goldenrod, Utility Copy



YDK008925

NWPA-830C

DISAPPROVED BY DOE December 1, 1992

OMB No.: 1901-0260
Expires: 11/30/93

# U.S. DEPARTMENT OF ENERGY

## APPENDIX C - DELIVERY COMMITMENT SCHEDULE

This information is being collected under mandatory authorities vested in the U.S. Department of Energy under Public Law 97-425 and Article V.B. of the Standard Contract for Disposal of Spent Nuclear Fuel and/or High Level Radioactive Waste (10 CFR 961). Data collected on this form are not considered to be confidential. Public reporting burden for this collection of information is estimated to average 5 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Office of Statistical Standards, EI-73, 1000 Independence Ave., S.W., Washington, D.C. 20585 and to the Office of Information and Regulatory Affairs, Office of Management and Budget, Washington, D.C. 20503.

### 1.0 IDENTIFICATION INFORMATION

1.1 DCS Identification Number: 005601442801

1.2 Contact Person:
(a) Name: J. M. Buchheit
(b) Telephone (include Area Code): 508-779-6711

1.3 Contract Number: DE-CR01-83NE44428

1.4 Reactor/Facility Information:
(a) Name: Yankee Nuclear Power Station
(b) Address: Star Route
(c) City, State & Zip Code: Rowe, MA 01367

### 2.0 DELIVERY COMMITMENT INFORMATION

2.1 Type Cask Required (Maximum loaded lifting weight, in tons): 37
2.2 Shipping Lot Number: (Not Required) (Assigned by DOE)
2.3 Proposed Shipping Mode: Truck X ; Rail ____ ; Barge ____
2.4 Proposed Delivery Date: 2000
2.5 DOE Assigned Delivery Commitment Date: (Not Required) (Assigned by DOE)
2.6 Range of Discharge Dates: 2 12 72 to 10 1 91
(Earliest to Latest) Mo / Day / Yr to Mo / Day / Yr
2.7 Metric Tons Uranium: (Initial) 47.1 (Discharged) (Not Required)
2.8 Number of Assemblies: BWR ____ PWR 204 Other ____

### 3.0 CERTIFICATIONS

Purchaser hereby certifies that the spent nuclear fuel to be delivered pursuant to this Delivery Commitment Schedule is of domestic origin, has been discharged from a civilian nuclear power reactor, is covered by Purchaser's Contract (identified in item 1.3 above) and that purchaser has the legal right to deliver such spent nuclear fuel to DOE.

3.1 [signature] 25 Sept 1992
Authorized Purchaser Signature — Date

3.2 Rudolph H. Gruba
Name (Please Type or Print)

3.3 Director, Fuel Management Department
Title (Please Type or Print)

TITLE 18 USC 1001 makes it a crime for any person to knowingly and willfully make to any agency of the United States any false, fictitious, or fraudulent statements as to any matter within its jurisdiction.

### 4.0 NOTIFICATION OF DOE APPROVAL

4.1 Approved by DOE

Technical Representative — Title — Date

4.2

Contracting Officer — Date

Copy Distribution: 1 White, DOE-Contracting Officer; 2 Blue, DOE-OCRWM; 1 Pink, DOE-EIA; 1 Goldenrod, Utility Copy



YDK008926

**Department of Energy**
Washington, DC 20585

RECEIVED
DEC 10 1992
Yankee Atomic Electric Company

DEC 01 1992

Mr. J. M. Buchheit
Contract Administrator
Yankee Atomic Electric Company
580 Main Street
Bolton, MA 01740-1398

Dear Mr. Buchheit:

The Department of Energy (DOE) has reviewed the three Delivery Commitment Schedules (DCS) submitted by Yankee Atomic Electric Company (YAEC), dated September 25, 1992 (DCS numbers 98-5601-4428-01, 99-5601-4428-01, and 00-5601-4428-01). We have determined that Item 2.7 (Metric Tons Uranium) of each DCS was incorrectly completed.

In accordance with the Standard Contract for the Disposal of Spent Nuclear Fuel and/or High-Level Waste (10 CFR Part 961), an annual Acceptance Priority Ranking (APR) report and an Annual Capacity Report (ACR) are issued. The APR establishes the order in which DOE allocates projected spent nuclear fuel (SNF) acceptance capacity. As required by the Standard Contract, the priority ranking is based on the date the SNF was permanently discharged, with the owners of the oldest SNF, on an industry-wide basis, given the highest priority. The APR is the basis for allocating SNF acceptance capacity to each owner in the ACR. The ACR applies a ten-year projected waste acceptance rate to the APR, resulting in individual capacity allocations of projected acceptance capacity (measured in metric tons of uranium - MTU). The allocations in the ACR are the basis for DCS submittals.

