No. 01-116C
(Judge Allegra)

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

NEBRASKA PUBLIC POWER DISTRICT,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# DEFENDANT'S RESPONSE TO THE COURT'S JUNE 21, 2005 ORDER AND MOTION FOR PARTIAL RECONSIDERATION OF THE COURT'S MARCH 30, 2005 ORDER

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

HAROLD D. LESTER, JR.
Assistant Director

HEIDE L. HERRMANN
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Telephone: (202) 514-4325
Facsimile: (202) 307-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
Department of Energy
1000 Independence Avenue, S.W.
Washington, D.C. 20585

July 8, 2005

TABLE OF CONTENTS

PAGE

DISCUSSION ........................................................................................................................ 2

I. AFTER RECONSIDERING THE D.C. CIRCUIT'S OPINION IN *NORTHERN STATES* AND THE EXISTING WRIT OF MANDAMUS, WE BELIEVE THAT WE ARE CURRENTLY PROHIBITED FROM RELYING UPON THE STANDARD CONTRACT'S "UNAVOIDABLE DELAYS" CLAUSE IN THIS PARTICULAR CASE ......................................... 2

II. THE COURT SHOULD RECONSIDER ITS PRIOR JURISDICTIONAL ANALYSIS IN THIS CASE, CONSISTENT WITH THE ANALYSES PREVIOUSLY ADOPTED BY SEVERAL COURTS OF APPEALS ................ 4

CONCLUSION ...................................................................................................................... 15

TABLE OF AUTHORITIES

CASES PAGE(S)

Alabama Power Co. v. United States Dep't of Energy,
307 F.3d 1300 (11th Cir. 2000) ........ 11

Boston Edison Co. v. United States,
64 Fed. Cl. 167 (2005) ........ 4, 12

Cannon v. University of Chicago,
441 U.S. 677 (1979) ........ 12

Christopher Village, L.P. v. United States,
360 F.3d 1319 (Fed. Cir. 2004) ........ 5

City of Burbank v. United States,
273 F.3d 1370 (Fed. Cir. 2001) ........ 13, 14

Commonwealth Edison Co. v. United States Department of Energy,
877 F.2d 1042 (D.C. Cir. 1989) ........ 11

Duke Power Co. v. United States,
No. 98-485C, slip op. (Fed. Cl. March 3, 2005) (unpublished) ........ 4, 12

General Electric Uranium Management Corp. v. United States Department of Energy,
764 F.2d 896 (D.C. Cir. 1985) ........ 8, 9, 10, 11, 15

Indiana Michigan Power Co. v. Department of Energy,
88 F.3d 1272 (D.C. Cir. 1996) ........ 3, 5, 12

Lorillard v. Pons,
434 U.S. 575 (1978) ........ 12

Merrill Lynch, Pierce, Fenner & Smith v. Curran,
456 U.S. 353 (1982) ........ 12

Midwest Independent Transmission System Operator, Inc. v. FERC,
388 F.3d 903 (D.C. Cir. 2005) ........ 10

Northern States Power Co. v. United States,
128 F.3d 754 (D.C. Cir. 1997), cert. denied, 525 U.S. 1015 & 1016 (1998) ..... 3, 4, 5, 12

TABLE OF AUTHORITIES (cont'd)

CASES PAGE(S)

State of Tenn. v. Herrington,
806 F.2d 642 (6th Cir. 1986) .......... 11

Wisconsin Elec. Power Co. v. Department of Energy,
778 F.2d 1 (D.C. Cir. 1985) .......... 10

STATUTES AND REGULATIONS

42 U.S.C. §§ 10101-10270 .......... passim

42 U.S.C. § 10139 .......... 3, 7, 8

42 U.S.C. § 10162-10169 .......... 11

42 U.S.C. § 10172 .......... 11

42 U.S.C. § 10201 .......... 8

42 U.S.C. § 10222 .......... 6

42 U.S.C. § 10222 Historical and Statutory Notes .......... 10

96 Stat. 2201 (1983) .......... 6, 9, 10

10 C.F.R. § 961.11 .......... 1, 2

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| NEBRASKA PUBLIC POWER DISTRICT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 01-116C |
| v. | ) | (Judge Allegra) |
| | ) | |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO THE COURT'S JUNE 21, 2005 ORDER
AND MOTION FOR PARTIAL RECONSIDERATION
OF THE COURT'S MARCH 30, 2005 ORDER

