**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
(Electronically Filed on February 3, 2006)

| | |
|---|---|
| **NEBRASKA PUBLIC POWER DISTRICT,** Plaintiff, v. **THE UNITED STATES,** Defendant. | No. 01-116C (Judge Allegra) |

**PLAINTIFF'S RESPONSE TO THE COURT'S OCTOBER 14, 2005 ORDER**

Plaintiff Nebraska Public Power District ("NPPD"), through the undersigned counsel, respectfully responds to the Court's October 14, 2005 Order directing the parties to brief the issue of whether the writ of mandamus issued by the U.S. Court of Appeals for the District of Columbia Circuit (the "D.C. Circuit") in Northern States Power Co. v. Dep't of Energy, 128 F.3d 754, 760 (D.C. Cir. 1997) ("Northern States I") is binding in the instant action.[1]

The D.C. Circuit's decisions in Northern States I and Northern States Power Co. v. Dep't of Energy, No. 97-1064 et al., 1998 WL 276581 (D.C. Cir. May 5, 1998) ("Northern States II") enforced by mandamus that Court's earlier decision in Indiana Michigan Power Co. v. Dep't of Energy, 88 F.3d 1272 (D.C. Cir. 1996) ("Indiana Michigan"). For reasons explained below, these decisions were properly within the D.C. Circuit's jurisdiction and are binding on the instant action. Defendant's (the "Government") current assertions to the contrary – which represent a complete reversal from its position at the U.S. Court of Appeals for the Federal Circuit (the "Federal Circuit") regarding the precedential value of Northern States I and II – are wholly

[1] NPPD's response was originally due on December 12, 2005, but that due date was revised to January 6, 2006 and February 3, 2006 per the Court's November 15, 2005 and January 13, 2006 orders, respectively.

without merit.[2] Moreover, the Government specifically cited Northern States I as precedent in its attempt to preclude plaintiff utilities from filing breach of contract suits directly in this Court. Although the Federal Circuit rejected the Government's interpretation of Northern States I in Northern States Power Co. v. United States, 224 F.3d 1361, 1366 (Fed. Cir. 2000) ("Northern States III"), the Federal Circuit did not dispute in Northern States III that the D.C. Circuit's Northern States I decision is binding. In short, the fact that the Government relied on the D.C. Circuit's precedent as binding suggests that the Government cannot credibly advance a diametrically opposite position now. Hence, the D.C. Circuit's writ of mandamus in Northern States I continues to bar the Government from relying upon Article IX.A, the "Unavoidable Delays" clause of the Standard Contract For Disposal Of Spent Nuclear Fuel And/Or High Level Radioactive Waste (the "Standard Contract") to excuse its breach of NPPD's contract.

The D.C. Circuit properly exercised its authority under Section 119 of the Nuclear Waste Policy Act (the "NWPA"), 42 U.S.C. § 10139, to render its decisions in Northern States I and II. Exhibit B at 4-6. While the Government's PSEG appeal brief contends that the courts of appeals lost their ability to enforce the NWPA vis-à-vis the Standard Contracts 180 days after the 1983 publication of the Standard Contract in the Federal Register, the U.S. Court of Appeals for the Eleventh Circuit rejected this argument in Alabama Power Co. v. Dep't of Energy, 307 F.3d 1300, 1311 (11th Cir. 2002). Exhibit B at 9-10. Utilities such as NPPD were not challenging the terms and conditions of the Standard Contract in Indiana Michigan or in Northern States I and II, but rather DOE's interpretation of its obligations under the NWPA. Id. at 10-11. Indeed,

[2] The Government's December 27, 2005 response to the Court's October 14, 2005 Order attached the Government's response brief from a pending appeal at the Federal Circuit, PSEG Nuclear LLC v. United States, No. 05-5162 (Fed. Cir.) (the "PSEG appeal"), which brief alleges why the D.C. Circuit "exceeded its jurisdiction in issuing its writ of mandamus in [Northern States I]." For the Court's convenience, NPPD has attached the Plaintiffs-Appellants' initial and reply briefs from the PSEG appeal at Exhibits A and B, respectively.

Section 119 of the NWPA provides the D.C. Circuit (and regional circuits) with original and exclusive jurisdiction over challenges to APA-type agency actions taken by DOE under the NWPA. Exhibit A at 14-17; Exhibit B at 4-5. The D.C. Circuit properly availed itself of such jurisdiction in Indiana Michigan and properly enforced its own mandate in Northern States I and II. Exhibit A at 22-24.

## CONCLUSION

As explained above and in the PSEG appeal, the jurisprudence at the federal appellate courts regarding their jurisdiction and DOE's obligations under the Standard Contract is well-settled and binding on this Court. The Government may not rely on the Unavoidable Delays clause to abrogate the NWPA's unconditional statutory obligation for DOE to begin performance by January 31, 1998, and to excuse DOE's continuing non-performance of the Standard Contract. The D.C. Circuit's writ of mandamus in Northern States I and II enforcing the NWPA is proper and should not be revisited here.

Dated: February 3, 2006

Respectfully submitted,

s/ Alex D. Tomaszczuk by s/ Jack Y. Chu
Alex D. Tomaszczuk
**PILLSBURY WINTHROP**
**SHAW PITTMAN LLP**
1650 Tysons Boulevard
McLean, Virginia 22102-4859
(703) 770-7940
(703) 770-7901 (fax)
Counsel of Record for Plaintiff
Nebraska Public Power District

Of Counsel:

Jay E. Silberg
Daniel S. Herzfeld
Jack Y. Chu
**PILLSBURY WINTHROP**
**SHAW PITTMAN LLP**
2300 N Street, N.W.
Washington, D.C. 20037-1128
(202) 663-8000
(202) 663-8007 (fax)

**No. 05-5162**

---

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

---

**PSEG NUCLEAR, L.L.C., and**
**PUBLIC SERVICE ELECTRIC AND GAS COMPANY,**

**Plaintiffs-Appellants,**

**v.**

**UNITED STATES,**

**Defendant-Appellee.**

---

**Appeal from the United States Court of Federal Claims**
**in 01-CV-551, Senior Judge Bohdan A. Futey**

---

**BRIEF OF PLAINTIFFS-APPELLANTS**

**Alex D. Tomaszczuk**
**PILLSBURY WINTHROP**
**SHAW PITTMAN LLP**
**1650 Tysons Boulevard**
**McLean, VA 22102-4859**
**Tel: (703) 770-7940**
**Fax: (703) 770-7901**

***Counsel of Record for***
***Plaintiffs-Appellants***

***Of Counsel*:**

**Jay E. Silberg**
**PILLSBURY WINTHROP**
**SHAW PITTMAN LLP**
**2300 N Street, NW**
**Washington, DC 20037-1128**
**Tel: (202) 663-8000**

**Daniel S. Herzfeld**
**Jack Y. Chu**
**PILLSBURY WINTHROP**
**SHAW PITTMAN LLP**
**1650 Tysons Boulevard**
**McLean, VA 22102-4859**
**Tel: (703) 770-7900**

**October 14, 2005**

# CERTIFICATE OF INTEREST

Counsel for the Plaintiffs-Appellants, PSEG Nuclear, L.L.C., and Public Service Electric and Gas Company, certifies the following:

1. The full name of every party or amicus represented by me is:

   PSEG Nuclear, L.L.C., and Public Service Electric and Gas Company.

2. PSEG Nuclear, L.L.C., and Public Service Electric and Gas Company, the parties named in the caption, are the real parties in interest represented by me.

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the parties represented by me are:

   PSEG Nuclear, L.L.C. is a wholly-owned subsidiary of PSEG Power, LLC. PSEG Power, LLC is a wholly-owned subsidiary of Public Service Enterprise Group, a publicly-traded holding company. Public Service Electric and Gas Company is the predecessor in interest to PSEG Nuclear, L.L.C.; Public Service Electric and Gas Company has issued no shares to the public and has no parent companies.

4. Not applicable, see paragraph 3.

5. The names of all law firms and the partners and associates that appeared for PSEG Nuclear, L.L.C., and Public Service Electric and Gas Company, in the lower tribunal or are expected to appear for Plaintiffs-Appellants in this court are:

   (a) Appearing in the trial court:

   SHAW PITTMAN LLP
   (now PILLSBURY WINTHROP
   SHAW PITTMAN LLP)
   Alex D. Tomaszczuk, Counsel of Record
   Jay E. Silberg
   Devon E. Hewitt
   David J. Cynamon
   Michael G. Lepre

Douglas J. Rosinski
Daniel S. Herzfeld
Jack Y. Chu
PSEG NUCLEAR, L.L.C. and PUBLIC SERVICE ELECTRIC AND GAS COMPANY
Jeffrie Keenan

(b) Expected to appear on appeal:

PILLSBURY WINTHROP
SHAW PITTMAN LLP
Alex D. Tomaszczuk, Counsel of Record
Jay E. Silberg
Daniel S. Herzfeld
Jack Y. Chu

Dated: October 14, 2005 [signature]

# TABLE OF CONTENTS

CERTIFICATE OF INTEREST ....................i

TABLE OF CONTENTS .................... iii

TABLE OF AUTHORITIES ....................v

STATEMENT OF RELATED CASES ....................x

JURISDICTIONAL STATEMENT ....................1

STATEMENT OF THE ISSUE ....................1

STATEMENT OF THE CASE ....................1

I. SUMMARY OF PROCEEDINGS BELOW ....................7

II. STATEMENT OF THE FACTS ....................7

A. The Standard Contracts ....................7

B. DOE Disavows Its Obligation To Perform By The January 31, 1998 Statutory And Contractual Deadline, But The D.C. Circuit Rejects This Position ....................7

C. PSEG And Other Utilities File Suit In The CFC To Pursue Remedies For Breach Of Their Standard Contracts ....................7

D. Judge Sypolt Issues Show Cause Order And Then Concludes That The CFC Lacks Subject-Matter Jurisdiction ....................7

E. PSEG And The Other Affected Utilities Petition For Permission To Appeal To This Court And Move For Reconsideration At The CFC ....................7

SUMMARY OF THE ARGUMENT ....................11

ARGUMENT ....................12

I. STANDARD OF REVIEW ....................7

II. THE NWPA JUDICIAL REVIEW PROVISION DOES NOT WITHDRAW THE CFC'S TUCKER ACT JURISDICTION OVER BREACH-OF-CONTRACT DAMAGES CLAIMS ........................... 7

A. The NWPA Judicial Review Provision, Like the Administrative Procedure Act, Provides Jurisdiction To Hear Only Appeals To Agency Action or Inaction ............................... 7

B. Courts Have Construed The NWPA To Allow For Tucker Act Jurisdiction In The CFC ................................................... 7

C. The D.C. Circuit Decisions Should Be Accorded Preclusive Effect ......................................................................... 7

III. THE NWPA DOES NOT OTHERWISE WITHDRAW THE CFC'S TUCKER ACT JURISDICTION TO HEAR BREACH-OF-CONTRACT DAMAGES CLAIMS ...................................................... 7

A. The NWPA Authorizes DOE To Enter Into "Contracts" ..................... 7

B. This Court Has Regularly Taken Jurisdiction Over Cases Involving Standard Contracts And Treated The Standard Contracts As "Contracts" ....................................................... 34

CONCLUSION AND STATEMENT OF RELIEF ............................................... 39

ADDENDUM:
*Fla. Power & Light Co. v. United States*, 64 Fed. Cl. 37 (2005)

CERTIFICATE OF SERVICE

RULE 32(a)(7)(C) CERTIFICATE

# TABLE OF AUTHORITIES

***Cases***

*Alabama Power Co. v. Dep't of Energy*,
307 F.3d 1300 (11th Cir. 2002) ........................................27

*Barrett Refining Corp. v. United States*,
242 F.3d 1055 (Fed. Cir. 2002) ........................................27

*Boston Edison Co. v. United States*,
64 Fed. Cl. 167 (2005) ........................................21

*Bowen v. Massachusetts*,
487 U.S. 879 (1988) ........................................17

*Britell v. United States*,
372 F.3d 1370 (Fed. Cir. 2004) ........................................17

*Brown Shoe Co. v. United States*,
370 U.S. 294 (1962) ........................................37

*Cherokee Nation of Okla. v. Leavitt*,
125 S. Ct. 1172 (2005) ........................................ 26, 33

*Christianson v. Colt Indus. Operating Corp.*,
486 U.S. 800 (1988) ........................................24

*City of Burbank v. United States*,
273 F.3d 1370 (Fed. Cir. 2001) ........................................ 13, 30, 31, 32, 34

*Consol. Edison Co. of N.Y. v. United States*,
247 F.3d 1378 (Fed. Cir. 2001) ........................................21

*County of Esmeralda v. Dep't of Energy*,
925 F.2d 1216, 1218 (9th Cir. 1991) ........................................15

*Doe v. United States*,
372 F.3d 1308 (Fed. Cir. 2004) ........................................ 16, 36

*Doko Farms v. United States*,
861 F.2d 255 (Fed. Cir. 1988) ........................................24

*Eastern Enters. v. Apfel*,
524 U.S. 498 (1998) ....................................................................................13

*Entergy Nuclear Generation Co. v. United States*,
64 Fed. Cl. 336 (2005)..................................................................................21

