**No. 05-5162**

---

**UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT**

---

**PSEG NUCLEAR, L.L.C., and**
**PUBLIC SERVICE ELECTRIC AND GAS COMPANY,**

**Plaintiffs-Appellants,**

**v.**

**UNITED STATES,**

**Defendant-Appellee.**

---

**Appeal from the United States Court of Federal Claims**
**in 01-CV-551, Senior Judge Bohdan A. Futey**

---

# REPLY BRIEF OF PLAINTIFFS-APPELLANTS

**Alex D. Tomaszczuk**
**PILLSBURY WINTHROP**
**SHAW PITTMAN LLP**
**1650 Tysons Boulevard**
**McLean, VA 22102-4859**
**Tel: (703) 770-7940**
**Fax: (703) 770-7901**

***Counsel of Record for***
***Plaintiffs-Appellants***

***Of Counsel*:**

**Jay E. Silberg**
**PILLSBURY WINTHROP**
**SHAW PITTMAN LLP**
**2300 N Street, NW**
**Washington, DC 20037-1128**
**Tel: (202) 663-8000**

**Daniel S. Herzfeld**
**Jack Y. Chu**
**PILLSBURY WINTHROP**
**SHAW PITTMAN LLP**
**1650 Tysons Boulevard**
**McLean, VA 22102-4859**
**Tel: (703) 770-7900**

**January 23, 2006**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........ ii

SUMMARY OF ARGUMENT ........ 1

ARGUMENT ........ 3

I. THE NWPA DOES NOT DISPLACE THE CFC'S TUCKER ACT JURISDICTION OVER BREACH-OF-CONTRACT DAMAGES CLAIMS ........ 3

A. NWPA § 119 Is An APA-Type Statute ........ 4

B. The D.C. Circuit Decisions Were Proper And Are Binding Precedent ........ 6

II. THIS COURT HAS REJECTED THE GOVERNMENT'S ARGUMENTS REGARDING THE UNAVOIDABLE DELAYS CLAUSE ........ 13

CERTIFICATE OF SERVICE

RULE 32(a)(7)(C) CERTIFICATE

# TABLE OF AUTHORITIES

***Cases***

*Alabama Power Co. v. Dep't of Energy*,
307 F.3d 1300 (11th Cir. 2002) ........................................................ 9, 10

*Boston Edison Co. v. United States*,
64 Fed. Cl. 167 (2005)..........................................................................5, 6

*Britell v. United States*,
372 F.3d 1370 (Fed. Cir. 2004) ..........................................................5

*Doe v. United States*,
372 F.3d 1308 (Fed. Cir. 2004) ..........................................................5

*Entergy Nuclear Generation Co. v. United States*,
64 Fed. Cl. 336 (2005)..........................................................................6

*Entergy Nuclear Indian Point 2, LLC v. United States*,
64 Fed. Cl. 515 (2005)..........................................................................6

*Fla. Power & Light Co. v. United States*,
64 Fed. Cl. 37 (2005)........................................................................ 3, 19

*General Electric Uranium Mgt. Corp. v. Dep't of Energy*,
764 F.2d 896 (D.C. Cir. 1985)..............................................................4

*Indiana Mich. Power Co. v. Dep't of Energy*,
88 F.3d 1272 (D.C. Cir. 1996) ("*Indiana Michigan I*") .............................. *passim*

*Indiana Mich. Power Co. v. United States*,
422 F.3d 1369 (Fed. Cir. 2005) ("*Indiana Michigan II*") ...................................16

*Int'l Air Response v. United States*,
324 F.3d 1376 (Fed. Cir. 2003) ..........................................................13

*Maine Yankee Atomic Power Co. v. United States*,
225 F.3d 1336 (Fed. Cir. 2000) ................................................... *passim*

*Northern States Power Co. v. Dep't of Energy*,
128 F.3d 754 (D.C. Cir. 1997) ("*Northern States I*").................................. *passim*

*Northern States Power Co. v. Dep't of Energy*,
No. 97-1064 *et al.*, 1998 WL 276581
(D.C. Cir. May 5, 1998) ("*Northern States II*") ........................................ *passim*

*Northern States Power Co. v. United States*,
224 F.3d 1361 (Fed. Cir. 2000) ("*Northern States III*")......... 3, 11, 13, 14, 16, 18

