IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| NEBRASKA PUBLIC POWER DISTRICT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 01-116C |
| v. | ) | (Judge Allegra) |
| | ) | |
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S REPLY TO PLAINTIFF'S
RESPONSE TO THE COURT'S OCTOBER 14, 2005 ORDER

Pursuant to the Court's orders dated October 14, 2005, and January 13, 2006, defendant, the United States, respectfully submits this reply to "Plaintiff's Response To The Court's October 14, 2005 Order." In its October 14, 2005 order, the Court directed the United States to "file a supplemental brief on whether the writ of mandamus should be deemed effective herein, covering any associated jurisdictional/authority issues." We filed our supplemental brief on December 27, 2005, and plaintiff, Nebraska Public Power District ("NPPD"), filed its responsive supplemental brief on February 3, 2006.

## DISCUSSION

### I. NPPD HAS FAILED TO EXPLAIN HOW, UNDER THIS COURT'S JURISDICTIONAL ANALYSIS IN *BOSTON EDISON*, THE D.C. CIRCUIT COULD HAVE POSSESSED JURISDICTION TO ISSUE ITS WRIT OF MANDAMUS IN *NORTHERN STATES*

In its supplemental brief, NPPD asserts that the United States' current assertions that the United States Court of Appeals for the District of Columbia Circuit exceeded its jurisdiction in issuing its writ of mandamus "represent a complete reversal from its position at the U.S. Court of Appeals for the Federal Circuit . . . regarding the precedential value of" the D.C. Circuit's decision in Northern States Power Co. v. Department of Energy, 128 F.3d 754 (D.C. Cir. 1997),

petition for rehearing denied, No. 97-1064, 1998 WL 276581 (D.C. Cir. May 5, 1998). NPPD Supp. Br. 1. It claims that, before the Federal Circuit in Northern States Power Co. v. United States, 224 F.3d 1361 (Fed. Cir. 2000), the United States "did not dispute . . . that the D.C. Circuit's Northern States I decision is binding," NPPD Supp. Br. 2,[1] and that our position here regarding the scope of the D.C. Circuit's jurisdiction to issue the writ of mandamus is new.

NPPD is wrong. As clearly evidenced by the petition for a writ of certiorari that the United States filed in response to the D.C. Circuit's decision in Northern States, a copy of which we attached to a prior filing in this case, the United States has consistently contended that the D.C. Circuit overstepped its jurisdiction in issuing a writ of mandamus that implicated the terms of the Standard Contract. As we have explained in prior briefing, although the D.C. Circuit would have been entitled to consider a petition for review of terms of the Standard Contract when they were promulgated challenging their consistency with the Nuclear Waste Policy Act ("NWPA"), 42 U.S.C. §§ 10101-10270, no entity elected to file such a petition within the statutory time limit of 120 days after promulgation. Accordingly, as we have explained in prior briefing, the D.C. Circuit's jurisdiction to entertain further challenges to those original contract terms expired. Consequently, the D.C. Circuit's writ of mandamus precluding the Government from relying upon the "unavoidable delays" clause of the Standard Contract exceeded the D.C. Circuit's jurisdiction.

---

[1] "NPPD Supp. Br. ___" refers to the supplemental brief, entitled "Plaintiff's Response To The Court's October 14, 2005 Order," that NPPD filed with this Court on February 3, 2006. "PSEG Reply Br. ___" refers to the January 23, 2006 reply brief that PSEG Nuclear, L.L.C., filed with the United States Court of Appeals for the Federal Circuit in PSEG Nuclear, L.L.C. v. United States, No. 05-5162 (Fed. Cir.), a copy of which NPPD attached to its February 3, 2006 supplemental brief in this case.

Before the United States Court of Appeals for the Federal Circuit in Maine Yankee Atomic Power Co. v. United States, 225 F.3d 1336 (Fed. Cir. 2000), and Northern States Power Co. v. United States, 224 F.3d 1361 (Fed. Cir. 2000), we did not somehow take a contrary position to that previously expressed to the United States Supreme Court following issuance of the D.C. Circuit's opinion in Northern States. Nevertheless, we recognized, as we continue to recognize, that, at the present time, we are bound by the writ of mandamus that the D.C. Circuit issued in Northern States. Accordingly, we agree with NPPD that, at the present time, "the D.C. Circuit's writ of mandamus in Northern States I continues to bar the Government from relying upon Article IX.A, the 'Unavoidable Delays' clause of the Standard Contract . . . to excuse" its delay in beginning spent nuclear fuel ("SNF") acceptance. NPPD Supp. Br. 2. The Federal Circuit's decision in the pending appeal of PSEG Nuclear, L.L.C. v. United States, No. 05-5162 (Fed. Cir.), regarding this Court's jurisdiction to entertain the SNF contract cases might provide guidance to the parties regarding the scope and effect of the writ of mandamus.