As stated in the DCS Instructions for Item 2.7, "...the total quantity of SNF designated for delivery must not exceed the allocation in the ACR; exceeding the allocation will result in disapproval of the DCS(s)." Based on the December 1991 Annual Capacity Report (ACR), YAEC exceeded its allocations for each DCS.

| DCS Number | Year | Allocation in ACR | Item 2.7 of DCS |
|---|---|---|---|
| 98-5601-4428-01 | 1998 | 9.84 MTU | 47.1 MTU |
| 99-5601-4428-01 | 1999 | 10.09 MTU | 45.1 MTU |
| 00-5601-4428-01 | 2000 | 9.65 MTU | 47.1 MTU |

Note that once Item 2.7 is revised, Item 2.8 will require revision as well.

As a result of these errors, DCS numbers 98-5601-4428-01, 99-5601-4428-01, and 00-5601-4428-01 have been disapproved. Consistent with Article V.B.1 of the Standard Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste, I am requesting that you submit revised DCSs to correct these errors within 30 days of receipt of this notification. To assist you in revising these DCSs, a copy of the "Instructions for Completing the Appendix C Delivery Commitment Schedule" is enclosed as are additional DCS forms.

DEFENDANT'S EXHIBIT
030.004

YDK021597

Should you have any questions concerning this action, please contact Nick Graham of my staff on (202)634-4415 or Nancy Montgomery of the Department's Office of Civilian Radioactive Waste Management on (202) 586-8320.

Linda Strand
Contracting Officer
Office of Placement and
Administration

Enclosures

cc: R. M. Grube

YDK021598

# MEMORANDUM

## YANKEE ATOMIC - BOLTON

| | | | |
|---|---|---|---|
| To | R. M. Grube | Date | September 25, 1992 |
| | | Group # | FMD 92-616 |
| From | J. M. Buchheit | W.O.# | |
| Subject | YANKEE DELIVERY COMMITMENT SCHEDULES (DCS) | I.M.S.# | Y-L03-04-01 |
| | | File # | |

SUMMARY/RECOMMENDATION

The Standard Contract for spent fuel disposal requires Yankee to submit a Delivery Commitment Schedule (DCS) to DOE for at least the first year of operation of DOE's Waste Management System (WMS), currently considered by DOE to be 1998, by September 30 1992. DOE's instructions for DCS submittal specify that the quantity which DOE will accept must not exceed allocations specified in the December 1991 Annual Capacity Report (ACR). Along with year one, DCSs can also be submitted for any of succeeding year's allocations listed in the ACR. We recommend that Yankee deviate from DOE's instructions to comply with ACR allocations and request that DOE accept all of Yankee's spent fuel in the first three years of WMS operation.

DISCUSSION

The Standard Contract for Disposal of Spent Nuclear Fuel/High Level Radioactive Waste requires that purchasers who have allocations for spent fuel disposal in the 1991 ACR in the first year of WMS operation, currently considered by DOE to be 1998, must submit a DCS for this allocation to DOE by no later than September 30, 1992. Failure to do so will result in Yankee loosing its place in the queue; i.e. Yankee would have no allocation rights in year one. A copy of the DCS form is attached. A purchaser's allocation is based on the 1991 Acceptance Priority Ranking which is a listing of all domestic spent fuel discharged through December 1990 in chronological order, with oldest fuel first.

Although a purchaser is only required to submit a DCS if it has an allocation in the first year, DOE does not prohibit submittals for any of the purchaser's allocations during the 10 years of WMS operation shown in the ACR. In fact, DOE requests that each purchaser submit DCSs for as many allocations as possible to assist them in the planning of the WMS.

I have attached the schedule from the ACR showing Yankee's projected delivery allocation during the initial 10 years of WMS operation. It shows that DOE will accept a total of 56.1 MTU of spent fuel during the period. Deliveries are scheduled in years one through four and six and eight. This quantity is less than half the fuel in the pool. Although, instructions for completing



DEFENDANT'S EXHIBIT 035

YDK037423

YDK037423

R. M. Grube
September 25, 1992
Page 2

the DCSs say DOE will reject those which do not correspond with the allocations shown in the 1991 ACR, it is recommended that we deviate from DOE's instructions and request DOE accept all of YNPS spent fuel during the first three years of WMS operation. In doing this we will not jeopardize our right to an allocation in the initial year of WMS operation. However, DOE has the right to reject our request and if rejected will require us to submit revised DCSs. Further, if DOE does not accept the revised DCSs, we are required to negotiate an acceptable schedule with DOE.