Pursuant to this Court's order dated June 21, 2005, defendant, the United States, respectfully submits this supplemental brief discussing this Court's ability to consider whether the Department of Energy's delay in beginning spent nuclear fuel ("SNF") acceptance under the "Standard Contract For Disposal Of Spent Nuclear Fuel And/Or High-Level Radioactive Waste" ("Standard Contract"), the terms of which are published at 10 C.F.R. § 961.11, falls within the "Unavoidable Delays" clause of that contract. In addition, defendant further requests that the Court reconsider a portion of its March 30, 2005 order, in which it found jurisdiction to entertain this case in a manner inconsistent with the prior decisions of the United States Courts of Appeals of the District of Columbia, the Sixth, and the Eleventh Circuits. Although we agree that jurisdiction in this Court is proper, the proper jurisdictional basis, with all due respect, differs from that which the Court found in its March 30, 2005 order.

## DISCUSSION

### I. AFTER RECONSIDERING THE D.C. CIRCUIT'S OPINION IN *NORTHERN STATES* AND THE EXISTING WRIT OF MANDAMUS, WE BELIEVE THAT WE ARE CURRENTLY PROHIBITED FROM RELYING UPON THE STANDARD CONTRACT'S "UNAVOIDABLE DELAYS" CLAUSE IN THIS PARTICULAR CASE

As the Court is aware, in our responses to Judge Sypolt's October 14, 2004 order to show cause and in our response to the plaintiff's motion for reconsideration of Judge Sypolt's January 31, 2005 order, we suggested that this Court evaluate whether the Government should be permitted to argue that the "Unavoidable Delays" clause of the Standard Contract applies to the Department of Energy's delays in accepting SNF from the plaintiff, Nebraska Public Power District ("NPPD"). The "Unavoidable Delays" clause in the Standard Contract precludes liability for a delay in the scheduled delivery, acceptance, or transport of SNF arising out of causes beyond the "reasonable control of . . . [the Department of Energy ('DOE')]," including "acts of Government in either its sovereign or contractual capacity:"

> <u>Unavoidable Delays by Purchaser or DOE</u>
>
> Neither the Government nor Purchaser shall be liable under this contract for damages caused by failure to perform its obligations hereunder, if such failure arises out of causes beyond the control and without the fault or negligence of the party failing to perform. <u>In the event circumstances beyond the reasonable control of the Purchaser or DOE</u> – such as acts of God, or of the public enemy, <u>acts of Government in either its sovereign or contractual capacity</u>, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes and unusually severe weather – <u>cause delay in scheduled delivery, acceptance or transport of SNF and/or HLW</u>, the party experiencing the delay will notify the other party as soon as possible after such delay is ascertained and the parties will readjust their schedules, as appropriate, to accommodate such delay.

10 C.F.R. § 961.11, Art. IX(A) (emphasis added).

As we have continued to evaluate the applicability of the "Unavoidable Delays" clause to these cases in conjunction with the past decision of the D.C. Circuit regarding that clause, we have concluded that, at least at the present time, we are barred from relying upon the "Unavoidable Delays" clause in this particular case to excuse DOE's delay with respect to NPPD. As we have explained in prior briefing, this litigation has a significant history before the United States Court of Appeals for the District of Columbia Circuit pursuant to the "Judicial Review" provision of the Nuclear Waste Policy Act ("NWPA"), 42 U.S.C. § 10139 (1994). Part of that history involves the decision of the D. C. Circuit in Indiana Michigan Power Co. v. Department of Energy, 88 F.3d 1272 (D.C. Cir. 1996). In that case, the D. C. Circuit held "that section 302(a)(5)(B) [of the NWPA] create[d] an obligation in DOE, reciprocal to the utilities' obligation to pay, to start disposing of the SNF no later than January 31, 1998." Id. at 1274.