*Entergy Nuclear Indian Point 2, LLC v. United States*,
64 Fed. Cl. 515 (2005)..................................................................................21

*Fla. Power & Light Co. v. United States*,
64 Fed. Cl. 37 (2005)............................................................................ *passim*

*Fla. Power & Light Co. v. United States*,
66 Fed. Cl. 93 (2005)............................................................................ 11, 21

*General Electric Uranium Mgt. Corp. v. Dep't of Energy*,
764 F.2d 896 (D.C. Cir. 1985)............................................................ 15, 16, 34

*Hanlin v. United States*,
214 F.3d 1319 (Fed. Cir. 2000) .......................................................... 12, 14, 17

*Indiana Mich. Power Co. v. Dep't of Energy*,
88 F.3d 1272 (D.C. Cir. 1996) ("*Indiana Michigan I*") ............ x, 5, 17, 18, 28, 32

*Indiana Mich. Power Co. v. United States*,
422 F.3d 1369 (Fed. Cir. 2005) ("*Indiana Michigan II*") ....................... 36, 37, 38

*Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*,
456 U.S. 694 (1982) ....................................................................................22

*Int'l Air Response v. United States*,
324 F.3d 1376 (Fed. Cir. 2003) ........................................................... 22, 23

*Leboeuf, Lamb, Greene, & McRae, L.L.P. v. Abraham*,
347 F.3d 315 (D.C. Cir. 2003).......................................................................16

*Maine Yankee Atomic Power Co. v. United States*,
225 F.3d 1336 (Fed. Cir. 2000) ............................................ 4, 6, 17, 26, 34, 35

*Nat'l Ass'n of Regulatory Utility Commissioners v. Dep't of Energy*,
851 F.2d 1424 (D.C. Cir. 1988).....................................................................15

*Northern States Power Co. v. Dep't of Energy*,
128 F.3d 754 (D.C. Cir. 1997) ("*Northern States I*") .................................. *passim*

*Northern States Power Co. v. Dep't of Energy*,
No. 97-1064 *et al.*, 1998 WL 276581
(D.C. Cir. May 5, 1998) ("*Northern States II*") ......................................... *passim*

*Northern States Power Co. v. United States*,
224 F.3d 1361 (Fed. Cir. 2000) ("*Northern States III*") ........................... 6, 34, 35

*Regional Rail Reorg. Act Cases*,
419 U.S. 102 (1974) ...........................................................................................13

*Roedler v. Dep't of Energy*,
255 F.3d 1347 (Fed. Cir. 2001) ..........................................................................36

*Ruckelshaus v. Monsanto Co.*,
467 U.S. 986 (1984) ...........................................................................................13

*Sacramento Mun. Util. Dist. v. United States*,
63 Fed. Cl. 495 (2005)........................................................................................21

*Stoll v. Gottlieb*,
305 U.S. 165 (1938) ...........................................................................................23

*Sys. Fuels, Inc. v. United States*,
65 Fed. Cl. 163 (2005)........................................................................................21

*Sys. Fuels, Inc. v. United States*,
66 Fed. Cl. 722 (2005)........................................................................................21

*Torncello v. United States*,
681 F.2d 756 (Ct. Cl. 1982)................................................................................33

*TRW Envtl. Safety Sys., Inc. v. United States*,
18 Cl. Ct. 33 (1989) ............................................................................................16

*United States v. Sherwood*,
312 U.S. 584 (1941) ...........................................................................................36

*United States v. Stauffer Chem. Co.*,
464 U.S. 165 (1984) ...........................................................................................22

*United States v. Winstar Corp.*,
518 U.S. 839 (1996) ........................................ 26, 33

*Wis. Elec. Power Co. v. Dep't of Energy*,
211 F.3d 646 (D.C. Cir. 2000)........................................ 5, 20, 21, 24, 31

*Yankee Atomic Elec. Co. v. United States*,
54 Fed. Cl. 306 (2002)........................................7

***Statutes***

Administrative Procedure Act,
5 U.S.C. §§ 701-706........................................15

28 U.S.C. § 1292........................................1

Little Tucker Act,
28 U.S.C. § 1346 ........................................ 34, 35, 36

Tucker Act,
28 U.S.C. § 1491 ........................................ *passim*

Nuclear Waste Policy Act § 119,
42 U.S.C. § 10139 ........................................ *passim*

Nuclear Waste Policy Act § 302,
42 U.S.C. § 10222 ........................................ 2, 26, 27, 28, 29

***Miscellaneous***

10 C.F.R. § 961.11 ........................................ 3, 28

Standard Contract for Disposal of Spent Nuclear Fuel and/or High Level
Radioactive Waste, Notice of Proposed Rulemaking,
48 Fed. Reg. 5458 (Feb. 4, 1983)........................................ 2, 33

Standard Contract for Disposal of Spent Nuclear Fuel and/or
High-Level Radioactive Waste, Final Rule,
48 Fed. Reg. 16,590 (Apr. 18, 1983)........................................3

Notice of Inquiry,
59 Fed. Reg. 27,007 (May 25, 1994)........................................4

Final Interpretation Of Nuclear Waste Acceptance Issues,
60 Fed. Reg. 21,793 (May 3, 1995)....................................................................4

Restatement (Second) of Contracts § 1 (1981). .......................................................26

## STATEMENT OF RELATED CASES

This case is one of approximately 60 cases brought in the United States Court of Federal Claims ("CFC") seeking breach of contract, breach of the implied covenant of good faith and fair dealing, and Fifth Amendment takings damages for the Department of Energy's ("DOE") failure to begin removal of spent nuclear fuel ("SNF") in January 1998 from nuclear utilities around the United States. A decision in this appeal will likely affect virtually all of these cases, because the utilities have pled breach-of-contract damages causes of action similar to Plaintiffs-Appellants.

No party to this action has previously appealed any decision in this action to this Court or to any other appellate court. Before filing this case at the CFC, however, Plaintiff-Appellant Public Service Electric and Gas Company (the predecessor in interest to Plaintiff-Appellant PSEG Nuclear, L.L.C.) joined other utilities in filing separate actions in the U.S. Court of Appeals for the District of Columbia Circuit seeking to establish DOE's statutory obligations under the Nuclear Waste Policy Act ("NWPA") and the enforcement of DOE's obligations under the NWPA. *See Indiana Mich. Power Co. v. Dep't of Energy*, 88 F.3d 1272 (D.C. Cir. 1996); *see also Northern States Power Co. v. Dep't of Energy*, 128 F.3d 754 (D.C. Cir. 1997).

## JURISDICTIONAL STATEMENT

On January 31, 2005, the CFC (1) concluded it lacked jurisdiction under the Tucker Act to hear PSEG Nuclear, L.L.C., and Public Service Electric and Gas Company's (together "PSEG") breach-of-contract damages cause of action and (2) certified the case for interlocutory appeal. *See Fla. Power & Light Co. v. United States*, 64 Fed. Cl. 37 (2005) ("*Florida Power*"), Appendix ("A") 1. On February 10, 2005, PSEG timely petitioned this Court for permission to appeal. On August 4, 2005, this Court granted PSEG's petition and PSEG perfected its appeal by submitting its required fees to the Clerk of the CFC. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. §§ 1292(c)(1) & (d)(2).

## STATEMENT OF THE ISSUE

Does the U.S. Court of Federal Claims have subject-matter jurisdiction under the Tucker Act, 28 U.S.C. § 1491, to hear a cause of action for damages alleging breach of PSEG's Standard Contracts for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste?

## STATEMENT OF THE CASE

### I. SUMMARY OF PROCEEDINGS BELOW

PSEG filed suit in the CFC because the U.S. Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") had concluded that the CFC, not the D.C. Circuit, was the proper forum for contract-based damages claims under its

contracts with DOE. The Government agreed with that proposition. *Florida Power* nonetheless concludes that the CFC lacks subject-matter jurisdiction over PSEG's breach-of-contract damages claims. *See generally Florida Power*, 64 Fed. Cl. at 37, A1. After the CFC denied PSEG's motion for reconsideration in an unpublished decision, A50-A64, this Court granted PSEG's petition for permission to appeal to determine whether the CFC has subject-matter jurisdiction under the Tucker Act to hear PSEG's breach-of-contract damages claims.

## II. STATEMENT OF THE FACTS

### A. The Standard Contracts

Section 302 of the NWPA directed DOE to enter into contracts with domestic nuclear utilities for the acceptance of title, subsequent transportation, and disposal of the utilities' SNF and high-level radioactive waste ("HLW") in return for the utilities' payment of fees. *See generally* 42 U.S.C. § 10222(a). The NWPA directed DOE to include several terms and conditions in these contracts, one of which was that DOE begin to dispose of SNF by January 31, 1998. *Id.* § 10222(a)(5)(B). In 1983, DOE opted to use notice-and-comment rulemaking to create a standard form contract with identical terms and conditions. *See* Standard Contract for Disposal of Spent Nuclear Fuel and/or High Level Radioactive Waste ("Standard Contract"), Notice of Proposed Rulemaking, 48 Fed. Reg. 5458, 5459 (Feb. 4, 1983) ("DOE determined that it would be most appropriate to develop this

proposed standard contract through rulemaking because this process presents the best opportunity for interested persons, particularly the affected parties, to participate in developing the standard contract which will be used in DOE's nuclear waste disposal activities. Although DOE recognizes that some situations may require special contractual provisions, DOE intends to develop and use, to the maximum extent practicable, a standard contract to specify the rights and duties of the parties."); *see also generally* Standard Contract for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste, Final Rule, 48 Fed. Reg. 16,590 (Apr. 18, 1983) (final version available at 10 C.F.R. § 961.11).

On June 13, 1983, PSEG – through Plaintiff-Appellant Public Service Electric and Gas Company – executed long-term contracts with the United States Department of Energy ("DOE"). The contracts covered PSEG's Hope Creek nuclear power station, Unit No. 1, and Salem nuclear power station, Units Nos. 1 and 2, which stations are located in Hancocks Bridge, New Jersey. A72, A135. Since executing the contracts, PSEG has paid DOE over $540 million in exchange for DOE's anticipated performance.

In fact, all utilities entered into essentially identical contracts based on the "Standard Contract" formulated by DOE. *See, e.g.*, A72, A77, A135, A140. Pursuant to NWPA § 302, all of these Standard Contracts (including PSEG's contracts) state that DOE was responsible for beginning acceptance and removal of

SNF and HLW no later than January 31, 1998. *See Maine Yankee Atomic Power Co. v. United States*, 225 F.3d 1336, 1341-42 (Fed. Cir. 2000).

### B. DOE Disavows Its Obligation To Perform By The January 31, 1998 Statutory And Contractual Deadline, But The D.C. Circuit Rejects This Position

In 1994, DOE issued a "Notice of Inquiry" informing utilities that DOE would be unable to begin timely acceptance of SNF because DOE would have no place to store accepted SNF until at least 2010. 59 Fed. Reg. 27,007, 27,007-08 (May 25, 1994); *Maine Yankee*, 225 F.3d at 1338. The Notice took the "preliminary view" that DOE had no obligation to begin accepting SNF from utilities in 1998. 59 Fed. Reg. at 27,008. A year later, after receiving public comment, DOE "concluded that it does not have a legal obligation under the [NWPA] or the Standard Contract to begin disposal of SNF by January 31, 1998, in the absence of a repository or interim storage facility constructed under the Act." Final Interpretation Of Nuclear Waste Acceptance Issues, 60 Fed. Reg. 21,793, 21,794 (May 3, 1995) ("Final Interpretation").

A number of utilities (including PSEG) successfully challenged DOE's Final Interpretation at the D.C. Circuit. In a series of decisions construing the NWPA and the obligations it imposed on DOE, the D.C. Circuit concluded that DOE had an unconditional statutory obligation to begin acceptance of SNF on January 31, 1998. *Northern States Power Co. v. Dep't of Energy*, 128 F.3d 754, 755 (D.C. Cir.

1997) ("*Northern States I*"); *Indiana Mich. Power Co. v. Dep't of Energy*, 88 F.3d 1272, 1277 (D.C. Cir. 1996) ("*Indiana Michigan I*"). The D.C. Circuit barred DOE from using the "Unavoidable Delays" provision in the Standard Contracts to excuse its statutorily-required performance stating, "We held in *Indiana Michigan* that the NWPA imposes an unconditional obligation, memorialized in the Standard Contract, to begin disposing of the materials by January 31, 1998." *Northern States I*, 128 F.3d at 759. Otherwise, the D.C. Circuit denied the mandamus request of utilities, directing the utilities to "pursue the remedies provided in the Standard Contract in the event that DOE does not perform its duty to dispose of the SNF by January 31, 1998." *Northern States I*, 128 F.3d at 759; *see also Northern States Power Co. v. Dep't of Energy*, No. 97-1064 *et al.*, 1998 WL 276581, at *2 (D.C. Cir. May 5, 1998) ("*Northern States II*") ("We do not address the question of the adequacy of damages or of any contract remedy. The order cannot issue because enforcement of our mandate does not extend to requiring the DOE to perform under the Standard Contract.").[1] In 2000, the D.C. Circuit reiterated this point, dismissing for lack of jurisdiction a utility's petition seeking breach-of-contract damages and noting that the CFC provided jurisdiction for such a claim. *Wis. Elec. Power Co. v. Dep't of Energy*, 211 F.3d 646, 648 (D.C. Cir. 2000).