*Office of Consumers' Counsel v. Fed. Energy Regulatory Comm'n*,
826 F.2d 1136 (D.C. Cir. 1987)...........................................................................7

*Olson v. United States*,
172 F.3d 1311 (Fed. Cir. 1999) ...........................................................................6

*Potomac Elec. Power Co. v. Interstate Commerce Comm'n*,
702 F.2d 1026 (D.C. Cir. 1983), *supplemented on other grounds by* 705 F.2d 1343 (D.C. Cir. 1983).....................................................................6

*Stoll v. Gottlieb*,
305 U.S. 165 (1938) ..................................................................................... 12, 13

*Sys. Fuels, Inc. v. United States*,
65 Fed. Cl. 163 (2005).........................................................................................6

*Trauma Serv. Group, Inc. v. United States*,
104 F.3d 1321 (Fed. Cir. 1997) ...........................................................................6

*United States v. Fausto*,
484 U.S. 439 (1988) ..........................................................................................12

*Wis. Elec. Power Co. v. Dep't of Energy*,
211 F.3d 646 (D.C. Cir. 2000)..............................................................................5

***Statutes***

Tucker Act,
28 U.S.C. § 1491 ............................................................................. 1, 3, 5, 18

Nuclear Waste Policy Act § 119,
42 U.S.C. § 10139 .............................................................................. 1, 2, 3, 4

Nuclear Waste Policy Act § 302,
42 U.S.C. § 10222 ................................................................................... 2, 4, 5

***Miscellaneous***

Final Interpretation Of Nuclear Waste Acceptance Issues,
60 Fed. Reg. 21,793 (May 3, 1995)........................................................................7

**SUMMARY OF ARGUMENT**

The U.S. Court of Federal Claims ("CFC") has jurisdiction to hear Plaintiffs-Appellants PSEG Nuclear, L.L.C. and Public Service Electric and Gas Company's (together "PSEG") breach-of-contract damages claims under the Tucker Act, 28 U.S.C. § 1491(a). The judicial review provision of the Nuclear Waste Policy Act ("NWPA") § 119, 42 U.S.C. § 10139, does not withdraw the CFC's Tucker Act jurisdiction to hear breach-of-contract damages claims; § 119 provides only for the original and exclusive review of agency actions in the courts of appeals.

In its brief, Defendant-Appellee the United States (the "Government") again agrees with PSEG that the CFC has Tucker Act jurisdiction to hear PSEG's breach-of-contract damages claims. *See* Corrected Brief of Defendant-Appellee ("Govt Br.") at 9. Notwithstanding this agreement as to the central question raised in PSEG's appeal, the Government takes this unrelated opportunity and the pretext of an opinion by the CFC in another case to collaterally attack the proper assertion of jurisdiction by the U.S. Court of Appeals for the District of Columbia Circuit ("D.C. Circuit") in *Northern States Power Co. v. Dep't of Energy*, 128 F.3d 754 (D.C. Cir. 1997)("*Northern States I*"), and *Northern States Power Co. v. Dep't of Energy*, No. 97-1064 *et al.*, 1998 WL 276581 (D.C. Cir. May 5, 1998) ("*Northern States II*"), to enforce its earlier decision in *Indiana Michigan Power Co. v. Dep't of Energy*, 88 F.3d 1272 (D.C. Cir. 1996) ("*Indiana Michigan I*"). The

Government challenges the D.C. Circuit's assertion of jurisdiction in an attempt to resurrect its arguments under the Unavoidable Delays Clause of PSEG's (and other utilities') Standard Contracts for Disposal of Spent Nuclear Fuel and/or High-Level Radioactive Waste ("Standard Contracts"). *See* Appendix ("A") 94; A157. This Court should reject the Government's argument both because the resolution of this appeal does not require revisiting the question of the D.C. Circuit's jurisdiction and because this Court has already disposed of the Government's arguments on the merits.