Nevertheless, this Court and NPPD have directly raised the jurisdictional issue in this case. In fact, the manner in which this Court has resolved the jurisdictional issue in several pending SNF cases has directly implicated the validity of the D.C. Circuit's writ of mandamus. As we have previously explained in prior briefing, this Court in Boston Edison Co. v. United States, 64 Fed. Cl. 167 (2005), and Duke Power Co. v. United States, No. 98-485C (Fed. Cl. March 3, 2005) (unpublished), among others, held that the judicial review provision of the NWPA did not encompass Title III of the NWPA. However, the D.C. Circuit's writ of mandamus in Northern States is based upon the D.C. Circuit's interpretation of a contract provision that was created pursuant to Title III of the NWPA and is dependent upon the D.C.

Circuit's ability to rule upon matters arising under Title III. To the extent that this Court in Boston Edison and Duke Power is correct, the D.C. Circuit could not have possessed jurisdiction to issue the writ.

NPPD continues to gloss over this direct conflict. When it asserts that "[t]he D.C. Circuit properly exercised its authority under Section 119 of the Nuclear Waste Policy Act (the 'NWPA'), 42 U.S.C. § 10139, to render its decisions in Northern States I and II," NPPD Supp. Br. 2, it fails to acknowledge this fundamental conflict between the jurisdictional analysis in Boston Edison and the basis upon which the writ of mandamus in Northern States depends. In the reply brief that PSEG filed with the Federal Circuit in PSEG Nuclear, upon which NPPD has relied in its supplemental brief, it is claimed that, because Judge Lettow has "repeatedly relied on the D.C. Circuit decisions the Government claims his opinions undercut," Judge Lettow has not actually issued any jurisdictional analysis that undercuts the D.C. Circuit's jurisdiction. PSEG Reply Br. 6 n.1. However, NPPD cannot explain, and has not attempted to explain, how, if the jurisdictional analysis in Boston Edison that the judicial review provision of the NWPA does not encompass Title III of the Act is correct, the D.C. Circuit could have possessed jurisdiction to issue its writ of mandamus. As we have previously discussed in detail, if the D.C. Circuit lacked jurisdiction to issue its writ of mandamus, the United States should not be bound by it here. See Christopher Village v. United States, 360 F.3d 1319, 1329-30 (Fed. Cir. 2004). Nevertheless, because the D.C. Circuit issued its directive as a writ of mandamus, and because we have a continuing responsibility to the D.C. Circuit, we cannot ignore that writ regardless of the court before which we appear.

## II. NPPD'S SUGGESTION THAT, EVEN IF *BOSTON EDISON* IS INCORRECT, THE D.C. CIRCUIT POSSESSED JURISDICTION TO ISSUE ITS WRIT OF MANDAMUS IS ALSO INCORRECT

Instead of focusing upon the jurisdictional problem created by the Boston Edison analysis, NPPD, apparently recognizing that Boston Edison's jurisdictional analysis is incorrect and that the NWPA judicial review provision encompasses Title III of the NWPA, argues that the D.C. Circuit's writ of mandamus is proper because the D.C. Circuit was merely enforcing the statutory requirement in Title III that DOE begin SNF acceptance by January 31, 1998. However, as we have explained in prior briefing, Section 302 of Title III of the NWPA does not mandate that DOE begin SNF acceptance on January 31, 1998. Instead, it provides that DOE include language in contracts which provides that, in return for the payment of fees, DOE, "beginning not later than January 31, 1998, will dispose" of SNF. 42 U.S.C. § 10222(a)(5). In 1983, DOE included a provision in the Standard Contract responsive to that requirement. To the extent that interested parties believed that DOE had not complied with this statutory requirement, they had 180 days from the final action of the Secretary to challenge it. 42 U.S.C. § 10139(c). As stated above, that time passed without challenge by any interested parties.