Acceptance of all YNPS spent fuel within three years of WMS startup is consistent with Yankee's desire to remove spent fuel from the site as soon as possible to permit orderly decommissioning. It should also be logistically possible to remove all of the spent fuel over a three year period with the proper compliment of multi-element truck casks. More significantly, our request to deliver all YNPS spent fuel on an accelerated schedule will highlight the importance to us for timely acceptance and removal of spent fuel from YNPS. Hopefully, our request will have positive effects especially for those reactors which are decommissioned or are currently contemplating decommissioning; i.e. that it will play a role in convincing DOE to either give priority to permanently shutdown reactors or perhaps increase acceptance rates as a means of assuring timely decommissioning.

J. M. Buchheit
Sr. Nuclear Fuels Engineer

c: A. C. Kadak
A. A. H. Koch
F. X. Quinn
R. A. Mellor



YDK037424

YDK037424

NWPA-830C

OMB No.: 1901-0260
Expires: 11/30/93

# U.S. DEPARTMENT OF ENERGY

## APPENDIX C - DELIVERY COMMITMENT SCHEDULE

This information is being collected under mandatory authorities vested in the U.S. Department of Energy under Public Law 97-425 and Article V.B. of the Standard Contract for Disposal of Spent Nuclear Fuel and/or High Level Radioactive Waste (10 CFR 961). Data collected on this form are not considered to be confidential. Public reporting burden for this collection of information is estimated to average 5 hours per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. Send comments regarding this burden estimate or any other aspect of this collection of information, including suggestions for reducing this burden, to the Office of Statistical Standards, EI-73, 1000 Independence Ave., S.W., Washington, D.C. 20585 and to the Office of Information and Regulatory Affairs, Office of Management and Budget, Washington, D.C. 20503.

### 1.0 IDENTIFICATION INFORMATION

1.1 DCS Identification Number: ______________________

1.2 Contact Person:
(a) Name: ______________________
(b) Telephone (Include Area Code): ______________

1.3 Contract Number: ______________________

1.4 Reactor/Facility Information:
(a) Name: ______________________
(b) Address: ______________________
(c) City, State & Zip Code: ______________________

### 2.0 DELIVERY COMMITMENT INFORMATION

2.1 Type Cask Required (Maximum loaded lifting weight, in tons): ______________________
2.2 Shipping Lot Number: (Not Required) (Assigned by DOE)
2.3 Proposed Shipping Mode: Truck______; Rail______; Barge______
2.4 Proposed Delivery Date: ______________________
2.5 DOE Assigned Delivery Commitment Date: ____________ (Not Required) (Assigned by DOE)
2.6 Range of Discharge Dates: ___ ___ ___ ___ ___ ___
(Earliest to Latest) Mo / Day / Yr to Mo / Day / Yr
2.7 Metric Tons Uranium: (Initial)______________ (Discharged)________ (Not Required)
2.8 Number of Assemblies: BWR ______ PWR ______ Other ______

### 3.0 CERTIFICATIONS

**Purchaser hereby certifies that the spent nuclear fuel to be delivered pursuant to this Delivery Commitment Schedule is of domestic origin, has been discharged from a civilian nuclear power reactor, is covered by Purchaser's Contract (identified in item 1.3 above) and that purchaser has the legal right to deliver such spent nuclear fuel to DOE.**

3.1 ______________________________________________
Authorized Purchaser Signature — Date

3.2 ______________________ 3.3 ______________________
Name (Please Type or Print) — Title (Please Type or Print)

TITLE 18 USC 1001 makes it a crime for any person to knowingly and willfully make to any agency of the United States any false, fictitious, or fraudulent statements as to any matter within its jurisdiction.