Subsequently, NPPD, along with a number of other utilities and state agencies, filed petitions for writs of mandamus in the D.C. Circuit that, among other things, sought to compel DOE to begin accepting SNF by January 31, 1998. In its decision on the petitions, Northern States Power Co. v. United States, 128 F.3d 754 (D.C. Cir. 1997), cert. denied, 525 U.S. 1015 & 1016 (1998), the court granted the petitions for mandamus in part by ordering DOE to

> proceed with contractual remedies in a manner consistent with the NWPA's command that it undertake an unconditional obligation to begin disposal of SNF by January 31, 1998. More specifically, we preclude DOE from concluding that its delay is unavoidable on the ground that it has not yet prepared a permanent repository or that it has no authority to provide storage in the interim.
>
> This necessarily means, of course, that DOE not implement any interpretation of the Standard Contract that excuses its failure to perform on the grounds of "acts of Government in either its sovereign or contractual capacity."

Northern States, 128 F.3d at 760. Further, the D.C. Circuit concluded that the "Unavoidable Delays" clause of the Standard Contract, "insofar as it applied to DOE's failure to perform by 1998, is inconsistent with DOE's statutory obligation to assume an unconditional duty." Id. Consequently, the D.C. Circuit issued a writ of mandamus "precluding DOE from excusing its own delay [in the acceptance of contract holders' SNF] on the grounds that it has not yet prepared a permanent repository or interim storage facility." Id. at 761. Further, the D.C. Circuit stated that it "retain[ed] jurisdiction over this case pending compliance with the mandate issued herewith." Id.

As we explained in our prior briefing, the Solicitor General has asserted on more than one occasion his belief that the D.C. Circuit lacked jurisdiction to decide contractual issues relating to the terms of the Standard Contract. Nevertheless, the writ of mandamus that the D.C. Circuit issued, which applies specifically to NPPD as a party to that action, has not been lifted. Having further evaluated this issue, we have concluded that, based upon the D.C. Circuit's writ of mandamus and our continuing obligation to comply with that court's orders, we are currently precluded from arguing that the "Unavoidable Delays" clause excuses DOE's delays arising from the absence of a facility at which DOE may dispose of NPPD's SNF. Accordingly, we may not rely upon that clause to excuse DOE's delay towards NPPD here at this time.

## II. THE COURT SHOULD RECONSIDER ITS PRIOR JURISDICTIONAL ANALYSIS IN THIS CASE, CONSISTENT WITH THE ANALYSES PREVIOUSLY ADOPTED BY SEVERAL COURTS OF APPEALS

In its March 30, 2005 order, in which it vacated Judge Sypolt's prior January 31, 2005 order regarding jurisdiction, this Court adopted the opinions of Judge Lettow and Senior Judge Wiese in Boston Edison Co. v. United States, 64 Fed. Cl. 167 (2005), and Duke Power Co. v.

United States, No. 98-485C (Fed. Cl. March 3, 2005), respectively, in finding that this Court possesses jurisdiction to entertain NPPD's contract claims. Although, as we have previously explained, we agree that this Court possesses jurisdiction to entertain NPPD's contract claims, the basis upon which this Court has found jurisdiction – that section 119, the judicial review provision of the NWPA, does not apply to section 302 of the Act – creates a substantial conflict with the United States Courts of Appeals for the District of Columbia, the Sixth Circuit, and the Eleventh Circuit and creates uncertainty regarding the jurisdictional parameters of the Nuclear Waste Policy Act ("NWPA"), 42 U.S.C. §§ 10101-10270.

We believe it necessary to request that the Court reconsider its jurisdictional analysis here to eliminate the conflict between this Court and the various courts of appeals, particularly since this jurisdictional conflict heightens the difficulties associated with the application of res judicata to the D.C. Circuit's prior opinions. As we have explained in prior briefing, the Federal Circuit has held that, where a sister court has improperly asserted jurisdiction over a matter involving the Federal Government and where that assertion of jurisdiction directly implicates issues of sovereign immunity, the sister court's ruling is void. Christopher Village, L.P. v. United States, 360 F.3d 1319, 1329-30, 1333 (Fed. Cir. 2004). Thus, if this Court's jurisdictional analysis is correct, it would mean that the D.C. Circuit lacked jurisdiction to decide numerous cases over which it has previously asserted jurisdiction, including the two cases upon which the various SNF plaintiffs in this Court have repeatedly relied to support their arguments regarding liability, Indiana Michigan Power Co. v. Department of Energy, 88 F.3d 1272 (D.C. Cir. 1996), and Northern States Power Co. v. United States Department of Energy, 128 F.3d 754 (D.C. Cir. 1997), cert. denied, 525 U.S. 1015 & 1016 (1998). As explained below, contrary to

this Court's finding that section 119 of the NWPA, which contains the judicial review provision of that statute, does not apply to section 302 of Title III of the NWPA, the D.C. Circuit, followed by other Federal courts of appeals, has consistently and repeatedly held for over 20 years that the judicial review provisions of section 119 encompass section 302 and provides the United States courts of appeals with original and exclusive jurisdiction to entertain challenges to actions taken pursuant to that section. We can identify no basis upon which to overrule 20 years of Federal appellate court precedent.