[1] PSEG was a party to *Indiana Michigan I*, *Northern States I*, and *Northern States II*. *See Fla. Power*, 64 Fed. Cl. at 41 n.5; A5.

### C. PSEG And Other Utilities File Suit In The CFC To Pursue Remedies For Breach Of Their Standard Contracts

When DOE failed to perform on January 31, 1998 and thereafter, PSEG and other utilities followed the direction of the D.C. Circuit and attempted to pursue their contractual remedies at the CFC. Prior to PSEG filing suit, two Judges of the CFC issued conflicting rulings as to whether or not the Standard Contracts' administrative Disputes Clause required the utilities to submit claims to DOE prior to filing suit at the CFC. In one case, a utility's suit was dismissed and was appealed to this Court; in the other, the Government successfully petitioned for permission to file an interlocutory appeal. *See Maine Yankee*, 225 F.3d at 1339-40; *Northern States Power Co. v. United States*, 224 F.3d 1361 (Fed. Cir. 2000) ("*Northern States III*"). In these two cases, this Court determined that the utilities could file suit directly in the CFC and that DOE had breached every Standard Contract by failing to begin removal of SNF in 1998. *Maine Yankee*, 225 F.3d at 1342 ("The breach involved all the utilities that had signed the contract – the entire nuclear electric industry."); *Northern States III*, 224 F.3d at 1367 ("[W]e hold that the unavoidable delays provision deals with delays arising after performance of the contract has begun, and does not bar a suit seeking damages for the government's failure to begin performance at all by the statutory and contractual deadline of January 31, 1998.").

After remand, PSEG filed suit and, along with other utilities and the Government, participated in a coordinated discovery proceeding to move these SNF cases toward trial. *See Yankee Atomic Elec. Co. v. United States*, 54 Fed. Cl. 306 (2002) (ruling on privilege regarding documents requested). During that process, the Government filed dispositive motions in all the then-pending SNF cases, including PSEG's, to determine several issues, including the rate at which DOE would have accepted SNF had it begun performing in January 1998 in accordance with the Standard Contracts. In April 2003, the Chief Judge of the CFC issued an order designating six "lead cases" to issue rulings on these issues and staying the remainder of the then-pending SNF cases (unless a presiding Judge affirmatively ordered otherwise). A197-A198. PSEG's case was not one of the lead cases. One of the lead cases – *Florida Power* – was reassigned to CFC Judge Sypolt. *Id.*

### D. Judge Sypolt Issues Show Cause Order And Then Concludes That The CFC Lacks Subject-Matter Jurisdiction

On October 14, 2004, nearly 18 months after being assigned a lead case in *Florida Power*, Judge Sypolt *sua sponte* issued an order requesting the Government and the utility plaintiff in *Florida Power*, PSEG, and utility plaintiffs in two other cases on her docket, to show cause why the breach-of-contract damages claims should not be dismissed or transferred for lack of subject-matter

jurisdiction. *Fla. Power*, 64 Fed. Cl. at 44-63; A8-A27. The October 14, 2004 Order to Show Cause stated that the NWPA appeared to create exclusive jurisdiction in the D.C. Circuit and the other regional courts of appeals and that one "reason it appears unlikely that Congress would have intended to place these claims under this court's Tucker Act contract jurisdiction is that, notwithstanding its label, the 'Standard Contract,' is simply, as a matter of logic and under usual definitions of a contract, a regulation." *Fla. Power*, 64 Fed. Cl. at 49; A13.

On November 12, 2004, PSEG and the utilities in the other three cases each individually responded to the Order to Show Cause. PSEG (and the utilities in the other three cases) argued that the Standard Contracts, signed by DOE and each utility, constituted contracts and that the Tucker Act, not section 119 of the NWPA, 42 U.S.C. § 10139, provided jurisdiction for their breach-of-contract damages actions. The Government agreed, acknowledging that the CFC "is the proper forum for claims arising under the Standard Contract." *Fla. Power*, 64 Fed. Cl. at 39; A3.

On January 31, 2005, despite the parties' uniform response that the CFC had subject-matter jurisdiction, Judge Sypolt concluded that the CFC lacked subject-matter jurisdiction. The court reasoned that, because the NWPA had required DOE to incorporate the January 31, 1998 performance date in the Standard

Contracts, the NWPA accordingly conferred exclusive jurisdiction to hear a claim challenging a "statutorily mandated" contract term on the regional federal courts of appeals and the D.C. Circuit. *Fla. Power*, 64 Fed. Cl. at 39, 41; A3, A5. Also, the decision concluded that because the "entire Standard Contract was required" by the NWPA and DOE had formulated the terms and conditions of the Standard Contracts using the Federal Register, the contracts could only be challenged in the regional federal courts of appeals or the D.C. Circuit. *Id.* at 41 n.4; A5. Notwithstanding this conclusion (in response to arguments made by the utilities that *res judicata* prevented the CFC from concluding it lacked jurisdiction), Judge Sypolt contradictorily stated, "The D.C. and Eleventh Circuits lack jurisdiction over contract claims against the government for money damages . . . ." *Id.* at 43; A43. The decision dismissed PSEG's breach-of-contract damages claim because PSEG filed its CFC complaint outside the 180-day time limit of NWPA § 119, precluding the CFC from transferring PSEG's case and thus ostensibly leaving PSEG without any forum for seeking relief. *Id.* at 44; A8. Ultimately, the *Florida Power* decision was stayed, along with PSEG's case and the other three cases assigned to Judge Sypolt, and all of these cases were certified for interlocutory appeal.

### E. PSEG And The Other Affected Utilities Petition For Permission To Appeal To This Court And Move For Reconsideration At The CFC

On February 10, 2005, PSEG jointly filed a protective petition for permission to appeal with the plaintiff utilities in the other cases affected by *Florida Power*. This Court docketed that petition as Miscellaneous Docket No. 786. Simultaneously, PSEG filed a motion for reconsideration before CFC Judge Futey, to whom the CFC reassigned PSEG's case after Judge Sypolt retired on or about February 1, 2005. Likewise, the other affected plaintiff utilities individually moved for reconsideration before the three judges to whom their cases were reassigned.

On March 3, 2005, CFC Judge Wiese granted the motion for reconsideration and vacated Judge Sypolt's January 31, 2005 *Florida Power* decision for the utility in *Duke Power v. United States*. *See* A65-A69. On March 25, 2005, this Court granted Duke Power's motion to withdraw from the petition and held in abeyance ruling on the petition for permission to appeal until the remaining three CFC judges ruled on the motions for reconsideration. A41-A42. On April 22, 2005, Judge Futey, however, denied PSEG's motion for reconsideration despite noting that the *Florida Power* decision was "unorthodox." A50, A64. The CFC Judges in the two remaining cases affected by the *Florida Power* decision granted the respective motions for reconsideration and vacated Judge Sypolt's January 31,

2005 *Florida Power* decision as it applied in these two cases. 66 Fed. Cl. 93 (2005); A70-A71. Those utilities withdrew from the petition to this Court, leaving only PSEG affected by the *Florida Power* ruling that the CFC lacked subject-matter jurisdiction. A43-A45, A47. This Court denied PSEG's motion for summary vacatur, but granted PSEG's petition for permission to appeal. A46-A49.

## SUMMARY OF THE ARGUMENT

The Tucker Act provides subject-matter jurisdiction in the CFC for causes of action seeking damages for the Government's breach of its contracts, unless Congress expressly withdraws the CFC's jurisdiction. The NWPA's judicial review provision has not withdrawn the CFC's Tucker Act jurisdiction to hear breach-of-contract damages claims over PSEG's Standard Contracts. The NWPA subjects agency action or inaction to review in appellate courts, not breach-of-contract damages claims such as PSEG's. The D.C. Circuit and other CFC decisions uniformly have concluded that the NWPA does not withdraw Tucker Act jurisdiction from the CFC. The two statutes can co-exist, they are not irreconcilable, and should both be given effect. Because PSEG was a party to the decisions of the D.C. Circuit concluding that PSEG's (and other utilities') breach remedies do not constitute agency action or inaction under the NWPA, this Court should give preclusive effect to these decisions (or, at the very least, consider these decisions persuasive).

Furthermore, nothing in the NWPA's authorization of DOE to enter contracts with utilities otherwise withdrew Tucker Act jurisdiction. The contracts executed by DOE and PSEG meet all the required elements of a contract with the Government. This Court uniformly has taken jurisdiction over cases involving the Standard Contract and treated the cases as involving a "contract." Hence, the Tucker Act provides the CFC with subject-matter jurisdiction to hear PSEG's cause of action seeking breach-of-contract damages under its Standard Contract with DOE.

Therefore, because the NWPA's judicial review provision has not withdrawn the CFC's Tucker Act jurisdiction, this Court should vacate *Florida Power* as it applies to PSEG and remand this case for further proceedings on PSEG's claims for damages.

## **ARGUMENT**

### I. STANDARD OF REVIEW

This Court reviews *de novo* the CFC's determination that it lacks subject-matter jurisdiction under the Tucker Act. *Hanlin v. United States*, 214 F.3d 1319, 1321 (Fed. Cir. 2000).

## II. THE NWPA JUDICIAL REVIEW PROVISION DOES NOT WITHDRAW THE CFC'S TUCKER ACT JURISDICTION OVER BREACH-OF-CONTRACT DAMAGES CLAIMS

Generally, the Tucker Act states that the CFC "shall have jurisdiction to render judgment upon any claim against the United States founded . . . upon any express or implied contract with the United States . . . ." 28 U.S.C. § 1491(a). The Tucker Act provides exclusive jurisdiction over damages for the Government's breach of contract, unless another statute explicitly withdraws jurisdiction. *See Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1017 (1984); *see also Eastern Enters. v. Apfel*, 524 U.S. 498, 520 (1998) (plurality) (noting that Tucker Act provides "exclusive jurisdiction" over, *inter alia*, express or implied contract damages claims with the United States above $10,000 and that claims must be brought to the CFC "unless Congress has withdrawn the Tucker Act grant of jurisdiction in the relevant statute"); *City of Burbank v. United States*, 273 F.3d 1370, 1377 (Fed. Cir. 2001) ("The Tucker Act vests the Court of Federal Claims with jurisdiction over this government contract dispute unless a specific jurisdictional statute grants jurisdiction to another court."). Generally, when two statutes are "capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to reward each as effective." *Regional Rail Reorg. Act Cases*, 419 U.S. 102, 133-34 (1974) (quotation omitted). "The law . . . disfavors

repeals by implication. . . . A statute may be repealed by implication only when two statutes are irreconcilable." *Hanlin*, 214 F.3d at 1321.

In this instance, the Tucker Act and NWPA § 119 – the judicial review provision – can co-exist, because the NWPA does not withdraw the CFC's Tucker Act jurisdiction to hear PSEG's breach-of-contract damages claims. The NWPA provides exclusive jurisdiction over agency actions, but PSEG has not challenged an agency action by bringing its breach-of-contract damages suit. PSEG's suit squarely addresses a breach-of-contract damages claim within the province of the CFC's Tucker Act jurisdiction.

### A. The NWPA Judicial Review Provision, Like the Administrative Procedure Act, Provides Jurisdiction To Hear Only Appeals To Agency Action or Inaction

NWPA § 119 states, in pertinent part, "Except for review in the Supreme Court of the United States, the United States courts of appeal shall have original and exclusive jurisdiction over any civil action-, (A) for review of any final decision or action of the Secretary, or the Commission under this subtitle;" or "(B) alleging the failure of the Secretary, the President, or the Commission to make any decision, or take any action, required under this subtitle . . . ." 42 U.S.C. §§ 10139(a)(1)(A) & (B). By its terms, the NWPA provides for jurisdiction in the regional appellate courts and the D.C. Circuit to challenge the Government's "final decision" or "action" or failure of the Government to make a "decision" or "take

any action." Simply stated, NWPA § 119 provides jurisdiction for statutory challenges to the NWPA and other similar agency actions or inactions otherwise covered by the Administrative Procedure Act ("APA"). *See generally* 5 U.S.C. §§ 701-706.[2]

The D.C. Circuit has made it clear that the NWPA displaces the district court as the forum for APA review in favor of review in the appellate courts. *General Electric Uranium Mgt. Corp. v. Dep't of Energy*, 764 F.2d 896, 904 (D.C. Cir. 1985) ("[W]e hold that the court of appeals has original and exclusive jurisdiction to review DOE's one-time fee rule and that the District Court lacked subject matter jurisdiction to consider the instant case."). The *Florida Power* decision makes much out of the *General Electric* decision, but that D.C. Circuit decision only determined whether review of final "agency action" under NWPA § 119 provided exclusive jurisdiction in district courts or appellate courts. *Id.* at 901 (noting that the challenged rule "is well within the class of *agency actions* reviewable under section 119(a)(1)(A)") (emphasis added). The *General Electric* court did not, however, conclude that all suits against DOE involving the NWPA (or the

[2] Courts reviewing agency action under NWPA § 119 routinely have applied the review standards of the APA. *See, e.g.*, *County of Esmeralda v. Dep't of Energy*, 925 F.2d 1216, 1218 (9th Cir. 1991) (applying APA standards of review); *Nat'l Ass'n of Regulatory Utility Commissioners v. Dep't of Energy*, 851 F.2d 1424, 1431 (D.C. Cir. 1988) (weighing whether a DOE notice constituted an interpretive or substantive rule under the NWPA and APA and whether it required notice-and-comment rulemaking).

contracts authorized by the NWPA) were agency actions subject to the exclusive review of NWPA § 119. The D.C. Circuit specifically noted that the NWPA "intended that the court of appeals would have original and exclusive jurisdiction *in cases of this sort*." *Id.* (emphasis added). "This sort" clearly referred to agency actions and circumscribed the reach of NWPA § 119.