First, contrary to the Government's maze of arguments, the D.C. Circuit clearly had jurisdiction to render decisions in *Indiana Michigan I*, *Northern States I*, and *Northern States II*. As PSEG argued in its initial brief, these D.C. Circuit decisions are binding in this case, because the D.C. Circuit had jurisdiction to review the challenged "agency action" under NWPA § 119. Brief of Plaintiffs-Appellants at 22-23 ("PSEG Br."). In fact, the Government itself has previously argued to this Court that the *Northern States I* decision should have preclusive effect. Furthermore, the D.C. Circuit cases involved the D.C. Circuit's power to enforce by mandamus its pronouncement on the statutory requirements of NWPA § 302, 42 U.S.C. § 10222.

Second, this Court has fully disposed of the Unavoidable Delays Clause on the merits in two decisions that the Government fails to discuss, let alone distinguish. *See Northern States Power Co. v. United States*, 224 F.3d 1361 (Fed. Cir. 2000) ("*Northern States III*"); *Maine Yankee Atomic Power Co. v. United States*, 225 F.3d 1336 (Fed. Cir. 2000); *see* Brief of *Amici Curiae* at 6-9 ("*Amicus* Br."). The Government's failure to address these cases is, at the very least, curious.

## ARGUMENT

### I. THE NWPA DOES NOT DISPLACE THE CFC'S TUCKER ACT JURISDICTION OVER BREACH-OF-CONTRACT DAMAGES CLAIMS

The Government and PSEG agree that NWPA § 119 does not displace the CFC's Tucker Act jurisdiction over PSEG's breach-of-contract damages claim. Thus, the parties also agree that the decision in *Florida Power & Light Co. v. United States*, 64 Fed. Cl. 37 (2005), should be vacated as that decision applies to PSEG. *See* Govt Br. at 60. That should be the end of the story.

Instead, the Government collaterally attacks the D.C. Circuit's jurisdiction in rendering the *Northern States I* and *II* decisions. Govt Br. at 55-56. As discussed below and in PSEG's initial brief, however, the D.C. Circuit clearly had jurisdiction to render binding decisions in those cases. Those decisions preclude

relitigation of the issues that the D.C. Circuit actually decided between PSEG and the Government in contested litigation.

### A. NWPA § 119 Is An APA-Type Statute

The key disagreement between the Government and PSEG (and *Amici*) is not whether the CFC has jurisdiction, but instead whether the D.C. Circuit had jurisdiction to render its decisions in *Northern States I* and *II*. The D.C. Circuit properly exercised its authority under NWPA § 119 and the Government presents a red herring by arguing to the contrary.

NWPA § 119 provides for original and exclusive jurisdiction over challenges to agency action or inaction, including any agency action or inaction taken under NWPA § 302. *General Electric Uranium Mgt. Corp. v. Dep't of Energy*, 764 F.2d 896, 901 (D.C. Cir. 1985) (noting that the challenged rule promulgated under § 302 "is well within the class of *agency actions* reviewable under section 119(a)(1)(A)") (emphasis added). As PSEG stated in its initial brief, this reading is consistent with NWPA § 119 being considered an Administrative Procedure Act ("APA")-type statute. PSEG Br. at 15-16.

NWPA § 119 provides the D.C. Circuit (and regional circuits) with original and exclusive jurisdiction over challenges to APA-type agency actions taken by the Department of Energy under the NWPA, but not over breach-of-contract damages

claims. *See Wis. Elec. Power Co. v. Dep't of Energy*, 211 F.3d 646, 648 (D.C. Cir. 2000). The NWPA-Tucker Act jurisdictional dichotomy is fully consistent with the well-recognized APA-Tucker Act jurisdictional dichotomy. *Compare, e.g.*, *Doe v. United States*, 372 F.3d 1308, 1313 (Fed. Cir. 2004) (APA applies), *with Britell v. United States*, 372 F.3d 1370, 1372, 1379 (Fed. Cir. 2004) (Little Tucker Act applies).