NPPD refers to the United States Court of Appeals for the Eleventh Circuit's decision in Alabama Power Co. v. United States, 307 F.3d 1300 (11th Cir. 2002), as constituting a rejection of the Government's argument here. NPPD Supp. Br. 2. NPPD's reference is irrelevant. The Alabama Power decision involved a challenge to the Secretary's decision that allegedly violated a statutory provision limiting the manner in which the Nuclear Waste Fund could be used, 42 U.S.C. § 10222(d). Further, as acknowledged in the appellate brief that NPPD has incorporated by reference into its supplemental brief, the final action that the nuclear utilities were

challenging in Alabama Power was a settlement agreement into which DOE had entered less than 180 days before the petition for review challenging the settlement agreement terms was filed. PSEG Reply Br. 10. The Alabama Power decision does not establish the D.C. Circuit's jurisdiction to issue the writ of mandamus in Northern States.

III. NPPD'S ASSERTION THAT THE FEDERAL CIRCUIT HAS ALREADY RESOLVED THE SCOPE OF THE "UNAVOIDABLE DELAYS" CLAUSE IS INCORRECT

NPPD, incorporating by reference the briefing that PSEG filed with the Federal Circuit in PSEG Nuclear, L.L.C. v. United States, No. 05-5162 (Fed. Cir.), asserts that the Federal Circuit in Northern States Power Co. v. United States, 224 F.3d 1361 (Fed. Cir. 2000), has already decided – independently of the D.C. Circuit – that the "unavoidable delays" clause in the Standard Contract only applies in situations in which the Government has already begun SNF acceptance. See PSEG Reply Br. 13-18 (attached to NPPD's supplemental brief). NPPD and PSEG are incorrect.

As its first basis for asserting that the Federal Circuit has already resolved this issue, NPPD, through its adoption of the PSEG Nuclear appellate brief, quotes from the Federal Circuit's opinion in Northern States and asserts that the appellate court, referencing its opinion in Maine Yankee Atomic Power Co. v. United States, 225 F.3d 1336 (Fed. Cir. 2000), stated that the "unavoidable delays provision" deals only with delays arising after performance under the Standard Contract has begun. PSEG Reply Br. 14. However, the Federal Circuit's use of the word "unavoidable" in this sentence in Northern States, rather than "avoidable," was clearly an error, as evidenced by the context of the paragraph in which it was included, and given that the

only issue on appeal in the Northern States and Maine Yankee cases was the applicability of the avoidable delays clause to the circumstances of those cases.

Specifically, in Maine Yankee Atomic Power Co. v United States, 225 F.3d 1336 (Fed. Cir. 2000), the Federal Circuit examined whether the Government could rely upon Article IX.B of the Standard Contract, the avoidable delays clause, to avoid liability for failing to begin acceptance of SNF in 1998. Id. at 1341. The Federal Circuit in Maine Yankee concluded that the avoidable delays clause only applied to delays that occurred after contract performance began and, thus, could not excuse DOE from liability for delay in the commencement of SNF acceptance. Id. That same day, the Federal Circuit issued its decision in Northern States Power Co. v. United States, 224 F.3d 1361 (Fed. Cir. 2000), in which we had advanced precisely the same avoidable delay position as in Maine Yankee. In rejecting the Government's argument, the Federal Circuit in Northern States expressly referred to its holding in Maine Yankee concerning the avoidable delays clause, but inadvertently used the words "unavoidable delays clause" rather than the avoidable delays clause when referencing the issue that Maine Yankee had decided, as follows:

> On the merits, our opinion in Maine Yankee fully explains why we have concluded that the utilities may maintain their damage suit, and we need not repeat that discussion here. In brief, we hold that the unavoidable delays provision deals with delays arising after performance of the contract has begun, and does not bar a suit seeking damages for the government's failure to begin performance at all by the statutory and contractual deadline of January 31, 1998.

Northern States, 224 F.3d at 1367 (emphasis added). Yet, the issue of the scope and applicability of the unavoidable delays clause was not briefed in either the Maine Yankee or Northern States appeals at the Federal Circuit, and the Maine Yankee appellate court did not

purport to rule upon the scope of the unavoidable delays clause. Instead, the parties' briefs in both Maine Yankee and Northern States focused upon the trial court's determination regarding the scope of the avoidable delays clause, and the only issue decided in Maine Yankee, to which the Northern States decision referred, was the scope of the avoidable delays clause.[2] Consequently, neither the decision in Maine Yankee nor the decision in Northern States could have addressed the argument that, pursuant to Article IX.A of the Standard Contract (rather than the avoidable delay provision in Article IX.B), the Government is excused from liability for delays in meeting its contractual obligations because of events beyond the control of DOE.