### 4.0 NOTIFICATION OF DOE APPROVAL

4.1 Approved by DOE

______________________________________________
Technical Representative — Title — Date

4.2 ______________________________________________
Contracting Officer — Date

Copy Distribution: 1 White, DOE-Contracting Officer; 2 Blue, DOE-OCRWM; 1 Pink, DOE-EIA; 1 Goldenrod, Utility Copy



YDK037425

Yankee Annual Allocation For Delivery to DOE
From the 1991 Annual Capacity Report

| Year | MTU |
|---|---|
| 1 | 9.8 |
| 2 | 10.1 |
| 3 | 9.7 |
| 4 | 8.6 |
| 5 | - |
| 6 | 9.4 |
| 7 | - |
| 8 | - |
| 9 | 8.5 |
| 10 | - |
| Total MTU | 56.1 |

dk023771 (2544x3263x2 tiff)

File
Waste V
Contract

MEMORANDUM

YANKEE ATOMIC - FRAMINGHAM

To R. H. Grube/R. A. Eich — Date January 20, 1984

Group #

From J. H. Buchheit — W.O. # NHG 84-43

Subject PETITION FOR RULEMAKING TO AMEND THE NUCLEAR WASTE CONTRACT — I.M.S. #

We recently received a draft Petition for Rulemaking and Memorandum in Support of Petition for Rulemaking from the UNWMG. Both documents were prepared by Shaw-Pitman for UNWMG and were dated January 5, 1984. Comments are due Shaw Pitman or EEI by February 15, 1984. The following 11 items were the subject of the petition.

1. The Contract should be disassociated from the rule. This would permit the DOE and the purchaser to make changes in the Contract without petitioning for a rulemaking.

2. The Contract should provide additional performance standards to assess DOE's progress toward meeting the goals established by the Nuclear Waste Policy Act. Presently there are no performance standards. Even though DOE is required to commence accepting spent fuel no later than January 31, 1998, the Contract is so vague it could be interpreted that, if DOE accepts one fuel assembly, it will meet its obligation.

3. The 1 mil per kilowatt hour fee should be based on net electrical generation instead of gross electrical generation. It seems clear that this was the intent of the Waste Act. Several utilities are currently challenging the DOE in court on this issue, namely, Wisconsin Electric Power Company, et al. Even though the court case is undecided, UNWMG believes that DOE should modify the final rule and the Contract without waiting for the court outcome.

4. The Contract should include program review for the purchasers. Those who are paying for the waste program should have access to the information necessary to review and evaluate the progress of the program.

5. The interest rates on overdue fees should be set at 130 percent of the quarterly Treasury rate. Presently, interest rates on unpaid fees are set at the quarterly Treasury rate plus 6 percent. Additionally, UNWMG is saying that the interest rate for the first three months on unpaid fees should be at the quarterly Treasury rate without any additional penalty.

6. The Contract should provide:

   a. Nuclear liability protection which is the same as that required of a contractor should DOE choose to act as its own transporter and/or be the operator of the waste facility.

   b. Liability protection through government indemnity or insurance.

YDK023771

DEFENDANT'S EXHIBIT 092

dk023772 (2544x3255x2 tiff)



c. Indemnification to the purchaser for any claims connected with Contract performance by DOE or its contractors.

7. The Contract should be amended to eliminate liability of the purchaser for damage to shipping casks when this damage is not caused by the purchaser's negligence. DOE omitted the word "negligence" in the present Contract. If, for example, the damage was the result of a defect in the cask, the purchaser could be liable.

8. The standard/non-standard fuel classifications presented in Appendix E should be eliminated. These classifications apparently were taken from a draft of a DOE reprocessing contract. They are not needed in the Waste Contract.

9. The Contract should not require proof of ownership of spent nuclear fuel or high level wastes. Certification that the purchaser owns such spent fuel or high level waste should be adequate.

10. The Contract should require records retention for only five years after delivery of spent fuel or after the payment under the Contract of those records relating to such delivery or payment. Section 8(E)(3) of the Contract states that the purchaser shall retain such records for a period of three years from the completion of delivery of all materials under the Contract.

11. The Contract should be amended to eliminate any possible disparity between the fees for discharged fuel that is reinserted and the fees for incore fuel. For example, if a fuel assembly removed without plans for reinsertion had a burnup of 5,000 MWD/MT, a fee of $142/kgU would be assessed. If the same assembly was later reinserted and used to generate electricity, and if the final burnup were 30,000 MWD/MT, an additional charge of $195/kgU would be assessed. The total fee would be $337/kgU. If that same assembly was removed with plans for reinsertion and was classified as incore fuel, the total charge for a 30,000 MWD/MT burnup would be $234/kgU.

When EEI receives the comments, the Contract Task Force will reconvene in late February or early March to make any necessary revisions to this draft. A final draft will be submitted to the UNWMG Steering Committee at its spring meeting and to the EEI Nuclear Power Executive Advisory Committee at their meeting in May.

J. M. Buchheit

J. M. Buchheit
Senior Fuel Engineer

JMB/smh

cc: A. E. Soucy

YDK023772