The NWPA is divided into five titles: Title I, entitled "Disposal and Storage of High-Level Radioactive Waste, Spent Nuclear Fuel, and Low-Level Radioactive Waste;" Title II, entitled "Research, Development, And Demonstration Regadring Disposal Of High-Level Radioactive Waste And Spent Nuclear Fuel;" Title III, entitled "Other Provisions Relating To Radioactive Waste;" Title IV, "Nuclear Waste Negotiator;" and Title V, "Nuclear Waste Technical Review Board." See 96 Stat. 2201 (enacted Jan. 7, 1983). Within Title I of the Act are eight subtitles, Subtitles A through H. Titles II through V do not contain any subtitles.[1] Id.

The provisions of the NWPA that provide for the creation of a contract for the disposal of spent nuclear fuel ("SNF") and high-level radioactive waste ("HLW") and for payments of fees into the Nuclear Waste Fund ("NWF") are contained in Title III of the Act, see 42 U.S.C. § 10222(a), although, in earlier drafts of the Act, the fee and contracting provisions were

---

[1] When codified, the NWPA became "Chapter 108" of Title 42 of the United States Code. When codified, the term "Title," as it had been used in the statute as published in the Statutes At Large, was changed to "Subchapter," and the term "Subtitle" was changed to "Part." Accordingly, in various court decisions, the words "Title" and "Subchapter," and the words "Subtitle" and "Part," are used interchangeably.

contained in the provisions of Title I. The provisions that govern the development of a repository for the disposal of SNF and HLW are contained in Subtitle A of Title I.

Section 119 of the NWPA, which is contained in Subtitle A of Title I of the Act, provides for judicial review of actions and inactions by the Secretary of Energy, providing original and exclusive jurisdiction in the United States Court of Appeals for the District of Columbia Circuit and the various regional circuits over the following:

> Except for review in the Supreme Court of the United States, the United States courts of appeals[2] shall have original and exclusive jurisdiction over any civil action –
>
> (A) for review of any final decision or action of the Secretary, the President, or the Commission under this subtitle;
>
> (B) alleging the failure of the Secretary, the President, or the Commission to make any decision, or take any action, required under this subtitle;
>
> (C) challenging the constitutionality of any decision made, or action taken, under any provision of this subtitle;
>
> (D) for review of any environmental impact statement . . . with respect to any action under this subtitle . . .;
>
> (E) for review of any environmental assessment prepared under section 112(b)(1) [in Subtitle A of Title I] or 135(c)(2) [in Subtitle B of Title I]; or
>
> (F) for review of any research and development activity under title II.

---

[2] Section 119(a)(2) of the NWPA defines the venue for challenges under section 119 as "the judicial circuit in which the petitioner resides or has its principal office, or in the United States Court of Appeals for the District of Columbia." 42 U.S.C. § 10139(a)(2).

42 U.S.C. § 10139(a)(1).[3]

Although the language of section 119 only expressly refers to matters arising under the "Subtitle" in which section 119 is located – Subtitle A of Title I – and to matters specifically referenced in Subtitle B of Title I and in Title II, the United States Court of Appeals for the District of Columbia Circuit has held unequivocally that various actions or decisions arising under Title III of the NWPA fall within the original and exclusive jurisdiction of the United States courts of appeals pursuant to section 119. In General Electric Uranium Management Corp. v. United States Department of Energy, 764 F.2d 896 (D.C. Cir. 1985), the D.C. Circuit reviewed the history, development, and purposes of the NWPA and concluded, in reviewing a challenge to the Secretary's establishment of NWF fees under section 302 of Title III, that Congress intended to include review of actions under section 302 in the courts of appeals' original and exclusive jurisdiction. Recognizing that section 302 in Title III "has no specific review provision" in the NWPA, the Court found "it inconceivable that Congress intended to have review of all actions concerning waste disposal in the court of appeals – including the choice, characterization, approval of, and authorization for construction of candidate sites; federal agency actions such as coordination and environmental review; research and development questions relating to the disposal of high-level wastes and SNF, including funding and payments to the states and Indian tribes under the Act – except for questions concerning the composition of the [NWF] and a few other matters located in Subchapter III." Id. at 901-02.