Like the APA, NWPA § 119 does not displace the Tucker Act or other statutes not involving agency action.[3] The dichotomy that prevails between review of agency action under the APA and damages actions under the Tucker Act, similarly applies to the dichotomy between the NWPA and the Tucker Act. *Compare, e.g.*, *Doe v. United States*, 372 F.3d 1308, 1313 (Fed. Cir. 2004) (holding that jurisdiction was proper under the APA rather than Little Tucker Act where plaintiff "sought only an injunction requiring [the Government] to authorize payment for [an] abortion and related services, and a declaration that the statutory

[3] For example, courts have not treated the NWPA as displacing Tucker Act bid protest jurisdiction, where bidders have protested DOE's contract awards for assistance in managing the NWPA program and constructing the permanent repository – the centerpiece of the NWPA. *Leboeuf, Lamb, Greene, & McRae, L.L.P. v. Abraham*, 347 F.3d 315, 320-21 (D.C. Cir. 2003) (hearing bid protest appeal from district court challenging award under Tucker Act (as amended by the Administrative Disputes Resolution Act to allow bid protests filed in district courts through 2000), which challenged DOE contract award involving legal services to support NWPA effort to develop repository); *see also TRW Envtl. Safety Sys., Inc. v. United States*, 18 Cl. Ct. 33, 37-38 (1989) (protest granting injunctive relief to protester of DOE contract to assist in managing effort to develop repository under NWPA).

and regulatory prohibition on paying for aborting anencephalic pregnancies was unlawful"), *with Britell v. United States*, 372 F.3d 1370, 1372, 1379 (Fed. Cir. 2004) (concluding that jurisdiction was proper under the Little Tucker Act rather than the APA because the plaintiff sought money damages to reimburse her payment for an abortion); *see also generally Bowen v. Massachusetts*, 487 U.S. 879 (1988). The NWPA and Tucker Act readily co-exist, providing jurisdiction to challenge agency actions in the appellate courts under the NWPA, but monetary damages under the Tucker Act at the CFC (or the district courts under the Little Tucker Act). *Compare Maine Yankee*, 225 F.2d at 1342 (Federal Circuit affirming CFC and concluding DOE breached all the utilities' contracts by failing to begin performance by January 31, 1998 as required by contract) *with Indiana Michigan I*, 88 F.3d at 1277 (D.C. Circuit concluding that DOE had an unconditional statutory obligation to begin disposing of SNF by January 31, 1998). Ultimately, these two statutes may co-exist, are not reconcilable, and this Court should give effect to both statutes and not effectively repeal the Tucker Act by implication. *See Hanlin*, 214 F.3d at 1321.

### B. Courts Have Construed The NWPA To Allow For Tucker Act Jurisdiction In The CFC

NWPA § 119 does not withdraw Tucker Act jurisdiction to hear breach-of-contract damages claims. In interpreting the two statutes, the D.C. Circuit has

issued several decisions concluding that the NWPA provides jurisdiction to hear petitions challenging agency action or inaction without displacing the typical breach-of-contract damages remedies available under the Tucker Act at the CFC. Furthermore, with the exception of the instant case, the CFC has uniformly found Tucker Act jurisdiction over the Standard Contracts.

As noted above, in *Northern States I*, PSEG (and other utilities) sought a writ of mandamus to enforce the D.C. Circuit's prior ruling in *Indiana Michigan I* that DOE had an unconditional obligation to begin removing the utilities' SNF by January 31, 1998. *Northern States I*, 128 F.3d at 755. The D.C. Circuit denied the writ, in part, stating, "We hold that the Standard Contract between DOE and the utilities provides a potentially adequate remedy if DOE fails to fulfill its obligations by the deadline, and thus do not grant in full the writ requested by petitioners." *Id.* at 756. The D.C. Circuit instructed the utilities (including PSEG) to "pursue the remedies provided in the Standard Contract in the event that DOE does not perform its duty to dispose of the SNF by January 31, 1998." *Northern States I*, 128 F.3d at 759.

The utilities (including PSEG) and DOE each sought reconsideration of the ruling and, in response, the D.C. Circuit explained that its ruling regarding DOE's statutory obligations did not impermissibly cross over into contractual matters. *See*

*generally Northern States II*, 1998 WL 276581. The D.C. Circuit observed that its initial decision "describes the nature of the DOE's obligation, which was created by the NWPA and undertaken by the DOE under the Standard Contract. It does not place the question of contract remedies in this court, nor set up this court as a source of contract remedies outside the Standard Contract." *Id.* at *2. According to the D.C. Circuit, "While the [NWPA] requires the DOE to include an unconditional obligation in the Standard Contract, it does not itself require performance. Breach by the DOE does not violate a statutory duty; thus, our jurisdiction to hear allegations of failure to take an action required under the NWPA, *see* 42 U.S.C. § 10139(a)(1)(B), does not provide a basis for a move-fuel order." *Id*. In response to DOE's petition for rehearing, the D.C. Circuit rejected DOE's suggestion that it had "designated itself as the proper forum for adjudication of disputes arising under the Standard Contract" and determined that the "statutory duty to include an unconditional obligation in the contract is independent of any rights under the contract." *Id.* Hence, it concluded, "The Tucker Act does not prevent us from exercising jurisdiction over an action to enforce compliance with the NWPA." *Id.* In sum, the D.C. Circuit held, correctly and pursuant to the jurisdictional review provisions of the NWPA, that DOE could not seek to excuse itself from the January 31, 1998 date, and affirmed its issuance of a writ of mandamus to that effect. That writ necessarily precludes DOE from

arguing that its failures were somehow permitted or "unavoidable," but the implications and remedies that flow from that circumstance are properly committed to the CFC pursuant to the contracts between the parties and the Tucker Act.

The D.C. Circuit reinforced the decisions in *Northern States I* and *II* by again resolving the natural dichotomy between the NWPA and the Tucker Act as favoring a role for CFC jurisdiction over breach-of-contract damages claims. In 2000, Wisconsin Electric Power Company petitioned the D.C. Circuit seeking, *inter alia*, "a declaration that the Department of Energy must provide both monetary and non-monetary relief for having failed to begin disposing of Wisconsin Electric's spent nuclear fuel (SNF) on January 31, 1998, as required by the parties' contract . . . ." *Wis. Elec. Power Co. v. Dep't of Energy*, 211 F.3d 646, 647 (D.C. Cir. 2000). The D.C. Circuit dismissed the petition and construed the meaning of NWPA § 119 vis-à-vis the Tucker Act. In particular, the D.C. Circuit denied it had jurisdiction over Wisconsin Electric's petition under NWPA § 119, because "that provision grants the court jurisdiction over cases seeking review of: (1) final action taken by the agency pursuant to the NWPA, and (2) the agency's failure to take any action required by the NWPA." *Id.* at 648. Instead, the D.C. Circuit reiterated and cited its decision in *Northern States II*, stating that DOE's breach of the Standard Contract "does not violate a statutory duty. The Court of

Federal Claims, not this court, is the proper forum for adjudicating contract disputes." *Id.* (quotations and citations omitted).[4]

Consistent with *Wisconsin Electric*, every SNF case other than PSEG's at the CFC to consider (or reconsider) the question of subject-matter jurisdiction has concluded that the CFC possesses Tucker Act jurisdiction to hear a breach-of-contract damages claim under the Standard Contract. *See, e.g.*, *Sys. Fuels, Inc. v. United States*, 66 Fed. Cl. 722, 727 (2005); *Fla. Power & Light Co. v. United States*, 66 Fed. Cl. 93, 97 (2005); *Sys. Fuels, Inc. v. United States*, 65 Fed. Cl. 163, 169 (2005); *Entergy Nuclear Indian Point 2, LLC v. United States*, 64 Fed. Cl. 515, 522 (2005); *Entergy Nuclear Generation Co. v. United States*, 64 Fed. Cl. 336, 342 (2005); *Boston Edison Co. v. United States*, 64 Fed. Cl. 167, 174-79 (2005); *Sacramento Mun. Util. Dist. v. United States*, 63 Fed. Cl. 495, 499-500 (2005); *see also* A65-A71.[5]

---

[4] The *Wisconsin Electric* decision implements the policy of this Court and other circuits: "This court and its sister circuits will not tolerate a litigant's attempt to artfully recast its complaint to circumvent the jurisdiction of the Court of Federal Claims." *Consol. Edison Co. of N.Y. v. United States*, 247 F.3d 1378, 1385 (Fed. Cir. 2001).

[5] Even Judge Sypolt in *Florida Power* acknowledged that the regional circuits and the D.C. Circuit lack jurisdiction to hear breach-of-contract damages claims. *Florida Power*, 64 Fed. Cl. at 43, A7. While incorrectly rejecting the preclusive effect of *Northern States I* and *II* and another decision from the Eleventh Circuit, the CFC acknowledged, "The D.C. and Eleventh Circuits lack

### C. The D.C. Circuit Decisions Should Be Accorded Preclusive Effect

The D.C. Circuit's decisions in *Northern States I* and *II* have preclusive effect because PSEG and DOE were parties to those appeals and those appeals clearly concluded that the NWPA does not withdraw Tucker Act jurisdiction from the CFC. Thus, the parties are foreclosed from relitigating the determination in those cases that the Standard Contract is a contract for which the NWPA does not provide jurisdiction to hear breach-of-contract damages claims. *See United States v. Stauffer Chem. Co.*, 464 U.S. 165, 170-71 (1984).

In this regard, *res judicata* and collateral estoppel bind subsequent courts even where the prior ruling involves questions of subject-matter jurisdiction and implicates questions of sovereign immunity. *Int'l Air Response v. United States*, 324 F.3d 1376, 1380 (Fed. Cir. 2003) ("[E]ven assuming [the prior court decision] implicates considerations of sovereign immunity, [this] does not justify deviation from the rule that 'principles of res judicata [also] apply to jurisdictional determinations--both subject matter and personal.'") (quoting *Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n.9 (1982)). Furthermore, these principles bar a subsequent court from questioning a prior court's decision on a contested issue, including the extent of the prior court's

---

jurisdiction over contract claims against the government for money damages . . . ." *Florida Power*, 64 Fed. Cl. at 43; A7.

jurisdiction. *See Stoll v. Gottlieb*, 305 U.S. 165, 172 (1938) ("After a Federal court has decided the question of the jurisdiction over the parties as a contested issue, the court in which the plea of res judicata is made has not the power to inquire again into that jurisdictional fact.").

Here, the D.C. Circuit in *Northern States I* and *II* clearly had jurisdiction under NWPA § 119 over the utilities' petition for review and request for a writ of mandamus, but declined to grant full relief under the writ of mandamus. As noted above, the D.C. Circuit explained that the utilities had "potentially adequate" remedies under their contracts with DOE, which remedies (such as monetary remedies) the D.C. Circuit itself lacked jurisdiction to award. Thus, the D.C. Circuit's subject-matter determination precludes relitigation of that question because the D.C. Circuit's rulings in *Northern States I* and *II* actually litigated the question regarding the metes and bounds of NWPA § 119 and such a ruling was necessary to its final judgment denying, in part, PSEG's (and other utilities') request for a writ of mandamus. *Int'l Air Response*, 324 F.3d at 1378-79 ("Under the doctrine of collateral estoppel, when the second action is upon a different cause of action, the judgment in the prior suit precludes relitigation of issues actually litigated and necessary to the outcome of the first action.").

Furthermore, law and policy counsel that this Court should honor and uphold jurisdictional rulings from coordinate courts such as the D.C. Circuit. *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) ("A court has the power to revisit prior decisions of its own or of a coordinate court in any circumstance, although as a rule courts should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice.") (internal quotations omitted). The effect of this law and policy is to credit the preclusive effect of a coordinate court's decisions, including jurisdictional decisions. The alternative risks creating "jurisdictional ping pong," where two courts consistently disclaim jurisdiction over a legal cause of action, but where one of the courts clearly has jurisdiction. *See Doko Farms v. United States*, 861 F.2d 255, 257 (Fed. Cir. 1988) (crediting a Fifth Circuit decision under "law of the case" principles, where the Fifth Circuit concluded that the case was subject to Tucker Act jurisdiction, the district court transferred the case to the U.S. Claims Court, which in turn re-transferred the case for lack of subject-matter jurisdiction to the district court, which in turn was ordered by the Federal Circuit to re-transfer the case again to the Claims Court). Thus, not only should this Court give preclusive effect to *Northern States I* and *II*, it should consider persuasive the D.C. Circuit's decision in *Wisconsin Electric*.