Accepting that the D.C. Circuit (and the regional circuits) have jurisdiction to review agency action taken under NWPA § 302, the Government's argument against the propriety of the *Northern States I* and *II* decisions fails. Indeed, the Government does not actually dispute this jurisdictional analysis. Rather, it uses the opportunity to collaterally attack a non-binding CFC decision in another case instead of directly challenging PSEG's stated position. In this regard, the Government uses the CFC's decision in *Boston Edison Co. v. United States*, 64 Fed. Cl. 167 (2005), as a foil for presenting its arguments. Contrary to the Government's suggestion, Govt Br. at 55 n.14, PSEG cited the *Boston Edison* decision in a stringcite with six other CFC decisions only to show that every spent nuclear fuel ("SNF") case at the CFC – other than PSEG's – has concluded that the

CFC had jurisdiction to hear a utility's breach-of-contract damages claims. *See* PSEG Br. at 21.[1]

### B. The D.C. Circuit Decisions Were Proper And Are Binding Precedent

Contrary to the Government's arguments, the D.C. Circuit acted well within its jurisdiction in *Northern States I* and *II*. The D.C. Circuit had jurisdiction over the agency action challenged in *Indiana Michigan I* and, therefore, had the authority to enforce that decision by mandamus in *Northern States I* and *II*.

Generally, an appellate court has inherent authority to enforce its orders by issuing a writ of mandamus. *Potomac Elec. Power Co. v. Interstate Commerce*

[1] Furthermore, as the Government admits, the CFC trial judge in *Boston Edison* "has suggested that it is not questioning the D.C. Circuit's past decisions . . . ." Govt Br. at 12. Indeed, the trial judge – CFC Judge Lettow – has repeatedly relied on the D.C. Circuit decisions the Government claims his opinions undercut. *See Sys. Fuels, Inc. v. United States*, 65 Fed. Cl. 163, 168 n.7, 175-76 (2005) (relying on *Boston Edison* and D.C. Circuit decisions); *Entergy Nuclear Indian Point 2, LLC v. United States*, 64 Fed. Cl. 515, 518, 524 n.14 (2005) (same); *Entergy Nuclear Generation Co. v. United States*, 64 Fed. Cl. 336, 343 n.8, 345 (2005) (same). The Government's disregard of the trial judge's own statements about the meaning of his decisions suggests that the Government's real intent is to get an advisory opinion on this matter before the *Boston Edison* case has reached a final judgment at the CFC. This Court should decline the government's ploy. *See Olson v. United States*, 172 F.3d 1311, 1319 (Fed. Cir. 1999) ("These expressly hypothetical situations are simply not present in the facts of this appeal and it is not our role to offer advisory opinions on hypothetical cases or controversies."); *see also Trauma Serv. Group, Inc. v. United States*, 104 F.3d 1321, 1324 (Fed. Cir. 1997) (noting that the Federal Circuit "reviews judgments, not opinions") (quotation omitted).

*Comm'n*, 702 F.2d 1026, 1032 (D.C. Cir. 1983), *supplemented on other grounds by* 705 F.2d 1343 (D.C. Cir. 1983); *see also Office of Consumers' Counsel v. Fed. Energy Regulatory Comm'n*, 826 F.2d 1136, 1140 (D.C. Cir. 1987) ("A federal appellate court has the authority, through the process of mandamus, to correct any misconception of its mandate by a lower court or administrative agency subject to its authority."). The D.C. Circuit explicitly stated it was issuing its limited mandamus order in *Northern States I* and *II* to enforce its decision in *Indiana Michigan I*.

In *Indiana Michigan I*, PSEG and other utilities challenged the Department of Energy's ("DOE") agency action declaring that DOE had no statutory obligation to begin accepting SNF from utilities by January 31, 1998 absent a storage facility. *See Indiana Michigan I*, 88 F.3d at 1273. In particular, DOE had issued a "Final Interpretation" in 1995 asserting "that it does not have a legal obligation under the [NWPA] or the Standard Contract to begin disposal of SNF by January 31, 1998, in the absence of a repository or interim storage facility constructed under the Act." Final Interpretation Of Nuclear Waste Acceptance Issues, 60 Fed. Reg. 21,793, 21,794 (May 3, 1995) ("Final Interpretation"). The D.C. Circuit rejected this contention, concluding that the NWPA created an unconditional obligation "to start disposing of the SNF no later than January 31, 1998." *Indiana Michigan I*, 88 F.3d at 1277.