As its second basis for asserting that the Federal Circuit has already decided that the unavoidable delays clause does not apply here, NPPD relies upon the PSEG Nuclear appellate brief, in which PSEG argues that the Federal Circuit's analysis of the avoidable delays clause in Maine Yankee and Northern States should apply to the unavoidable delays clause. It asserts that, because the Federal Circuit found that the language in the avoidable delays clause regarding "any delay in the delivery, acceptance or transport" of SNF applies only to delays that occur after SNF acceptance begins, the language in the unavoidable delays clause regarding "delay in scheduled delivery, acceptance or transport" of SNF should be similarly interpreted. PSEG Reply Br. 16. PSEG further argues that the unavoidable delays clause applies only to delays in

[2] In the Northern States opinion, the Federal Circuit also stated that "in our Maine Yankee opinion we pointed out that it was unclear whether the amount the company had paid for electricity generated before April 17, 1983 could be equitably adjusted at all under the unavoidable delays clause." Northern States, 224 F.3d at 1367 (emphasis added). However, in Maine Yankee, the Federal Circuit discussed that issue in connection with the avoidable delays clause, not the unavoidable delays clause. Maine Yankee, 225 F.3d at 1342. This error in Northern States further evidences that the Federal Circuit's reference in Northern States to the "unavoidable delays" clause was actually intended to refer to the avoidable delays clause.

"'scheduled' delivery, acceptance, or transportation of SNF, which limitation provides additional evidence that this clause provides no relief in the present circumstances." PSEG Reply Br. 18.

In making these arguments, NPPD and PSEG have eliminated the very first sentence of the unavoidable delays clause. That first sentence reads as follows: "Neither the Government nor the Purchaser shall be liable under this contract for damages caused by failure to perform its obligations hereunder, if such failure arises out of causes beyond the control and without the fault or negligence of the party failing to perform." 10 C.F.R. § 961.11, Art. IX.A. Contrary to NPPD's argument, this provision does not contain any language limiting its applicability to situations in which DOE has already started SNF acceptance. To the contrary, it expressly applies to DOE's "failure to perform." Id. In Maine Yankee, the Federal Circuit held that DOE's delay here constituted a "failure to perform its contractual obligations." Maine Yankee, 225 F.3d at 1342. Although the remainder of the unavoidable delays clause in Article IX.A provides specific examples of unavoidable delays, those examples do not limit the broad language of the first sentence of the unavoidable delays clause. NPPD's apparent argument, adopted from PSEG Nuclear's appellate briefing, that the unavoidable delays clause is as limited as the avoidable delays clause is unsupported by the actual language of the unavoidable delays clause and, in fact, requires the Court to add restrictive language to the clause that is not otherwise there. NPPD's contract interpretation directly conflicts with standard rules of contract interpretation. See, e.g., First Nationwide Bank v. United States,48 Fed. Cl. 248, 262-63 (2000) (when parties have carefully negotiated a contract, court won't infer contractual terms from silence).

CONCLUSION

For the reasons that we explained in our response to the Court's show cause order dated October 14, 2004, to the extent that another court exceeds its jurisdiction in deciding a case that properly belongs before this Court, the alternate court's decision should not be binding through res judicata upon the parties before this Court. See Christopher Village, 360 F.3d at 1329-30. In the pending PSEG Nuclear appeal, we have presented to the Federal Circuit our arguments regarding the proper scope of the D.C. Circuit's jurisdiction in Northern States. To the extent that the Federal Circuit agrees with our jurisdictional analysis in PSEG Nuclear, we will be in a better position to address more fully the issues raised by our October 13, 2005 filing, which we submitted in response to the Court's October 5, 2005 order.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr
HAROLD D. LESTER, JR.
Assistant Director

s/ Heide L. Herrmann by Harold D. Lester
HEIDE L. HERRMANN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tel: (202) 307-6289
Fax: (202) 307-2503

Attorneys for Defendant

OF COUNSEL

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

ALAN J. LO RE
Senior Trial Counsel
Department of Justice

February 24, 2006

CERTIFICATE OF FILING

I hereby certify that on this 24th day of February, 2006, a copy of foregoing "DEFENDANT'S REPLY TO PLAINTIFF’S RESPONSE TO THE COURT’S OCTOBER 14, 2005 ORDER" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Harold D. Lester, Jr.