---

[3] In addition, section 221 of the Act, 42 U.S.C. § 10201, expressly provides for judicial review of research and development activities under Title II in accordance with section 119.

The D.C. Circuit also found that "[t]he structure of the Waste Act supports [its] view that it would be singularly incongruous for fee questions [in Title III] to be subject to judicial review in both the district courts and the courts of appeals, while all other matters would go directly to the courts of appeals." Id. at 902. As the D.C. Circuit explained, the NWPA focuses only on the disposal of particular nuclear wastes, making it likely that Congress intended for a uniform judicial review of all of the matters identified in the statute relating to disposal:

> The Waste Act has a limited and integral purpose and structure. It focuses *only* on the disposal of nuclear wastes. Subchapter I addresses permanent repositories for the disposal of high-level wastes and SNF in Part A, an interim storage program in Part B, monitored retrievable storage in Part C, and low-level waste disposal in Part D. Subchapter II provides for research, development and demonstration, and Subchapter III is a catch-all for other necessary provisions. In Part A of Subchpater I, Congress expressed its goal to set up a Nuclear Waste Fund, and its intention that generators and owners of nuclear wastes and SNF should bear the costs of disposal. The mere fact that Congress granted the Secretary the authority to enter into contracts to provide for the payment of those disposal costs in a different subchapter does not compel the conclusion that Congress thereby intended that there would be entirely different judicial review procedures for those contracts.

Id. (emphasis added).

The D.C. Circuit also noted that, "as we look at the statute as a whole," section 302(a)(1) "gives the Secretary the authority to enter into contracts to provide the fees for disposal '[i]n the performance of his functions *under this chapter* . . . . .'"[4] Id. (italics in original). "In this context," the court held, "the word 'chapter' refers to Chapter 108 of Title 42 which, of course,

[4] In the original statute as enacted, prior to its codification in the United States Code, the language of the Act read "[i]n the performance of his duties *under this Act* . . . ." 96 Stat. 2201, 2257 (italics added).

encompasses the entire Waste Act." Id. "Therefore, [the court found] that section 302 incorporates by reference the functional responsibilities of the Secretary under Part A of Subchapter I." Id. The court also found that, "[b]y the same token, the purpose to establish the Waste Fund . . . is found in Part A of Subchapter I" and that "[t]his purpose incorporates by reference the contractual provisions of section 302." Id. "It thus appears," the court held, "that, from whatever vantage point we approach the statutory construction problem that we address here, we inevitably conclude that Congress intended to vest original and exclusive jurisdiction with the courts of appeals" Id.; see Midwest Indep. Transmission Sys. Operator, Inc. v. FERC, 388 F.3d 903, 909-10 (D.C. Cir. 2005) (discussing basis of General Electric's jurisdictional ruling).[5]

In the 20 years since the General Electric decision was issued, both the D.C. Circuit and the Eleventh Circuit have asserted jurisdiction over challenges to the Secretary's actions or alleged inactions arising out of section 302 of the NWPA. See, e.g., Wisconsin Elec. Power Co.

---

[5] This rationale also applies to section 302(a)(5), the portion of the NWPA that authorizes the Secretary of Energy to enter into contracts with the owners and generators of SNF. Section 302(a)(5), as enacted, provided that contracts "entered into under this section shall provide that . . . (B) in return for the payment of fees established by this section, the Secretary, beginning not later than January 31, 1998, will dispose of the [HLW] or [SNF] involved as provided in this subtitle." 96 Stat. at 2258 (emphasis added). Yet, there is no "subtitle" in Title III, in which section 302 is contained, and the use of the term "subtitle" apparently was the result of the transfer of section 302 during the legislative drafting process from Title I to Title III. (Although the word "subtitle" in section 302(a)(5)(B) was changed to "subchapter" (rather than "part") when codified in the United States Code, the notes to that section indicate that the publishers "translated" the words "this subtitle" to "this subchapter to reflect the probable intent," in their view, "of Congress because Title III of Pub. L. 97-425, which enacted this subchapter, does not contain subtitles," 42 U.S.C. § 10222 Historical and Statutory Notes.) Further, and importantly, the statutory provisions defining the work necessary and requirements for disposal of SNF and HLW are contained in Subtitle A of Title I of the NWPA, indicating, in accordance with the rationale of the D.C. Circuit in General Electric, that section 302(a)(5) relates to the provisions of Subtitle A of Title I of the statute.