## III. THE NWPA DOES NOT OTHERWISE WITHDRAW THE CFC'S TUCKER ACT JURISDICTION TO HEAR BREACH-OF-CONTRACT DAMAGES CLAIMS

Notwithstanding its apparent agreement that the NWPA does not provide the D.C. Circuit and regional circuits with jurisdiction to hear breach-of-contract damages claims against the Government, the CFC still concluded that it lacked subject-matter jurisdiction by treating PSEG's breach-of-contract damages claim as nothing more than a challenge to "statutorily mandated" terms of its Standard Contracts. *Florida Power*, 64 Fed. Cl. at 39, 41, & n.4; A3, A5. PSEG has not challenged the validity of the terms of its contracts with DOE, however, but instead has simply sought to enforce the contractual obligations of these valid contracts. In this regard, the CFC's *Florida Power* decision would undermine congressional intent that DOE enter "contracts" with utilities by effectively removing money damages as a remedy and treating any suit for breach of contractual obligations as nothing more than a challenge to an "agency action." The CFC's conclusion in *Florida Power* ignores the plain language of the NWPA as well as this Court's actions in taking jurisdiction over cases involving Standard Contracts. Therefore, the Tucker Act provides jurisdiction over PSEG's breach-of-contract damages claim.

### A. The NWPA Authorizes DOE To Enter Into "Contracts"

When Congress statutorily authorizes an agency to enter a "contract," normally that term "refers to 'a promise or a set of promises for the breach of which the law gives a remedy, or the performance of which the law in some way recognizes as a duty,' Restatement (Second) of Contracts § 1 (1981)." *Cherokee Nation of Okla. v. Leavitt*, 125 S. Ct. 1172, 1178 (2005). Furthermore, "damages are always the default remedy for breach of contract." *United States v. Winstar Corp.*, 518 U.S. 839, 885 (1996).

NWPA § 302(a), entitled "Contracts," authorizes DOE to enter into "contracts" with owners and generators of SNF, which contracts are required to contain certain basic terms. 42 U.S.C. § 10222(a). The most significant of those terms, set forth in Section 302(a)(5)(B), is that "in return for the payment of fees established by this section, [DOE], beginning not later than January 31, 1998, will dispose of the [HLW or SNF] as provided in this subchapter." *Id.* § 10222(a)(5)(B). As this Court has noted, Congress found DOE's obligation to begin to dispose of SNF by January 31, 1998 "so important that when it promulgated the [NWPA] it took the unusual action of specifying that all the contracts must contain this explicit requirement." *Maine Yankee*, 225 F.3d at 1342.

Congressional imposition on DOE of some statutory terms did not, however, make the contract somehow "nominally contractual," "a regulation," or completely "statutorily mandated." *See Florida Power*, 64 Fed. Cl. at 39, 41 n.4, & 49. While Congress could have imposed "top-down" regulations, it instead authorized DOE to negotiate "contracts." *Alabama Power Co. v. Dep't of Energy*, 307 F.3d 1300, 1314 (11th Cir. 2002) (commenting that Congress intended DOE "to negotiate contracts rather than imposing top-down regulations"). In this regard, Congress did not strictly "mandate" that utilities enter into contracts with DOE, but instead provided strong penalties for failure to enter the contracts. Among other things, Congress prohibited the Nuclear Regulatory Commission from issuing or renewing a license to any utility that failed to enter a contract. 42 U.S.C. § 10222(b)(1)(A). If Congress truly intended to mandate that utilities enter contracts, then it would not have been necessary to place this incentive in the NWPA.

The Standard Contracts may have been created for a special purpose – the acceptance, transportation, and disposal of SNF – but the contracts include the four elements of any federal government contract: "(1) mutuality of intent to contract; (2) consideration; (3) lack of ambiguity in offer and acceptance; and (4) actual authority in the government representative to bind the government." *Barrett Refining Corp. v. United States*, 242 F.3d 1055, 1060 (Fed. Cir. 2002).

First, there is mutuality of intent to contract. Each of PSEG's contracts with DOE, for example, was signed by both its representative and DOE's contracting officer. *See* A105, A168. The signed contracts (like the Standard Contract published in the Code of Federal Regulations, 10 C.F.R. § 961.11) explicitly recite the mutuality of intent to contract:

> THIS CONTRACT, entered into this 13th day of June 1983, by and between the UNITED STATES OF AMERICA (hereinafter referred to as the "Government"), represented by the UNITED STATES DEPARTMENT OF ENERGY (hereinafter referred to as "DOE") and Public Service Electric and Gas Company (hereinafter referred to as the "Purchaser"), a corporation organized and existing under the laws of the State of New Jersey, acting on its own behalf as managing utility for Hope Creek Generating Station, No. 1 Unit and on behalf of the joint owner Atlantic City Electric Company.

A135; *see also* A72.

Second, the Standard Contracts are supported by consideration. Pursuant to Article II of PSEG's Standard Contracts (and all of the Standard Contracts), PSEG promised to pay DOE the specified fees (and continues to pay these fees), and, in return, DOE promised to begin acceptance of SNF on January 31, 1998 and to continue acceptance, transportation, and disposal of all SNF listed in Appendix A of PSEG's Standard Contracts. A77, A106, A107, A140, A169. These are the mutual, reciprocal obligations described in NWPA § 302(a)(5)(B). *See Indiana Michigan I*, 88 F.3d at 1277. That quid pro quo arrangement is the essence of

contractual consideration. PSEG has paid DOE over $540 million in anticipation of DOE's performance.

Third, there is no ambiguity regarding the offer and acceptance. The Standard Contract states the terms under which the parties will transact. DOE offered to accept, transport, and dispose of Plaintiffs' SNF, and Plaintiffs accepted the offer by entering the contract and paying the contractually-required fees. A77, A140.

Fourth, DOE had authority to enter into the Standard Contracts. NWPA § 302(a)(1) states that "the Secretary [of Energy] is authorized to enter into *contracts* with any person who generates or holds title to high-level radioactive waste, or spent nuclear fuel, of domestic origin for the acceptance of title, subsequent transportation, and disposal of such waste or spent fuel." 42 U.S.C. § 10222(a)(1) (emphasis added). Thus, DOE had actual authority from the NWPA to enter into the Standard Contracts with PSEG (and other utilities).

The CFC in *Florida Power* dismissed the clear language of Congress and the actual execution of contracts by PSEG and DOE, and asserted that the Standard Contracts exemplified a "statutorily mandated" contract and PSEG's "nominally contractual" claim was simply challenging a "statutorily mandated" term of the contracts. 64 Fed. Cl. at 39-41; A3-A5. The CFC relied on this Court's decision

in *City of Burbank* for the proposition (1) that NWPA § 119 withdrew Tucker Act jurisdiction because Congress mandated DOE to include the January 31, 1998 date in the contracts, (2) that DOE drafted the Standard Contract by using administrative notice-and-comment rulemaking, and, (3) thereby, the use of an administrative record to draft the terms of the Standard Contract in 1983 foreclosed review under the Tucker Act for breach-of-contract damages claims.

This Court's *City of Burbank* decision does not, in fact, support the *Florida Power* conclusion. *City of Burbank* involved a breach-of-contract action against the Bonneville Power Administration ("BPA") arising out of a power sales contract. The contract included some provisions that were mandated by statute and others that were freely negotiated between the parties. The CFC dismissed the case for lack of jurisdiction, finding that the judicial review provision of the BPA's governing statute provided the Ninth Circuit with exclusive jurisdiction to hear all claims challenging BPA's actions taken pursuant to its statutory authority or obligations, which, in the CFC's view, included the contract actions challenged by Burbank. *City of Burbank*, 273 F.3d at 1376-77.

This Court reversed, finding that the relevant judicial review provision gave exclusive jurisdiction to the Ninth Circuit only "where disputed contract provisions are statutorily mandated or are arrived at via an administrative hearing under the

APA in which the pertinent facts are reflected in an administrative record." *Id.* at 1380. This Court observed that the contract terms that BPA allegedly had breached were not statutorily mandated and no pertinent facts relevant to the breach or the alleged damages were contained in an administrative record. *Id.* at 1380-81. Consequently, this Court held that the city's breach-of-contract claims fell within the scope of the Tucker Act jurisdiction of the CFC. *Id.*

Although the NWPA mandated that DOE include in its contracts an unconditional obligation to begin disposing of SNF by January 31, 1998, the NWPA did not require that DOE perform that contractual obligation. *See Northern States II*, 1998 WL 276581, at *2; *Wisconsin Elec.*, 211 F.3d at 648.[6] Thus, the "final agency action" subject to review pursuant to NWPA § 119 was DOE's Final Interpretation of its statutory obligations, not the monetary damages of DOE's failure to perform its underlying contractual obligations. Accordingly, NWPA § 119 provided the jurisdictional basis for the D.C. Circuit in *Indiana Michigan I* and *Northern States I* to consider whether NWPA § 302(a)(5)(B) mandated DOE to undertake a conditional or unconditional contract obligation to dispose of SNF.

---

[6] Unlike Section 119, the BPA judicial review provision at issue in *City of Burbank* applied not only to suits challenging final agency actions and decisions but also to suits challenging "the implementation of such final actions . . . ." 273 F.3d at 1378. It thus reflected a broader standard for appellate review than NWPA § 119. Nonetheless, this Court determined that Burbank's claim for breach of contract was appropriately filed in the CFC.

*See Indiana Michigan I*, 88 F.3d at 1274 (rejecting DOE's Final Interpretation, 60 Fed. Reg. 21,793); *see also Northern States I*, 128 F.3d at 755. Conversely, NWPA § 119 does not apply to PSEG's breach-of-contract damages cause of action, which involves no question of what the NWPA mandates. This case, like the breach-of-contract action in *City of Burbank*, involves only the question of whether DOE breached its contractual obligation and, if so, the damages to which PSEG is entitled for that breach. As in *City of Burbank*, such breach-of-contract damages actions fall squarely within the scope of the CFC's Tucker Act jurisdiction.

Contrary to the assertion in *Florida Power*, however, there exists no administrative record regarding PSEG's (or any utility's) breach-of-contract damages claims. In the instant case, PSEG relies on the validity of its contracts to pursue damages; it does not challenge the Standard Contracts' validity. Apparently, the *Florida Power* court mistakenly foreclosed jurisdiction under the Tucker Act based on DOE's decision in 1983 to publish the draft and final terms and conditions of the Standard Contract in the Federal Register. 64 Fed. Cl. at 41 n.4; A5. The NWPA did not require and DOE did not need to publish its proposed contract in the Federal Register and use an administrative-type rulemaking to promulgate the terms of the contract. In fact, the 1983 Federal Register notice stated that DOE used this format "because this process presents the best

opportunity for interested persons, particularly the affected parties, to participate in developing the standard contract which will be used in DOE's nuclear waste disposal activities. Although DOE recognizes that some situations may require special contractual provisions, DOE intends to develop and use, to the maximum extent practicable, a standard contract to specify the rights and duties of the parties." 48 Fed. Reg. 5458, 5459 (Feb. 4, 1983). Indeed, merely publishing the proposed terms and conditions of the Standard Contract in the Federal Register did not convert the resulting contracts into "statutorily mandated" or "regulatory" contracts without any contractual remedies. *Cf. Torncello v. United States*, 681 F.2d 756, 763 (Ct. Cl. 1982) ("[I]t does not matter that a contract term is mandated by federal procurement regulation. In the field of contracts, it is only by specific legislation that the government may trespass the bounds of general contract doctrines."). If this were true, then DOE's actions would contradict Congress's express language in NWPA § 302, which required DOE and the utilities to enter "contracts," with all the remedies that come with such agreements. *See Cherokee Nation*, 125 S. Ct. at 1178; *Winstar Corp.*, 518 U.S. at 885.

In this regard, the question presented by PSEG's breach-of-contract damages action simply cannot be determined on the basis of an administrative record. On the contrary, the absence of an administrative record underscores the CFC's error in concluding that the federal appellate courts have exclusive jurisdiction under

NWPA § 119 to decide PSEG's case. *See General Electric*, 764 F.2d at 903 (concluding that appellate courts rather than district courts should have exclusive NWPA jurisdiction over "judicial review of administrative agency actions" considering "there are no factual findings to be made" and "the court of appeals is fully able to consider" an administrative record). Appellate courts are simply not designed or equipped to hear and resolve the numerous factual issues that are involved in this and other SNF cases. *City of Burbank* teaches that in breach-of-contract cases like this one, "jurisdiction over alleged contractual breaches involving facts outside an administrative record lies with the Court of Federal Claims." 273 F.3d at 1380.

**B. This Court Has Regularly Taken Jurisdiction Over Cases Involving Standard Contracts And Treated The Standard Contracts As "Contracts"**

On at least four occasions, this Court has concluded that a Standard Contract is a "contract." In each case, the Court has either implicitly or explicitly concluded that the Tucker Act or Little Tucker Act provided jurisdiction to hear a case.