Notwithstanding the D.C. Circuit's conclusion in *Indiana Michigan I,* DOE failed to "proceed as if it had just been told that it had an unconditional obligation to take the nuclear materials by the January 31, 1998 deadline." *Northern States I*, 128 F.3d at 757. As a result, in 1997, PSEG and other utilities returned to the D.C. Circuit, seeking a writ of mandamus to force DOE to comply with *Indiana Michigan I* by requiring that DOE begin accepting SNF beginning January 31, 1998. *Northern States I*, 128 F.3d at 758. Although finding that the utilities had a clear right to relief and that DOE had a clear duty to act, the D.C. Circuit denied the broad writ of mandamus requested by the utilities, noting that their Standard Contracts provided "another potentially adequate remedy." *Id.* at 759. The D.C. Circuit, however, issued a more narrow writ of mandamus prohibiting DOE from excusing its failure to perform its statutory duty based on the Unavoidable Delays Clause of the Standard Contracts. *Id.* at 760. The D.C. Circuit explained:

> Under the Department's interpretation of the governing contractual provisions . . . the government can always absolve itself from bearing the costs of its delay if the delay is caused by the government's own acts. This cannot be a valid interpretation, as it would allow the Executive Branch to void an unequivocal obligation imposed by Congress. DOE has no authority to adopt a contract that violates the directives of Congress, just as it cannot implement interpretations of the contract that contravene this court's prior ruling.

*Id*. In its response to the Government's petition for rehearing, the D.C. Circuit re-affirmed its jurisdiction to "enforce compliance with the NWPA." *Northern States II*, 1998 WL 276581, at *2.

The Government takes umbrage at the D.C. Circuit's supposed invasion of the CFC's jurisdiction, asserting now that the D.C. Circuit's power to enforce the NWPA's unconditional *statutory* obligation and that court's prior decision impermissibly prevented the Government from invoking the Unavoidable Delays contract clause. Govt Br. at 50, 55-56. Yet, as noted above, the D.C. Circuit entered the mandamus order specifically to prevent the Government, through its administration of the Standard Contracts, from evading the requirements of the NWPA and a prior decision of the D.C. Circuit.

Nevertheless, the Government contends that the courts of appeals lost their ability to enforce the NWPA vis-à-vis the Standard Contracts 180 days after DOE published the terms and conditions of the Standard Contract in the Federal Register in 1983. Govt Br. at 55-56. Notably, the U.S. Court of Appeals for the Eleventh Circuit ("Eleventh Circuit") heard this identical argument from the Government and definitively rejected it. *See Alabama Power Co. v. Dep't of Energy*, 307 F.3d 1300, 1311 (11th Cir. 2002) ("The Department argues that any challenge to its right to make equitable adjustments is untimely, because the real 'final decision' being

challenged is the equitable adjustment provision (Article IX.B) itself – a provision that became subject to judicial review in 1983 when it became part of the Standard Contract and was published in the Federal Register."). In that case, a number of utilities challenged a settlement agreement between DOE and a utility that embodied "an unlawful expenditure of [Nuclear Waste Fund] monies," which expenditure was presented as an equitable adjustment under a Standard Contract. *Id.* The Eleventh Circuit concluded that the settlement agreement that adopted the equitable adjustment constituted the "agency action, not the 1983 Standard Contract, that is being challenged." *Id.* The Eleventh Circuit thus determined it had jurisdiction to hear the challenge to the agency action and that the action itself – using the Nuclear Waste Fund to pay for the settlement – violated the NWPA. The Eleventh Circuit so held notwithstanding the possible impact of the decision on the Government's interpretation of the Standard Contracts.

Similarly, in *Indiana Michigan I* and *Northern States I* and *II*, the utilities challenged DOE's "Final Interpretation" and subsequent DOE actions in which DOE sought to exculpate itself from its unconditional statutory obligation to begin accepting SNF by January 31, 1998. The utilities did not challenge the terms and conditions of the Standard Contracts in those proceedings, but only DOE's interpretation of its obligations under the NWPA. As noted above, the decisions of the D.C. Circuit (like the Eleventh Circuit in *Alabama Power*) granted limited

relief to ensure that DOE acted consistently with the requirements of the NWPA, notwithstanding DOE's attempt to shield its actions by interpreting the Standard Contracts' Unavoidable Delays Clause to excuse its compliance with *Indiana Michigan I*.