v. Department of Energy, 778 F.2d 1, 2-3 (D.C. Cir. 1985) (finding that section 119 of the NWPA provides the United States courts of appeals with original and exclusive jurisdiction to entertain challenges to action or inaction arising under section 302 of the NWPA); Commonwealth Edison Co. v. United States Department of Energy, 877 F.2d 1042, 1045 (D.C. Cir. 1989) ("[b]ecause we interpret Commonwealth Edison's challenge as seeking review of a 'final decision or action of the Secretary' in the form of a regulation promulgated under the Act, there is no question that we have jurisdiction to hear the petition" challenging the manner in which the NWF fee is calculated under section 302 of Title III); Alabama Power Co. v. United States Dep't of Energy, 307 F.3d 1300, 1302 (11th Cir. 2002) (assuming jurisdiction of challenge to settlement agreement fee reimbursement provision purportedly in conflict with section 302(d) of Title III). Similarly, the Sixth Circuit has found that Congress intended that the judicial review provisions of section 119 encompass more than the specific subtitles and sections expressly identified in section 119. See State of Tenn. v. Herrington, 806 F.2d 642, 647-51 (6th Cir. 1986) (finding that, despite language of section 119 referencing only Subtitle A of Title I, the NWPA judicial review provision actually applied to review of actions under Subtitle C of Title I).

Further, Congress's actions since the General Electric decision was issued indicate its implicit approval of that interpretation. Congress enacted significant amendments to the NWPA in 1987, including a redirection of DOE's program to permit DOE to evaluate only Yucca Mountain as a potential repository site, 42 U.S.C. § 10172, and the addition of several provisions regarding a potential Monitored Retreivable Storage facility. Id. §§ 10162-10169. Yet, even though the D.C. Circuit's interpretations of section 119's judicial review provisions had been

previously issued on more than one occasion, Congress did not amend section 119. "Congress is presumed to be aware of an administrative or judicial interpretation of a statute and to adopt that interpretation when it re-enacts a statute without change." Lorillard v. Pons, 434 U.S. 575, 580-81 (1978); see Cannon v. University of Chicago, 441 U.S. 677, 696-97 (1979) (Congress is presumed to know existing law when enacting statutes). Although Congress amended portions of, rather than "re-enacted," the NWPA in 1987, its actions are similar, where the statute was the subject of significant attention and revision. In another context, the Supreme Court has recognized that "[t]he fact that a comprehensive reexamination and significant amendment of the [statute at issue there] left intact the statutory provisions under which the federal courts had implied a cause of action is itself evidence that Congress affirmatively intended to preserve that remedy." Merrill Lynch, Pierce, Fenner & Smith v. Curran, 456 U.S. 353, 381-82 (1982). In the circumstances presented here, Congress should be viewed as understanding and acquiescing in the D.C. Circuit's interpretation of section 119.

This Court's reinterpretation of section 119's reach complicates these cases. The two cases upon which the SNF plaintiffs in this Court repeatedly rely and which bar the Government from relying upon the contract's "Unavoidable Delays" clause, Indiana Michigan Power Co. v. Department of Energy, 88 F.3d 1272 (D.C. Cir. 1996), and Northern States Power Co. v. United States Department of Energy, 128 F.3d 754 (D.C. Cir. 1997), cert. denied, 525 U.S. 1015 & 1016 (1998), arise out of section 302 of Title III and depend upon the jurisdictional grant provided by section 119. Under the logic of the jurisdictional interpretation that the Court presented in Boston Edison, the D.C. Circuit lacked jurisdiction to consider or decide either of those cases. With all due respect, this Court's decisions here and in Boston Edison and Duke Power create a