As noted above, this Court decided the companion cases of *Maine Yankee* and *Northern States III* in 2000. The appeals presented this Court with the question whether DOE had breached the utilities' Standard Contracts and whether that breach provided immediate jurisdiction in the CFC or, instead, the utilities first had to file a claim with DOE under the Disputes Clause of their contracts. *Maine*

*Yankee*, 225 F.3d at 1341 (quotations omitted) ("The question . . . is whether Yankee's breach of contract claim is one 'arising under' the contract – that is whether the contractual provisions would provide adequate relief for this particular dispute."); *Northern States III*, 224 F.3d at 1366 (noting that the question presented is "whether the presence of the contractual administrative dispute resolution provisions precludes the present suit for breach of contract").

This Court rejected the Government's contention that a utility first had to file its claim with DOE, instead holding that a utility's case could proceed directly to the CFC. *Northern States III*, 224 F.3d at 1367 ("[W]e hold that the unavoidable delays provision deals with delays arising after performance of the contract has begun, and does not bar a suit seeking damages for the government's failure to begin performance at all by the statutory and contractual deadline of January 31, 1998."). This Court also concluded that the Government's actions breached all of the contracts DOE had signed with the utilities. *Maine Yankee*, 225 F.3d at 1342 ("The breach involved all the utilities that had signed the contract – the entire nuclear utility industry."). Thus, this Court necessarily treated the Standard Contracts as "contracts" subject to contract law and rejected the contention that the CFC lacked jurisdiction to immediately hear the utilities' cases.

In 2001, this Court determined that a district court appropriately had jurisdiction under the Little Tucker Act, 28 U.S.C. § 1346(a)(2), over claims by ratepayers that they were allegedly third-party beneficiaries of the Standard Contracts between DOE and another utility – Northern States Power Company. *See Roedler v. Dep't of Energy*, 255 F.3d 1347, 1351 (Fed. Cir. 2001). In this regard, this Court determined that the district court had jurisdiction under the Little Tucker Act over these claims because each plaintiff waived recovery of damages above $10,000. *Id.* at 1351.[7] Furthermore, this Court evaluated the merits of the ratepayers' claims, "[a]pplying the federal common law that governs the contracts of the United States . . . ." *Id.* Thus, this Court in *Roedler* explicitly concluded that the district court had Little Tucker Act jurisdiction over the case and treated a Standard Contract as a contract.

Finally, in 2005, this Court resolved substantive contract law questions in *Indiana Michigan Power Company v. United States*, 422 F.3d 1369 (Fed. Cir. 2005) ("*Indiana Michigan II*"). In particular, the Court considered whether the law of contracts prohibited another utility seeking damages for partial breach of its

[7] The jurisdictional requisites for the Tucker Act and the Little Tucker Act are identical (with the exception of the $10,000 limitation in the Little Tucker Act). *United States v. Sherwood*, 312 U.S. 584, 591 (1941) (concluding that the Little Tucker Act "did no more than authorize the District Court to sit as a court of claims and that the authority thus given to adjudicate claims against the United States does not extend to any suit which could not be maintained in the Court of Claims"); *Doe*, 372 F.3d at 1313.

Standard Contract from recovering pre-breach mitigation costs and future damages. *Id.* at 1373. Looking to this Court's government contracts law jurisprudence and other sources of contract law, this Court concluded that "mitigation damages are available for pre-breach costs should the obligee elect to treat the obligor's breach as partial" but concluded that the utility could not recover its future damages in its current suit. *Id.* at 1375, 1376. Instead, the Court stated that the utility could "obtain recovery for post-breach damages as they are incurred." *Id.* at 1377. Thus, this Court again treated the Standard Contract in that case as a contract amenable to Tucker Act jurisdiction.

Even assuming this Court is not bound by these prior assertions of jurisdiction, this Court should not "disregard the implications of an exercise of judicial authority assumed to be proper" over the past several years. *Brown Shoe Co. v. United States*, 370 U.S. 294, 307 (1962). Taken together these Federal Circuit cases show that this Court has repeatedly assumed jurisdiction over breach-of-contract damages actions involving Standard Contracts.

Finally, this Court should not ignore the inequities to PSEG (and other utilities) that would occur by affirming the *Florida Power* decision. PSEG and other utilities relied on the decisions of the D.C. Circuit in good faith in pursuing their remedies at the CFC. This Court should not forfeit PSEG and other utilities'

rights to a remedy merely because those utilities pursued contractual remedies under the Tucker Act, as the D.C. Circuit correctly directed them to do. Also, it bears noting that PSEG, other utilities, the Government, the CFC, and this Court have expended significant resources over the course of seven years in adjudicating these cases. All of these resources would be wasted by a ruling that effectively voids all decisions by the CFC and this Court. At least six cases have already concluded trials, with additional cases scheduled for trial. *See generally Indiana Michigan II*, 422 F.3d at 1371; *see, e.g.*, A199-A218 (orders scheduling trial in various cases). Upsetting that process now – without a clear basis for doing so – would represent a manifest error of law and work a substantial hardship on PSEG and other similarly-situated utilities.

**CONCLUSION AND STATEMENT OF RELIEF**

For the foregoing reasons, this Court should find that the Tucker Act provides jurisdiction over PSEG's breach-of-contract damages claim, vacate *Florida Power* as it applies to PSEG, and remand this case for further proceedings on PSEG's claims for damages.

Dated: October 14, 2005

Respectfully submitted,

Alex D. Tomaszczuk
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1650 Tysons Boulevard
McLean, VA 22102-4859
Tel: (703) 770-7940
Fax: (703) 770-7901

*Counsel of Record for Plaintiffs-Appellants*

*Of Counsel*:

Jay E. Silberg
PILLSBURY WINTHROP
SHAW PITTMAN LLP
2300 N Street, NW
Washington, DC 20037-1128
Tel: (202) 663-8000

Daniel S. Herzfeld
Jack Y. Chu
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1650 Tysons Boulevard
McLean, VA 22102-4859
Tel: (703) 770-7900

**CERTIFICATE OF SERVICE**

I hereby certify that two copies of the foregoing BRIEF OF PLAINTIFFS-APPELLANTS were served by U.S. Mail (first class, postage pre-paid) and by facsimile this 14th day of October, 2005, upon:

Mr. Harold D. Lester, Jr.
Assistant Director
Commercial Litigation Branch
Civil Division
United States Department of Justice
Washington, D.C. 20530
Attn: Classification Unit
8th Floor, 1100 L Street, N.W.

______________________________

**RULE 32(a)(7)(C) CERTIFICATE**

Pursuant to Fed. R. App. P. 32(a)(7)(C) and Fed. Cir. R. 32(b), I hereby certify that this brief (exclusive of the Certificate of Interest, Table of Contents, Table of Authorities, Statement of Related Cases, Addendum, and Certificates of Counsel) contains 8,939 words, in 14-point proportional type, according to the word processing system used to prepare the brief.

Alex D. Tomaszczuk

**No. 05-5162**

---

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

---

**PSEG NUCLEAR, L.L.C., and**
**PUBLIC SERVICE ELECTRIC AND GAS COMPANY,**

**Plaintiffs-Appellants,**

**v.**

**UNITED STATES,**

**Defendant-Appellee.**

---

**Appeal from the United States Court of Federal Claims**
**in 01-CV-551, Senior Judge Bohdan A. Futey**

---

**REPLY BRIEF OF PLAINTIFFS-APPELLANTS**

**Alex D. Tomaszczuk**
**PILLSBURY WINTHROP**
**SHAW PITTMAN LLP**
**1650 Tysons Boulevard**
**McLean, VA 22102-4859**
**Tel: (703) 770-7940**
**Fax: (703) 770-7901**

***Counsel of Record for***
***Plaintiffs-Appellants***

***Of Counsel*:**

**Jay E. Silberg**
**PILLSBURY WINTHROP**
**SHAW PITTMAN LLP**
**2300 N Street, NW**
**Washington, DC 20037-1128**
**Tel: (202) 663-8000**

**Daniel S. Herzfeld**
**Jack Y. Chu**
**PILLSBURY WINTHROP**
**SHAW PITTMAN LLP**
**1650 Tysons Boulevard**
**McLean, VA 22102-4859**
**Tel: (703) 770-7900**

**January 23, 2006**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ ii

SUMMARY OF ARGUMENT ........ 1

ARGUMENT ........ 3

I. THE NWPA DOES NOT DISPLACE THE CFC'S TUCKER ACT JURISDICTION OVER BREACH-OF-CONTRACT DAMAGES CLAIMS ........ 3

A. NWPA § 119 Is An APA-Type Statute ........ 4

B. The D.C. Circuit Decisions Were Proper And Are Binding Precedent ........ 6

II. THIS COURT HAS REJECTED THE GOVERNMENT'S ARGUMENTS REGARDING THE UNAVOIDABLE DELAYS CLAUSE ........ 13

CERTIFICATE OF SERVICE

RULE 32(a)(7)(C) CERTIFICATE

# TABLE OF AUTHORITIES

***Cases***

*Alabama Power Co. v. Dep't of Energy*,
307 F.3d 1300 (11th Cir. 2002) .......... 9, 10

*Boston Edison Co. v. United States*,
64 Fed. Cl. 167 (2005) .......... 5, 6

*Britell v. United States*,
372 F.3d 1370 (Fed. Cir. 2004) .......... 5

*Doe v. United States*,
372 F.3d 1308 (Fed. Cir. 2004) .......... 5

*Entergy Nuclear Generation Co. v. United States*,
64 Fed. Cl. 336 (2005) .......... 6

*Entergy Nuclear Indian Point 2, LLC v. United States*,
64 Fed. Cl. 515 (2005) .......... 6

*Fla. Power & Light Co. v. United States*,
64 Fed. Cl. 37 (2005) .......... 3, 19

*General Electric Uranium Mgt. Corp. v. Dep't of Energy*,
764 F.2d 896 (D.C. Cir. 1985) .......... 4

*Indiana Mich. Power Co. v. Dep't of Energy*,
88 F.3d 1272 (D.C. Cir. 1996) ("*Indiana Michigan I*") .......... *passim*

*Indiana Mich. Power Co. v. United States*,
422 F.3d 1369 (Fed. Cir. 2005) ("*Indiana Michigan II*") .......... 16

*Int'l Air Response v. United States*,
324 F.3d 1376 (Fed. Cir. 2003) .......... 13

*Maine Yankee Atomic Power Co. v. United States*,
225 F.3d 1336 (Fed. Cir. 2000) .......... *passim*

*Northern States Power Co. v. Dep't of Energy*,
128 F.3d 754 (D.C. Cir. 1997) ("*Northern States I*") .......... *passim*

*Northern States Power Co. v. Dep't of Energy*,
No. 97-1064 *et al.*, 1998 WL 276581
(D.C. Cir. May 5, 1998) ("*Northern States II*") .......................................... *passim*

*Northern States Power Co. v. United States*,
224 F.3d 1361 (Fed. Cir. 2000) ("*Northern States III*").......... 3, 11, 13, 14, 16, 18

*Office of Consumers' Counsel v. Fed. Energy Regulatory Comm'n*,
826 F.2d 1136 (D.C. Cir. 1987)..............................................................................7

*Olson v. United States*,
172 F.3d 1311 (Fed. Cir. 1999) ..............................................................................6

*Potomac Elec. Power Co. v. Interstate Commerce Comm'n*,
702 F.2d 1026 (D.C. Cir. 1983), *supplemented on other grounds*
*by* 705 F.2d 1343 (D.C. Cir. 1983).........................................................................6

*Stoll v. Gottlieb*,
305 U.S. 165 (1938) ........................................................................... 12, 13

*Sys. Fuels, Inc. v. United States*,
65 Fed. Cl. 163 (2005)...........................................................................................6

*Trauma Serv. Group, Inc. v. United States*,
104 F.3d 1321 (Fed. Cir. 1997) ..............................................................................6

*United States v. Fausto*,
484 U.S. 439 (1988) .............................................................................................12

*Wis. Elec. Power Co. v. Dep't of Energy*,
211 F.3d 646 (D.C. Cir. 2000).................................................................................5

***Statutes***

Tucker Act,
28 U.S.C. § 1491 ............................................................................ 1, 3, 5, 18

Nuclear Waste Policy Act § 119,
42 U.S.C. § 10139 ............................................................................ 1, 2, 3, 4

Nuclear Waste Policy Act § 302,
42 U.S.C. § 10222 ................................................................................ 2, 4, 5

***Miscellaneous***

Final Interpretation Of Nuclear Waste Acceptance Issues,
60 Fed. Reg. 21,793 (May 3, 1995)........................................................................7

## SUMMARY OF ARGUMENT

The U.S. Court of Federal Claims ("CFC") has jurisdiction to hear Plaintiffs-Appellants PSEG Nuclear, L.L.C. and Public Service Electric and Gas Company's (together "PSEG") breach-of-contract damages claims under the Tucker Act, 28 U.S.C. § 1491(a). The judicial review provision of the Nuclear Waste Policy Act ("NWPA") § 119, 42 U.S.C. § 10139, does not withdraw the CFC's Tucker Act jurisdiction to hear breach-of-contract damages claims; § 119 provides only for the original and exclusive review of agency actions in the courts of appeals.