Moreover, the Government's current position regarding the precedential value of *Northern States I* and *II* directly contradicts the Government's prior position before this Court in *Northern States III*. As noted in PSEG's initial brief, in *Northern States III* (as well as the companion case of *Maine Yankee*) the utilities sought to bring a breach-of-contract damages suit directly in the CFC rather than filing a claim under the Disputes Clause of their Standard Contracts. *See Northern States III*, 224 F.3d at 1363. The Government invoked the D.C. Circuit's decision in *Northern States I*, however, arguing that the utilities were "collaterally estopped" from directly filing suit at the CFC based on the D.C. Circuit's ruling. *See Northern States III*, 224 F.3d at 1366. This Court rejected the Government's reading of the D.C. Circuit's decision. *Id.* (noting that the D.C. Circuit in *Northern States I* "did not focus on or address the issue presented here"). Thus, far from contesting the precedential value of the D.C. Circuit's decisions in *Northern States I* and *II*, the Government argued to this Court that the D.C. Circuit's decisions were proper and preclusive.

Had the Government believed the *Northern States I* and *II* decisions lacked precedential value in 2000, it had an obligation to so inform this Court then.[2] Its failure to do so strongly suggests the Government's support or attack of these D.C. Circuit decisions is based more upon a desire to shield DOE from any liability for its egregious management of the nuclear waste program than upon any principled view of the law. This Court should not countenance the Government's wasteful litigation strategies. Now, clarity and finality in the law must take priority. *See Stoll v. Gottlieb*, 305 U.S. 165, 172 (1938) ("It is just as important that there should be a place to end as that there should be a place to begin litigation.").

Ultimately, the Government's collateral attack on the D.C. Circuit's decisions in *Northern States I* and *II* must fail. The D.C. Circuit had authority to enter its mandamus order preventing the Government from violating the NWPA by invoking the Unavoidable Delays Clause. As PSEG argued in its initial brief, PSEG Br. at 22-23, the D.C. Circuit resolved its jurisdiction as a contested issue

[2] Also, while PSEG fully agrees with the Government that *United States v. Fausto*, 484 U.S. 439 (1988), does not foreclose review in the CFC, *see* Govt Br. at 38-43, PSEG takes exception to the Government's conclusion that it is a "close call" regarding CFC jurisdiction. *Id.* at 38. Were the call as "close" as the Government now contends, it stands to reason the Government would have told the D.C. Circuit of its doubts based on *Fausto* as to the CFC's jurisdiction over PSEG's and other utilities' claims. It failed to do so. Had the Government forthrightly expressed these doubts to the D.C. Circuit, the D.C. Circuit might well have found that there was no other "potentially adequate remedy," *see Northern States I*, 128 F.3d at 759, and that entry of a broad writ of mandamus forcing DOE to begin accepting SNF by the 1998 deadline was justified.

between PSEG and the Government in *Northern States II* and that contested decision precludes this Court from revisiting both the jurisdictional ruling and the substantive ruling regarding the Unavoidable Delays Clause. *See Int'l Air Response v. United States*, 324 F.3d 1376, 1380 (Fed. Cir. 2003); *see also Stoll*, 305 U.S. at 172.

## II. THIS COURT HAS REJECTED THE GOVERNMENT'S ARGUMENTS REGARDING THE UNAVOIDABLE DELAYS CLAUSE

Wholly apart from the propriety of the D.C. Circuit's ruling regarding the interaction between the NWPA and the Unavoidable Delays Clause, this Court's decisions in *Northern States III* and *Maine Yankee* fully dispose of the Government's arguments on the merits regarding the Unavoidable Delays Clause. *See Amicus* Br. at 5-9. The Government fails even to address this Court's prior decisions in the body of its brief, perhaps because the logic of this Court's decisions moots the Government's jurisdictional attack on the D.C. Circuit.

As noted above and in PSEG's initial brief, the utilities in *Northern States III* and *Maine Yankee* filed breach-of-contract damages cases directly with the CFC rather than first filing claims with DOE under the Standard Contracts' Disputes Clause. *Maine Yankee*, 225 F.3d at 1341 ("The question . . . is whether Yankee's breach of contract claim is one 'arising under' the contract – that is whether the contractual provisions would provide adequate relief for this particular dispute.")