jurisdictional conundrum. Not only do they generate difficulties in defining and determining the appropriate jurisdictional divisions between this Court, the courts of appeals, and potentially the Federal district courts or other fora,[6] they also generate difficulties in defining the scope of res judicata that this Court should apply to other courts of appeals' decisions (and, conversely, that other courts of appeals which have found they possess original and exclusive jurisdiction to entertain matters arising under section 302 should apply to this Court's decisions that impinge upon the courts of appeals' jurisdiction). Further, in light of the courts of appeals' longstanding interpretations, they may create a situation in which different courts claim to have "exclusive and original jurisdiction" to entertain the same claims and complaints. We can see no basis for revisiting the jurisdictional interpretation of section 119 that has been well-established for 20 years.

Nevertheless, even though section 119's judicial review provisions apply to section 302, this Court still possesses jurisdiction to entertain NPPD's contract claims. Although Judge Sypolt relied upon the Federal Circuit's decision in City of Burbank v. United States, 273 F.3d 1370 (Fed. Cir. 2001), to support her view that NPPD's contract case was subject to section 119, that decision actually supports jurisdiction in this Court. In City of Burbank, the judicial review statute at issue, in many ways like the judicial review provision in the NWPA, provided for the Ninth Circuit's review of, among other things, "final actions and decisions taken pursuant to this chapter by the Administrator or the Council" of the Bonneville Power Authority ("BPA")

---

[6] This Court's jurisdictional statutes would not permit it to entertain suits relating to all of the matters contained in Title III of the NWPA. Accordingly, if the Federal courts of appeals lacked jurisdiction to entertain challenges to actions arising under Title III, it is unclear where those matters would be raised.

relating to certain sales of electric energy. After an entity entered into and sued upon a contract with BPA, the Federal Circuit found that, "where disputed contract provisions are statutorily mandated or are arrived at via an administrative hearing under the APA in which the pertinent facts are reflected in an administrative record, the Ninth Circuit possesses exclusive jurisdiction" under the provision at issue and that "[t]his is so even where a complainant styles her challenge as a breach of contract claim because the challenge is a collateral attack on the Act or regulation." Id. at 1380. Yet, it also found that, "[i]n contrast, where, as here, the alleged breaches of contract pertain to terms that were freely negotiated in an arms-length transaction and where the facts pertinent to those negotiations fall outside an administrative record," jurisdiction is proper in this Court and does not fall within the judicial review provision that was being considered. Id.

Similarly, NPPD's complaint here is about DOE's failure to continue accepting SNF after January 31, 1998, pursuant to the terms of the Standard Contract. Although the NWPA mandates that DOE begin SNF acceptance by that date, it does not contain any provision regarding SNF acceptance after that date, regarding DOE's obligations for SNF acceptance after January 31, 1998, or regarding any "rate" by which DOE must accept SNF after January 31, 1998. Accordingly, under the jurisdictional analysis in City of Burbank, this Court, rather than the D.C. Circuit or the other regional courts of appeals, possesses jurisdiction to entertain NPPD's contract claims arising out of DOE's failure to continue SNF after January 31, 1998. Because of the difficulties that will arise from this Court's current jurisdictional analysis, which was conducted without full briefing of the meaning of the D.C. Circuit's past opinions upon this

matter, we respectfully request that the Court revise that analysis and adopt the D.C. Circuit's interpretation of section 119 outlined in General Electric and subsequent decisions.

## CONCLUSION

For the foregoing reasons, we respectfully withdraw our request that the Court evaluate our ability to rely upon the "Unavoidable Delays" clause in this particular case, as it is barred by the D.C. Circuit's writ of mandamus applicable to NPPD. We further request that the Court reconsider its jurisdictional analysis and adopt the jurisdictional rationale set forth by the D.C. Circuit in General Electric.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/Heide L. Herrmann
HEIDE L. HERRMAN
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 514-4325
Fax: (202) 307-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
Department of Energy
1000 Independence Avenue, S.W.
Washington, D.C. 20585

July 8, 2005

CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of July 2005, a copy of the foregoing "DEFENDANT'S RESPONSE TO THE COURT'S JUNE 21, 2005 ORDER AND MOTION FOR PARTIAL RECONSIDERATION OF ITS MARCH 30, 2005 ORDER" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Harold D. Lester, Jr.