In its brief, Defendant-Appellee the United States (the "Government") again agrees with PSEG that the CFC has Tucker Act jurisdiction to hear PSEG's breach-of-contract damages claims. *See* Corrected Brief of Defendant-Appellee ("Govt Br.") at 9. Notwithstanding this agreement as to the central question raised in PSEG's appeal, the Government takes this unrelated opportunity and the pretext of an opinion by the CFC in another case to collaterally attack the proper assertion of jurisdiction by the U.S. Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") in *Northern States Power Co. v. Dep't of Energy*, 128 F.3d 754 (D.C. Cir. 1997)("*Northern States I*"), and *Northern States Power Co. v. Dep't of Energy*, No. 97-1064 *et al.*, 1998 WL 276581 (D.C. Cir. May 5, 1998) ("*Northern States II*"), to enforce its earlier decision in *Indiana Michigan Power Co. v. Dep't of Energy*, 88 F.3d 1272 (D.C. Cir. 1996) ("*Indiana Michigan I*"). The

Government challenges the D.C. Circuit's assertion of jurisdiction in an attempt to resurrect its arguments under the Unavoidable Delays Clause of PSEG's (and other utilities') Standard Contracts for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste ("Standard Contracts"). *See* Appendix ("A") 94; A157. This Court should reject the Government's argument both because the resolution of this appeal does not require revisiting the question of the D.C. Circuit's jurisdiction and because this Court has already disposed of the Government's arguments on the merits.

First, contrary to the Government's maze of arguments, the D.C. Circuit clearly had jurisdiction to render decisions in *Indiana Michigan I*, *Northern States I*, and *Northern States II*. As PSEG argued in its initial brief, these D.C. Circuit decisions are binding in this case, because the D.C. Circuit had jurisdiction to review the challenged "agency action" under NWPA § 119. Brief of Plaintiffs-Appellants at 22-23 ("PSEG Br."). In fact, the Government itself has previously argued to this Court that the *Northern States I* decision should have preclusive effect. Furthermore, the D.C. Circuit cases involved the D.C. Circuit's power to enforce by mandamus its pronouncement on the statutory requirements of NWPA § 302, 42 U.S.C. § 10222.

Second, this Court has fully disposed of the Unavoidable Delays Clause on the merits in two decisions that the Government fails to discuss, let alone distinguish. *See Northern States Power Co. v. United States*, 224 F.3d 1361 (Fed. Cir. 2000) ("*Northern States III*"); *Maine Yankee Atomic Power Co. v. United States*, 225 F.3d 1336 (Fed. Cir. 2000); *see* Brief of *Amici Curiae* at 6-9 ("*Amicus* Br."). The Government's failure to address these cases is, at the very least, curious.

## ARGUMENT

### I. THE NWPA DOES NOT DISPLACE THE CFC'S TUCKER ACT JURISDICTION OVER BREACH-OF-CONTRACT DAMAGES CLAIMS

The Government and PSEG agree that NWPA § 119 does not displace the CFC's Tucker Act jurisdiction over PSEG's breach-of-contract damages claim. Thus, the parties also agree that the decision in *Florida Power & Light Co. v. United States*, 64 Fed. Cl. 37 (2005), should be vacated as that decision applies to PSEG. *See* Govt Br. at 60. That should be the end of the story.

Instead, the Government collaterally attacks the D.C. Circuit's jurisdiction in rendering the *Northern States I* and *II* decisions. Govt Br. at 55-56. As discussed below and in PSEG's initial brief, however, the D.C. Circuit clearly had jurisdiction to render binding decisions in those cases. Those decisions preclude

relitigation of the issues that the D.C. Circuit actually decided between PSEG and the Government in contested litigation.

**A. NWPA § 119 Is An APA-Type Statute**

The key disagreement between the Government and PSEG (and *Amici*) is not whether the CFC has jurisdiction, but instead whether the D.C. Circuit had jurisdiction to render its decisions in *Northern States I* and *II*. The D.C. Circuit properly exercised its authority under NWPA § 119 and the Government presents a red herring by arguing to the contrary.

NWPA § 119 provides for original and exclusive jurisdiction over challenges to agency action or inaction, including any agency action or inaction taken under NWPA § 302. *General Electric Uranium Mgt. Corp. v. Dep't of Energy*, 764 F.2d 896, 901 (D.C. Cir. 1985) (noting that the challenged rule promulgated under § 302 "is well within the class of *agency actions* reviewable under section 119(a)(1)(A)") (emphasis added). As PSEG stated in its initial brief, this reading is consistent with NWPA § 119 being considered an Administrative Procedure Act ("APA")-type statute. PSEG Br. at 15-16.

NWPA § 119 provides the D.C. Circuit (and regional circuits) with original and exclusive jurisdiction over challenges to APA-type agency actions taken by the Department of Energy under the NWPA, but not over breach-of-contract damages

claims. *See Wis. Elec. Power Co. v. Dep't of Energy*, 211 F.3d 646, 648 (D.C. Cir. 2000). The NWPA-Tucker Act jurisdictional dichotomy is fully consistent with the well-recognized APA-Tucker Act jurisdictional dichotomy. *Compare, e.g., Doe v. United States*, 372 F.3d 1308, 1313 (Fed. Cir. 2004) (APA applies), *with Britell v. United States*, 372 F.3d 1370, 1372, 1379 (Fed. Cir. 2004) (Little Tucker Act applies).

Accepting that the D.C. Circuit (and the regional circuits) have jurisdiction to review agency action taken under NWPA § 302, the Government's argument against the propriety of the *Northern States I* and *II* decisions fails. Indeed, the Government does not actually dispute this jurisdictional analysis. Rather, it uses the opportunity to collaterally attack a non-binding CFC decision in another case instead of directly challenging PSEG's stated position. In this regard, the Government uses the CFC's decision in *Boston Edison Co. v. United States*, 64 Fed. Cl. 167 (2005), as a foil for presenting its arguments. Contrary to the Government's suggestion, Govt Br. at 55 n.14, PSEG cited the *Boston Edison* decision in a stringcite with six other CFC decisions only to show that every spent nuclear fuel ("SNF") case at the CFC – other than PSEG's – has concluded that the

CFC had jurisdiction to hear a utility's breach-of-contract damages claims. *See* PSEG Br. at 21.[1]

### B. The D.C. Circuit Decisions Were Proper And Are Binding Precedent

Contrary to the Government's arguments, the D.C. Circuit acted well within its jurisdiction in *Northern States I* and *II*. The D.C. Circuit had jurisdiction over the agency action challenged in *Indiana Michigan I* and, therefore, had the authority to enforce that decision by mandamus in *Northern States I* and *II*.

Generally, an appellate court has inherent authority to enforce its orders by issuing a writ of mandamus. *Potomac Elec. Power Co. v. Interstate Commerce*

[1] Furthermore, as the Government admits, the CFC trial judge in *Boston Edison* "has suggested that it is not questioning the D.C. Circuit's past decisions . . . ." Govt Br. at 12. Indeed, the trial judge – CFC Judge Lettow – has repeatedly relied on the D.C. Circuit decisions the Government claims his opinions undercut. *See Sys. Fuels, Inc. v. United States*, 65 Fed. Cl. 163, 168 n.7, 175-76 (2005) (relying on *Boston Edison* and D.C. Circuit decisions); *Entergy Nuclear Indian Point 2, LLC v. United States*, 64 Fed. Cl. 515, 518, 524 n.14 (2005) (same); *Entergy Nuclear Generation Co. v. United States*, 64 Fed. Cl. 336, 343 n.8, 345 (2005) (same). The Government's disregard of the trial judge's own statements about the meaning of his decisions suggests that the Government's real intent is to get an advisory opinion on this matter before the *Boston Edison* case has reached a final judgment at the CFC. This Court should decline the government's ploy. *See Olson v. United States*, 172 F.3d 1311, 1319 (Fed. Cir. 1999) ("These expressly hypothetical situations are simply not present in the facts of this appeal and it is not our role to offer advisory opinions on hypothetical cases or controversies."); *see also Trauma Serv. Group, Inc. v. United States*, 104 F.3d 1321, 1324 (Fed. Cir. 1997) (noting that the Federal Circuit "reviews judgments, not opinions") (quotation omitted).

*Comm'n*, 702 F.2d 1026, 1032 (D.C. Cir. 1983), *supplemented on other grounds by* 705 F.2d 1343 (D.C. Cir. 1983); *see also Office of Consumers' Counsel v. Fed. Energy Regulatory Comm'n*, 826 F.2d 1136, 1140 (D.C. Cir. 1987) ("A federal appellate court has the authority, through the process of mandamus, to correct any misconception of its mandate by a lower court or administrative agency subject to its authority."). The D.C. Circuit explicitly stated it was issuing its limited mandamus order in *Northern States I* and *II* to enforce its decision in *Indiana Michigan I*.

In *Indiana Michigan I*, PSEG and other utilities challenged the Department of Energy's ("DOE") agency action declaring that DOE had no statutory obligation to begin accepting SNF from utilities by January 31, 1998 absent a storage facility. *See Indiana Michigan I*, 88 F.3d at 1273. In particular, DOE had issued a "Final Interpretation" in 1995 asserting "that it does not have a legal obligation under the [NWPA] or the Standard Contract to begin disposal of SNF by January 31, 1998, in the absence of a repository or interim storage facility constructed under the Act." Final Interpretation Of Nuclear Waste Acceptance Issues, 60 Fed. Reg. 21,793, 21,794 (May 3, 1995) ("Final Interpretation"). The D.C. Circuit rejected this contention, concluding that the NWPA created an unconditional obligation "to start disposing of the SNF no later than January 31, 1998." *Indiana Michigan I*, 88 F.3d at 1277.

Notwithstanding the D.C. Circuit's conclusion in *Indiana Michigan I,* DOE failed to "proceed as if it had just been told that it had an unconditional obligation to take the nuclear materials by the January 31, 1998 deadline." *Northern States I*, 128 F.3d at 757. As a result, in 1997, PSEG and other utilities returned to the D.C. Circuit, seeking a writ of mandamus to force DOE to comply with *Indiana Michigan I* by requiring that DOE begin accepting SNF beginning January 31, 1998. *Northern States I*, 128 F.3d at 758. Although finding that the utilities had a clear right to relief and that DOE had a clear duty to act, the D.C. Circuit denied the broad writ of mandamus requested by the utilities, noting that their Standard Contracts provided "another potentially adequate remedy." *Id.* at 759. The D.C. Circuit, however, issued a more narrow writ of mandamus prohibiting DOE from excusing its failure to perform its statutory duty based on the Unavoidable Delays Clause of the Standard Contracts. *Id.* at 760. The D.C. Circuit explained:

> Under the Department's interpretation of the governing contractual provisions . . . the government can always absolve itself from bearing the costs of its delay if the delay is caused by the government's own acts. This cannot be a valid interpretation, as it would allow the Executive Branch to void an unequivocal obligation imposed by Congress. DOE has no authority to adopt a contract that violates the directives of Congress, just as it cannot implement interpretations of the contract that contravene this court's prior ruling.

*Id*. In its response to the Government's petition for rehearing, the D.C. Circuit reaffirmed its jurisdiction to "enforce compliance with the NWPA." *Northern States II*, 1998 WL 276581, at *2.

The Government takes umbrage at the D.C. Circuit's supposed invasion of the CFC's jurisdiction, asserting now that the D.C. Circuit's power to enforce the NWPA's unconditional *statutory* obligation and that court's prior decision impermissibly prevented the Government from invoking the Unavoidable Delays contract clause. Govt Br. at 50, 55-56. Yet, as noted above, the D.C. Circuit entered the mandamus order specifically to prevent the Government, through its administration of the Standard Contracts, from evading the requirements of the NWPA and a prior decision of the D.C. Circuit.

Nevertheless, the Government contends that the courts of appeals lost their ability to enforce the NWPA vis-à-vis the Standard Contracts 180 days after DOE published the terms and conditions of the Standard Contract in the Federal Register in 1983. Govt Br. at 55-56. Notably, the U.S. Court of Appeals for the Eleventh Circuit ("Eleventh Circuit") heard this identical argument from the Government and definitively rejected it. *See Alabama Power Co. v. Dep't of Energy*, 307 F.3d 1300, 1311 (11th Cir. 2002) ("The Department argues that any challenge to its right to make equitable adjustments is untimely, because the real 'final decision' being

challenged is the equitable adjustment provision (Article IX.B) itself – a provision that became subject to judicial review in 1983 when it became part of the Standard Contract and was published in the Federal Register."). In that case, a number of utilities challenged a settlement agreement between DOE and a utility that embodied "an unlawful expenditure of [Nuclear Waste Fund] monies," which expenditure was presented as an equitable adjustment under a Standard Contract. *Id.* The Eleventh Circuit concluded that the settlement agreement that adopted the equitable adjustment constituted the "agency action, not the 1983 Standard Contract, that is being challenged." *Id.* The Eleventh Circuit thus determined it had jurisdiction to hear the challenge to the agency action and that the action itself – using the Nuclear Waste Fund to pay for the settlement – violated the NWPA. The Eleventh Circuit so held notwithstanding the possible impact of the decision on the Government's interpretation of the Standard Contracts.