(quotations omitted); *Northern States III*, 224 F.3d at 1366 (noting that the question presented is "whether the presence of the contractual administrative dispute resolution provisions precludes the present suit for breach of contract"). The Government moved to dismiss the utilities' lawsuits, arguing, among other things, that the utilities had an adequate remedy of an equitable adjustment under the Avoidable Delays Clause, which required the utilities to submit their claims under the Standard Contracts' Disputes Clause before filing suit at the CFC. *See Maine Yankee*, 225 F.3d at 1339; *Northern States III*, 224 F.3d at 1367.

This Court, however, rejected the Government's argument that the utilities must first pursue the Delays remedy under the Disputes Clause. *Northern States III*, 224 F.3d at 1367 ("[W]e hold that the unavoidable delays provision deals with delays arising after performance of the contract has begun, and does not bar a suit seeking damages for the government's failure to begin performance at all by the statutory and contractual deadline of January 31, 1998."); *Maine Yankee*, 225 F.3d at 1342 ("The language of the avoidable delays provision of the contract cannot properly be read to cover Yankee's claim.").

Based on the identical reasoning in *Maine Yankee* and *Northern States III*, this Court should reject the Government's most recent argument regarding the Unavoidable Delays Clause. *See Amicus* Br. at 7-8. This Court discussed both the

Unavoidable Delays Clause[3] and the Avoidable Delays Clause[4] in these decisions. Though primarily focusing on the Avoidable Delays Clause, this Court essentially treated the clauses interchangeably. *See Maine Yankee*, 225 F.3d at 1338

---

[3] The Unavoidable Delays Clause states:

> Neither the Government nor the Purchaser shall be liable under this contract for damages caused by failure to perform its obligations hereunder, if such failure arises out of causes beyond the control and without the fault or negligence of the party failing to perform. *In the event circumstances beyond the reasonable control of the Purchaser or DOE*—such as acts of God, or of the public enemy, acts of Government in either its sovereign or contractual capacity, fires, floods, epidemics, quarantine restrictions, strikes, freight embargoes and unusually severe weather—*cause delay in scheduled delivery, acceptance or transport of SNF and/or HLW*, the party experiencing the delay will notify the other party as soon as possible after such delay is ascertained and the parties will readjust their schedules, as appropriate, to accommodate such delay.

A94 (emphasis added); A157 (same).

[4] The Avoidable Delays Clause states:

> *In the event of any delay in the delivery, acceptance or transport of SNF and/or HLW* to or by DOE caused by circumstances within the reasonable control of either the Purchaser or DOE or their respective contractors or suppliers, the charges and schedules specified by this contract will be equitably adjusted to reflect any estimated additional costs incurred by the party not responsible for or contributing to the delay.

A95 (emphasis added); A158 (same).

(discussing both the Unavoidable and Avoidable Delays Clauses); *Northern States III*, 224 F.3d at 1367 (referring to the Unavoidable Delays Clause in its holding).

As this Court has already held, both Unavoidable and Avoidable Delays Clauses apply only to delays during performance of the contracts, not to a complete failure to perform, which remains the case here. The Avoidable Delays Clause provides for an equitable adjustment for "any delay in the delivery, acceptance or transport" of SNF. A95; A158. The Unavoidable Delays Clause includes almost identical language providing for an equitable adjustment for "delay in scheduled delivery, acceptance or transport" of SNF. A94; A157. As this Court concluded regarding the Avoidable Delays Clause, the delays "are the kind of delays that routinely may arise during the performance of the contract. For them to arise, however, the parties must have begun performance of their obligations relating to disposal of the nuclear waste." *Maine Yankee*, 225 F.3d at 1341. Then, as now, the Government has not begun to perform under the Standard Contracts and will not begin performance until well after 2010.[5] *See Maine Yankee*, 225 F.3d at 1343; *see also Indiana Michigan Power Co. v. United States*, 422 F.3d 1369, 1372 (Fed. Cir. 2005). This Court concluded that the Government had

[5] Indeed, DOE's most recent pronouncements do not even attempt to estimate when DOE might begin to dispose of the utilities' SNF, nor has DOE yet even advised when it will be able to provide a date when DOE will start meeting its obligations.

breached all of the utilities' contracts by failing to perform. *See Maine Yankee*, 225 F.3d at 1342 ("The breach involved all the utilities that had signed the contract – the entire nuclear utility industry.").