Similarly, in *Indiana Michigan I* and *Northern States I* and *II*, the utilities challenged DOE's "Final Interpretation" and subsequent DOE actions in which DOE sought to exculpate itself from its unconditional statutory obligation to begin accepting SNF by January 31, 1998. The utilities did not challenge the terms and conditions of the Standard Contracts in those proceedings, but only DOE's interpretation of its obligations under the NWPA. As noted above, the decisions of the D.C. Circuit (like the Eleventh Circuit in *Alabama Power*) granted limited

relief to ensure that DOE acted consistently with the requirements of the NWPA, notwithstanding DOE's attempt to shield its actions by interpreting the Standard Contracts' Unavoidable Delays Clause to excuse its compliance with *Indiana Michigan I*.

Moreover, the Government's current position regarding the precedential value of *Northern States I* and *II* directly contradicts the Government's prior position before this Court in *Northern States III*. As noted in PSEG's initial brief, in *Northern States III* (as well as the companion case of *Maine Yankee*) the utilities sought to bring a breach-of-contract damages suit directly in the CFC rather than filing a claim under the Disputes Clause of their Standard Contracts. *See Northern States III*, 224 F.3d at 1363. The Government invoked the D.C. Circuit's decision in *Northern States I*, however, arguing that the utilities were "collaterally estopped" from directly filing suit at the CFC based on the D.C. Circuit's ruling. *See Northern States III*, 224 F.3d at 1366. This Court rejected the Government's reading of the D.C. Circuit's decision. *Id.* (noting that the D.C. Circuit in *Northern States I* "did not focus on or address the issue presented here"). Thus, far from contesting the precedential value of the D.C. Circuit's decisions in *Northern States I* and *II*, the Government argued to this Court that the D.C. Circuit's decisions were proper and preclusive.

Had the Government believed the *Northern States I* and *II* decisions lacked precedential value in 2000, it had an obligation to so inform this Court then.[2] Its failure to do so strongly suggests the Government's support or attack of these D.C. Circuit decisions is based more upon a desire to shield DOE from any liability for its egregious management of the nuclear waste program than upon any principled view of the law. This Court should not countenance the Government's wasteful litigation strategies. Now, clarity and finality in the law must take priority. *See Stoll v. Gottlieb*, 305 U.S. 165, 172 (1938) ("It is just as important that there should be a place to end as that there should be a place to begin litigation.").

Ultimately, the Government's collateral attack on the D.C. Circuit's decisions in *Northern States I* and *II* must fail. The D.C. Circuit had authority to enter its mandamus order preventing the Government from violating the NWPA by invoking the Unavoidable Delays Clause. As PSEG argued in its initial brief, PSEG Br. at 22-23, the D.C. Circuit resolved its jurisdiction as a contested issue

[2] Also, while PSEG fully agrees with the Government that *United States v. Fausto*, 484 U.S. 439 (1988), does not foreclose review in the CFC, *see* Govt Br. at 38-43, PSEG takes exception to the Government's conclusion that it is a "close call" regarding CFC jurisdiction. *Id.* at 38. Were the call as "close" as the Government now contends, it stands to reason the Government would have told the D.C. Circuit of its doubts based on *Fausto* as to the CFC's jurisdiction over PSEG's and other utilities' claims. It failed to do so. Had the Government forthrightly expressed these doubts to the D.C. Circuit, the D.C. Circuit might well have found that there was no other "potentially adequate remedy," *see Northern States I*, 128 F.3d at 759, and that entry of a broad writ of mandamus forcing DOE to begin accepting SNF by the 1998 deadline was justified.

between PSEG and the Government in *Northern States II* and that contested decision precludes this Court from revisiting both the jurisdictional ruling and the substantive ruling regarding the Unavoidable Delays Clause. *See Int'l Air Response v. United States*, 324 F.3d 1376, 1380 (Fed. Cir. 2003); *see also Stoll*, 305 U.S. at 172.

## II. THIS COURT HAS REJECTED THE GOVERNMENT'S ARGUMENTS REGARDING THE UNAVOIDABLE DELAYS CLAUSE

Wholly apart from the propriety of the D.C. Circuit's ruling regarding the interaction between the NWPA and the Unavoidable Delays Clause, this Court's decisions in *Northern States III* and *Maine Yankee* fully dispose of the Government's arguments on the merits regarding the Unavoidable Delays Clause. *See Amicus* Br. at 5-9. The Government fails even to address this Court's prior decisions in the body of its brief, perhaps because the logic of this Court's decisions moots the Government's jurisdictional attack on the D.C. Circuit.

As noted above and in PSEG's initial brief, the utilities in *Northern States III* and *Maine Yankee* filed breach-of-contract damages cases directly with the CFC rather than first filing claims with DOE under the Standard Contracts' Disputes Clause. *Maine Yankee*, 225 F.3d at 1341 ("The question . . . is whether Yankee's breach of contract claim is one 'arising under' the contract – that is whether the contractual provisions would provide adequate relief for this particular dispute.")

(quotations omitted); *Northern States III*, 224 F.3d at 1366 (noting that the question presented is "whether the presence of the contractual administrative dispute resolution provisions precludes the present suit for breach of contract"). The Government moved to dismiss the utilities' lawsuits, arguing, among other things, that the utilities had an adequate remedy of an equitable adjustment under the Avoidable Delays Clause, which required the utilities to submit their claims under the Standard Contracts' Disputes Clause before filing suit at the CFC. *See Maine Yankee*, 225 F.3d at 1339; *Northern States III*, 224 F.3d at 1367.

This Court, however, rejected the Government's argument that the utilities must first pursue the Delays remedy under the Disputes Clause. *Northern States III*, 224 F.3d at 1367 ("[W]e hold that the unavoidable delays provision deals with delays arising after performance of the contract has begun, and does not bar a suit seeking damages for the government's failure to begin performance at all by the statutory and contractual deadline of January 31, 1998."); *Maine Yankee*, 225 F.3d at 1342 ("The language of the avoidable delays provision of the contract cannot properly be read to cover Yankee's claim.").

Based on the identical reasoning in *Maine Yankee* and *Northern States III*, this Court should reject the Government's most recent argument regarding the Unavoidable Delays Clause. *See Amicus* Br. at 7-8. This Court discussed both the

Unavoidable Delays Clause[3] and the Avoidable Delays Clause[4] in these decisions. Though primarily focusing on the Avoidable Delays Clause, this Court essentially treated the clauses interchangeably. *See Maine Yankee*, 225 F.3d at 1338

---

[3] The Unavoidable Delays Clause states:

> Neither the Government nor the Purchaser shall be liable under this contract for damages caused by failure to perform its obligations hereunder, if such failure arises out of causes beyond the control and without the fault or negligence of the party failing to perform. *In the event circumstances beyond the reasonable control of the Purchaser or DOE*—such as acts of God, or of the public enemy, acts of Government in either its sovereign or contractual capacity, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes and unusually severe weather—*cause delay in scheduled delivery, acceptance or transport of SNF and/or HLW*, the party experiencing the delay will notify the other party as soon as possible after such delay is ascertained and the parties will readjust their schedules, as appropriate, to accommodate such delay.

A94 (emphasis added); A157 (same).

[4] The Avoidable Delays Clause states:

> *In the event of any delay in the delivery, acceptance or transport of SNF and/or HLW* to or by DOE caused by circumstances within the reasonable control of either the Purchaser or DOE or their respective contractors or suppliers, the charges and schedules specified by this contract will be equitably adjusted to reflect any estimated additional costs incurred by the party not responsible for or contributing to the delay.

A95 (emphasis added); A158 (same).

(discussing both the Unavoidable and Avoidable Delays Clauses); *Northern States III*, 224 F.3d at 1367 (referring to the Unavoidable Delays Clause in its holding).

As this Court has already held, both Unavoidable and Avoidable Delays Clauses apply only to delays during performance of the contracts, not to a complete failure to perform, which remains the case here. The Avoidable Delays Clause provides for an equitable adjustment for "any delay in the delivery, acceptance or transport" of SNF. A95; A158. The Unavoidable Delays Clause includes almost identical language providing for an equitable adjustment for "delay in scheduled delivery, acceptance or transport" of SNF. A94; A157. As this Court concluded regarding the Avoidable Delays Clause, the delays "are the kind of delays that routinely may arise during the performance of the contract. For them to arise, however, the parties must have begun performance of their obligations relating to disposal of the nuclear waste." *Maine Yankee*, 225 F.3d at 1341. Then, as now, the Government has not begun to perform under the Standard Contracts and will not begin performance until well after 2010.[5] *See Maine Yankee*, 225 F.3d at 1343; *see also Indiana Michigan Power Co. v. United States*, 422 F.3d 1369, 1372 (Fed. Cir. 2005). This Court concluded that the Government had

[5] Indeed, DOE's most recent pronouncements do not even attempt to estimate when DOE might begin to dispose of the utilities' SNF, nor has DOE yet even advised when it will be able to provide a date when DOE will start meeting its obligations.

breached all of the utilities' contracts by failing to perform. *See Maine Yankee*, 225 F.3d at 1342 ("The breach involved all the utilities that had signed the contract – the entire nuclear utility industry.").

The Unavoidable Delays Clause, like the Avoidable Delays Clause, would remit PSEG (and other utilities) to the process described in the Standard Contracts' Disputes Clause, which would not provide complete relief to PSEG (and other utilities). A98-99; A161-62; *Maine Yankee*, 225 F.3d at 1342 (noting that available relief under the Avoidable Delays clause would not provide "complete relief"). This Court noted the inadequate remedies available under the Avoidable Delays Clause – an equitable adjustment to the "charges and schedules" – and concluded that an equitable adjustment "would provide virtually no basis for compensating Yankee for any damages it may have sustained from the Department's failure to perform its contractual obligations." *Maine Yankee*, 225 F.3d at 1342. The Unavoidable Delays Clause provides only for an equitable adjustment to the schedule. *See* A94, A157. Thus, the remedies under the Unavoidable Delays Clause provide even less basis for compensating a utility than the equitable adjustment provision in the Avoidable Delays Clause that this Court found deficient in *Maine Yankee*.

Moreover, the Unavoidable Delays Clause applies to only "scheduled" delivery, acceptance, or transportation of SNF, which limitation provides additional evidence that this clause provides no relief in the present circumstances. As this Court stated, when discussing the Avoidable Delays Clause, "At present there are no schedules containing specific dates for disposing of the waste of particular companies. It is uncertain when they will be adopted and to what extent, if any, they will, or could effectively reflect the Department's breach of the contract." *Maine Yankee*, 225 F.3d at 1342. Thus, similar to the Avoidable Delays Clause, the Unavoidable Delays Clause provides no relief to PSEG (and other utilities) for the Government's breach.

Ultimately, even assuming *arguendo* that the D.C. Circuit decisions have no precedential or persuasive effect (which PSEG strongly disputes), this Court's prior decisions in *Maine Yankee* and *Northern States III* remain binding. The reasoning of this Court in *Maine Yankee* and *Northern States III* fully disposes of the Government's substantive arguments regarding the Unavoidable Delays Clause.

## CONCLUSION AND STATEMENT OF RELIEF

For the foregoing reasons and those stated in PSEG's initial brief, PSEG respectfully requests that this Court find the Tucker Act provides jurisdiction over

PSEG's breach-of-contract damages claim, vacate *Florida Power* as it applies to PSEG, and remand this case for further proceedings on PSEG's claims for damages. Furthermore, this Court should reject the Government's attempts to resurrect its arguments regarding the Unavoidable Delays Clause, arguments that have already been dismissed by this Court and the D.C. Circuit.

Dated: January 23, 2006

Respectfully submitted,

Alex Tomaszczuk by Daniel Herzfeld

Alex D. Tomaszczuk
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1650 Tysons Boulevard
McLean, VA 22102-4859
Tel: (703) 770-7940
Fax: (703) 770-7901

*Counsel of Record for Plaintiffs-Appellants*

*Of Counsel:*

Jay E. Silberg
PILLSBURY WINTHROP
SHAW PITTMAN LLP
2300 N Street, NW
Washington, DC 20037-1128
Tel: (202) 663-8000

Daniel S. Herzfeld
Jack Y. Chu
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1650 Tysons Boulevard
McLean, VA 22102-4859

Tel: (703) 770-7900

**CERTIFICATE OF SERVICE**

I hereby certify that two copies of the foregoing REPLY BRIEF OF PLAINTIFFS-APPELLANTS were served by U.S. Mail (first class, postage pre-paid) and by facsimile this 23d day of January, 2006, upon:

Mr. Harold D. Lester, Jr.
Assistant Director
Commercial Litigation Branch
Civil Division
United States Department of Justice
Washington, D.C. 20530
Attn: Classification Unit
8th Floor, 1100 L Street, N.W.

Jerry Stouck
Greenberg Traurig
800 Connecticut Avenue, N.W.
Suite 500
Washington, DC 20006

______________________________

**RULE 32(a)(7)(C) CERTIFICATE**

Pursuant to Fed. R. App. P. 32(a)(7)(C) and Fed. Cir. R. 32(b), I hereby certify that this brief (exclusive of the Cover, Table of Contents, Table of Authorities, and Certificates of Counsel) contains 4,375 words, in 14-point proportional type, according to the word processing system used to prepare the brief.

Alex D. Tomaszczuk