The Unavoidable Delays Clause, like the Avoidable Delays Clause, would remit PSEG (and other utilities) to the process described in the Standard Contracts' Disputes Clause, which would not provide complete relief to PSEG (and other utilities). A98-99; A161-62; *Maine Yankee*, 225 F.3d at 1342 (noting that available relief under the Avoidable Delays clause would not provide "complete relief"). This Court noted the inadequate remedies available under the Avoidable Delays Clause – an equitable adjustment to the "charges and schedules" – and concluded that an equitable adjustment "would provide virtually no basis for compensating Yankee for any damages it may have sustained from the Department's failure to perform its contractual obligations." *Maine Yankee*, 225 F.3d at 1342. The Unavoidable Delays Clause provides only for an equitable adjustment to the schedule. *See* A94, A157. Thus, the remedies under the Unavoidable Delays Clause provide even less basis for compensating a utility than the equitable adjustment provision in the Avoidable Delays Clause that this Court found deficient in *Maine Yankee*.

Moreover, the Unavoidable Delays Clause applies to only "scheduled" delivery, acceptance, or transportation of SNF, which limitation provides additional evidence that this clause provides no relief in the present circumstances. As this Court stated, when discussing the Avoidable Delays Clause, "At present there are no schedules containing specific dates for disposing of the waste of particular companies. It is uncertain when they will be adopted and to what extent, if any, they will, or could effectively reflect the Department's breach of the contract." *Maine Yankee*, 225 F.3d at 1342. Thus, similar to the Avoidable Delays Clause, the Unavoidable Delays Clause provides no relief to PSEG (and other utilities) for the Government's breach.

Ultimately, even assuming *arguendo* that the D.C. Circuit decisions have no precedential or persuasive effect (which PSEG strongly disputes), this Court's prior decisions in *Maine Yankee* and *Northern States III* remain binding. The reasoning of this Court in *Maine Yankee* and *Northern States III* fully disposes of the Government's substantive arguments regarding the Unavoidable Delays Clause.

## CONCLUSION AND STATEMENT OF RELIEF

For the foregoing reasons and those stated in PSEG's initial brief, PSEG respectfully requests that this Court find the Tucker Act provides jurisdiction over

PSEG's breach-of-contract damages claim, vacate *Florida Power* as it applies to PSEG, and remand this case for further proceedings on PSEG's claims for damages. Furthermore, this Court should reject the Government's attempts to resurrect its arguments regarding the Unavoidable Delays Clause, arguments that have already been dismissed by this Court and the D.C. Circuit.

Dated: January 23, 2006

Respectfully submitted,

Alex Tomaszczuk by Daniel Herzfeld

Alex D. Tomaszczuk
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1650 Tysons Boulevard
McLean, VA 22102-4859
Tel: (703) 770-7940
Fax: (703) 770-7901

*Counsel of Record for Plaintiffs-Appellants*

*Of Counsel:*

Jay E. Silberg
PILLSBURY WINTHROP
SHAW PITTMAN LLP
2300 N Street, NW
Washington, DC 20037-1128
Tel: (202) 663-8000

Daniel S. Herzfeld
Jack Y. Chu
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1650 Tysons Boulevard
McLean, VA 22102-4859

Tel: (703) 770-7900

**CERTIFICATE OF SERVICE**

I hereby certify that two copies of the foregoing REPLY BRIEF OF PLAINTIFFS-APPELLANTS were served by U.S. Mail (first class, postage pre-paid) and by facsimile this 23d day of January, 2006, upon:

Mr. Harold D. Lester, Jr.
Assistant Director
Commercial Litigation Branch
Civil Division
United States Department of Justice
Washington, D.C. 20530
Attn: Classification Unit
8th Floor, 1100 L Street, N.W.

Jerry Stouck
Greenberg Traurig
800 Connecticut Avenue, N.W.
Suite 500
Washington, DC 20006

________________________________

**RULE 32(a)(7)(C) CERTIFICATE**

Pursuant to Fed. R. App. P. 32(a)(7)(C) and Fed. Cir. R. 32(b), I hereby certify that this brief (exclusive of the Cover, Table of Contents, Table of Authorities, and Certificates of Counsel) contains 4,375 words, in 14-point proportional type, according to the word processing system used to prepare the brief.

Alex D. Tomaszczuk