IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| NEBRASKA PUBLIC POWER DISTRICT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 01-116C |
| | ) | (Judge Allegra) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S SUPPLEMENTAL BRIEF CONCERNING MANDAMUS AND WAIVER OF SOVEREIGN IMMUNITY**

Pursuant to the Court's order dated June 2, 2006, defendant, the United States, respectfully files this supplemental brief concerning the issues raised at oral argument on June 1, 2006.

## DISCUSSION

### I. COLLATERAL ATTACK OF THE WRIT OF MANDAMUS WOULD BE PERMISSIBLE BECAUSE THE WRIT UNDERMINES THIS COURT'S EXCLUSIVE AUTHORITY UNDER THE TUCKER ACT TO ADJUDICATE CONTRACTUAL LIABILITY OF THE UNITED STATES

In paragraph 1(a) of the Court's June 2, 2006 order, the Court asked "[w]hether and, if so, in what circumstances it is appropriate in this case to attack collaterally the writ of mandamus" that the United States Court of Appeals for the District of Columbia Circuit issued in Northern States Power Co. v. United States Department of Energy, 128 F.3d 754 (D.C. Cir. 1997).

We are aware of no rule that exempts writs of mandamus from the general rules governing the vulnerability of judgments to collateral attack based upon lack of subject matter jurisdiction, including the rules set forth in the Restatement (Second) of Judgments § 12 (1982). The Restatement's rules governing the preclusive effect of a judgment apply to "any prior

adjudication of an issue in another action that is determined to be sufficiently firm to be afforded conclusive effect," including actions seeking continuing relief such as injunctions and specific performance. Id. § 13 cmt. c. Accordingly, we see no reason why a writ of mandamus is not, in theory, subject to collateral attack in the court that issued the writ or in a court that has jurisdiction over the subject matter of the dispute giving rise to the writ.

As set forth in Section 12 of the Restatement, a judgment precludes the parties from litigating the question of the court's subject matter jurisdiction by collateral attack unless, among other things, "allowing the judgment to stand would substantially infringe the authority of another tribunal or agency of government." Id. § 12(2). Such an infringement occurs when permitting a prior decision to stand would "directly implicat[e] issues of sovereign immunity." International Air Response v. United States, 324 F.3d 1376, 1380 (Fed. Cir. 1980).

Issues of sovereign immunity are directly implicated when the tribunal adjudicating a claim against the United States is not the one that Congress has specified. Christopher Village, L.P. v. United States, 360 F.3d 1319, 1332 (Fed. Cir. 2004) (decision of United States Court of Appeals for the Fifth Circuit purporting to create a "predicate for a damages action . . . in the Court of Federal Claims" was not entitled to preclusive effect because it contravened Congress's intention to confer exclusive jurisdiction for claims of breach of contract in excess of $10,000 upon the Court of Federal Claims); see also United States v. United States Fidelity & Guaranty Co., 309 U.S. 506, 512 (1940) (Federal district court's judgment on cross-claim against United States was void and not entitled to preclusive effect because "[n]o statutory authority granted jurisdiction to [the court] to adjudicate a cross-claim against the United States"). The degree to which issues of sovereign immunity are implicated when claims for breach of contract against

the United States are adjudicated in courts other than the Court of Federal Claims is heightened because of the "importance that Congress ascribed to the exclusive nature of [the Court's Tucker Act] jurisdiction." Christopher Village, 360 F.3d at 1332. In fact, and precisely because the extent of the United States's waiver of sovereign immunity for contract claims is carefully circumscribed by the Tucker Act, the United States Courts of Appeals for the First and Second Circuits have specifically cautioned against the use of mandamus to resolve the contractual liability of the United States. Coggeshall Development Corp. v. Diamond, 884 F.2d 1, 4 (1st Cir. 1989) (addressing writ issued by district court pursuant to 28 U.S.C. § 1361 and concluding that "Congress did not intend . . . the extraordinary writ of mandamus to be converted into a device for obtaining piecemeal solution of contractual disputes to which the United States is a party") (quoting Doe v. Civiletti, 635 F.2d 88, 89 (2d Cir.1980)).

The sovereign immunity of the United States is implicated to a lesser degree where the result of a court's extra-jurisdictional action is not the adjudication of the liability of the United States by a tribunal not authorized by Congress, but, instead, the alteration of the conditions under which the sovereign may be sued in the appropriate forum. Thus, in International Air Response, the Federal Circuit declined to disturb the order of a Federal district court staying the running of the statute of limitations under Contract Disputes Act where the effect of the court's order was to permit contractor time beyond that authorized by Congress to commence action in the Court of Federal Claims. International Air, 324 F.3d at 1380 (also noting that, unlike USF&G, the court issuing the original ruling "plainly" had jurisdiction over the entirety of the matter before it).

The ability of a party collaterally to attack a judgment because of its impairment of important Government objectives does not depend upon whether jurisdiction was litigated either in the original action or upon appeal. See Kalb v. Feuerstein, 308 U.S. 433, 444 (1940) ("considerations as to whether the issue of jurisdiction was actually contested in the County Court or whether it could have been contested . . . are not applicable" where Congress had designated bankruptcy courts, as opposed to state court, as exclusive forum for resolution of issues raised in litigation); Restatement (Second) of Judgments § 12 cmt. c (relitigation of issue of subject matter jurisdiction is warranted where the exercise of jurisdiction impairs a substantial public interest); id. cmt. e (party who fails to contest jurisdiction will be barred from raising issue on collateral attack unless the exercise of authority has "seriously disturbed the distribution of governmental powers or has infringed a fundamental constitutional protection," and consideration "is essentially the same as when the issue was actually litigated in the first action"). In this case, the writ of mandamus issued by the D.C. Circuit is analogous to the "predicate for a damages action . . . in the Court of Federal Claims" that the United States Court of Appeals for the Fifth Circuit purported to set in Christopher Village. As in Christopher Village, where the "predicate" set by the Fifth Circuit included a resolution on the merits of the Department of Housing and Urban Development's contractual responsibilities, see 360 F.3d at 1323-24 (describing the Fifth Circuit's decision), the D.C. Circuit has, with all due respect, usurped the sole jurisdiction of the Court of Federal Claims to adjudicate claims for breach of contract against the United States. Far from merely altering the conditions under which the United States can be sued for breach of contract in the Court of Federal Claims (the effect of the extra-jurisdictional ruling that the Federal Circuit declined to disturb in International Air

Response), the D.C. Circuit has barred the United States, in actions properly brought against it in the Court of Federal Claims, from relying upon a substantive provision of the Standard Contract that establishes the parties' rights and remedies if contractual performance is delayed.[1] Further, the D.C. Circuit has adjudicated the obligations of the United States not only with respect to the parties to the mandamus proceedings, but in all 58 of the currently pending cases in which plaintiffs have asserted breach of the Standard Contract. The resolution of contractual liability by mandamus disregards the "importance that Congress [has] ascribed to the exclusive nature of" the Court's Tucker Act jurisdiction, Christopher Village, 360 F.3d at 1332, and for that reason constitutes a substantial impairment and disruption of the distribution of Government authority. For that reason, collateral attack of the D.C. Circuit's writ is permissible.[2]

## II. NO WAIVER OF SOVEREIGN IMMUNITY SUPPORTS THE D.C. CIRCUIT'S USE OF MANDAMUS TO ADJUDICATE ISSUES RELATED TO PERFORMANCE OF THE STANDARD CONTRACT IN THE COURTS OF APPEALS

In paragraph 1(b) of its June 2, 2006 order, the Court asked whether "appropriate waivers of sovereign immunity underlie and support the mandamus writ issued by the D.C. Circuit, at least insofar as that court invoked jurisdiction under the 42 U.S.C. § 10139(a)(1) and, apparently, the All Writs Act, 28 U.S.C. § 1651."

The All Writs Act, 28 U.S.C. § 1651, permits Federal courts to issue "all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles

[1] If jurisdictionally sound, the effect of his ruling is to eliminate an essential term of the parties' agreement and create a contract with terms different than those to which the parties originally agreed.

[2] In arriving this conclusion, we do not reach the issue of whether this Court, as opposed to the D.C. Circuit, is the appropriate forum in which to attack the writ.

of law." Although the All Writs Act does not operate as an independent waiver of sovereign immunity, see, e.g., Lloyd's Syndicate 609 v. United States, 780 F. Supp. 998, 1001 (S.D.N.Y. 1991); Benevenuti v. Department of Defense, 587 F. Supp. 348, 351 (D.D.C. 1984), we do not contest the ability of a court to issue a writ against the United States pursuant to the All Writs Act where it possesses an independent basis for asserting jurisdiction over the subject matter in the first instance (including a waiver of sovereign immunity) and the issuance of such a writ is necessary to preserve that jurisdiction. Because the All Writs Act "confines the authority to the issuance of process 'in aid of' the issuing court's jurisdiction," that act does not enlarge the Court's jurisdiction, Clinton v. Goldsmith, 526 U.S. 529, 534-35 (1999), and does not require an additional waiver of sovereign immunity where the Court already possesses jurisdiction over, and sovereign immunity has been waived with respect to, the matter.[3]

More problematic is Section 119 of the Nuclear Waste Policy Act ("NWPA" or the "Act"), 42 U.S.C. § 10139(a), which does not constitute a waiver of the sovereign immunity of the United States. Although that provision confers jurisdiction upon the D.C. Circuit and the regional courts of appeals to entertain actions concerning, among other things, the Department of Energy's obligations under the Act, "'[t]he fact that Congress grants jurisdiction to hear a claim does not suffice to show Congress has abrogated all defenses to that claim. The issues are wholly distinct.'" United States v. Nordic Village, Inc., 503 U.S. 30, 38 (1992) (quoting Blatchford v. Native Village of Noatak, 501 U.S. 775, 786 (1991)) (emphasis in original).

---

[3] The same is true of 28 U.S.C. § 1361, which, by its terms, permits Federal district courts to issue writs of mandamus to compel Federal officers or agencies to perform nondiscretionary duties owed to plaintiffs. This provision does not provide an independent waiver of sovereign immunity. Coggleshall, 884 F. 2d at 3.

Rather, the consent of the sovereign to be sued cannot be implied and must be explicitly stated and narrowly construed. See, e.g., Lane v. Pena, 518 U.S. 187, 191 (1996); United States v. Nordic Village, Inc., 503 U.S. 30, 33-34 (1992). "[W]here a cause of action is authorized against the federal government, the available remedies are not those that are 'appropriate,' but only those for which sovereign immunity has been expressly waived." Lane, 518 U.S. at 197.

Entitled "Jurisdiction of the United States courts of appeals," Section 119(a) of the NWPA speaks solely to subject matter jurisdiction, not sovereign immunity.[4] It does not waive the Government's immunity from suit, much less in the clear and unambiguous manner that the Supreme Court has required. It does not describe who may bring actions within its jurisdictional grant, does not identify the remedies that a court can provide, and does not delineate the nature and scope of such a cause of action. It simply identifies the courts in which "any civil action . . . alleging the failure of the Secretary, the President, or the Commission to make any decision, or take any action, required under this part" must be brought. 42 U.S.C. § 10139(a). Congress's mere designation of the courts in which such an action must be filed fails to demonstrate with the requisite clarity that Congress intended to waive the government's defense of sovereign immunity. See Nordic Village, 503 U.S. at 38.[5]

---

[4] Although a waiver of sovereign immunity is a jurisdictional requirement, it is a distinct question from the issue of subject matter jurisdiction. See First Virginia Bank v. Randolph, 110 F.3d 75, 77-78 (D.C. Cir. 1997).

[5] Section 119(a)(2) of the Act refers to a "proceeding under this section," and Section 119(b) refers to a "civil action for judicial review described under subsection (a)(1) of this section." 42 U.S.C. § 10139(a)(2), (b). At best, these references contemplate the existence of claims brought against the United States pursuant to Section 119, from which consent to be sued might, arguably, be implied. However, they do not rise to the level of an express waiver of sovereign immunity. This conclusion is reenforced by the fact that, in enacting the NWPA,

(continued...)

This conclusion does not mean that the United States has categorically failed to consent to suit in the courts of appeals with respect to claims that fall within the jurisdictional grant of Section 119(a) of the NWPA. Section 10(a) of the APA, 5 U.S.C. § 702, operates as an express waiver of sovereign immunity by the United States in cases challenging final action brought by persons "seeking relief other than money damages and stating a claim that an agency or an officer or employee thereof acted or failed to act in an official capacity or under color of legal authority." See Consolidated Edison Co. of New York, Inc. v. United States, 247 F.3d 1378, 1382 (Fed. Cir. 2001). Section 10(c) of the APA, 5 U.S.C. § 704, limits the waiver contained in Section 10(a) to "those claims for which there is no other adequate remedy in a court." Id.. Thus, for purposes of this case, the United States's consent to be sued in the courts of appeals for claims arising under the NWPA is confined to those that satisfy both Sections 10(a) and 10(c) of the APA: namely, those that do not seek money damages and those for which there is no other remedy in court. This category of cases includes the wide swath of claims contemplated by Section 119 of the NWPA, including the issue of whether the Department of Energy included in the Standard Contract the terms required by Section 302 of the NWPA, although review of that issue is subject to the limitation on the waiver imposed by the statute of limitations contained in Section 119(c) of the NWPA. See Raygor v. Regents of Univ. of Minn., 534 U.S. 533, 542 (2002) ("[w]hen the sovereign at issue is the United States, we have recognized that a limitations period may be 'a central condition' of the sovereign's waiver of immunity"); Block v. North

[5](...continued)
Congress was legislating against the backdrop of decades of administrative litigation under the Administrative Procedure Act. As discussed below, that statute provides a waiver of sovereign immunity for certain claims challenging final agency actions and seeking relief other than money damages. See 5 U.S.C. § 702.

Dakota ex rel. Bd. of Univ. & School Lands, 461 U.S. 273, 287 (1983) ("[w]hen waiver legislation contains a statute of limitations, the limitations period constitutes a condition on the waiver of sovereign immunity").[6]

Notably, however, the category of cases arising under the NWPA with respect to which the United States has consented to be sued in the courts of appeals (through an action brought under the APA) does not include those concerning performance of the Standard Contract. This is not only because such claims are beyond the jurisdiction of the Court (for reasons stated in our prior submissions and in our appellate brief in PSEG Nuclear, L.L.C. v. United States, Fed.. Cir. No. 05-5162), but also because such claims effectively seek money damages and because there is an adequate remedy in another court for these claims: namely, an action in the Court of Federal Claims pursuant to the Tucker Act.

In Consolidated Edison, the Federal Circuit held that litigation in the Court of Federal Claims was an adequate remedy for the adjudication of the alleged impropriety of assessments imposed by the Department of Energy pursuant to the Energy Policy Act, and that the adequacy of this remedy precluded review under the APA. Consolidated Edison, 247 F.3d at 1386. The same result holds true here with respect to the scope of any dispute arising out of proper interpretation and application of the "Unavoidable Delays" clause in the Standard Contract. Indeed, the D.C. Circuit itself has made clear that this Court is "the proper forum for

---

[6] As we have discussed in prior briefing and at argument on June 1, 2006, interested parties may have had an opportunity to challenge DOE's implementation of Section 302(a)(5), which identified certain terms that were to be included in the Standard Contract, within 180 days of DOE's development and publication of those terms in 1983. See 42 U.S.C. § 10139(c) (identifying the 180-day limitations period). However, no entity ever filed any such challenge, including any challenge to the inclusion of the "Unavoidable Delays" clause in the Standard Contract.

adjudicating contract disputes" concerning the Standard Contract. Wisconsin Electric Power Co. v. United States, 211 F.3d 646, 648 (D.C. Cir. 2000). The pendency of 58 cases alleging breach of the Standard Contract in the Court of Federal Claims, each seeking millions of dollars, demonstrates the adequacy of this forum to resolve the respective rights and responsibilities under the Standard Contract and to afford adequate relief to the plaintiffs in such actions.

This is not a case like Bowen v. Massachusetts, 487 U.S. 879 (1988), where "the interaction between the State's administration of its responsibilities under an approved Medicaid plan and the Secretary [of Health and Human Services]'s interpretation of his regulations may make it appropriate for judicial review to culminate in the entry of declaratory or injunctive relief that requires the Secretary to modify future practices." Id. at 905. Indeed, even the D.C. Circuit expressly determined, when granting the mandamus writ about which the Court has inquired, not to order the Department of Energy specifically to perform the Standard Contract and begin accepting spent nuclear fuel in January 1998. In fact, the underlying reason for the D.C. Circuit's issuance of a narrow mandamus order and for its denial of the utilities' request for a broader writ compelling specific performance under the Standard Contract was that the utilities had a potentially adequate remedy, in the form of contract remedies under the Standard Contract. Northern States, 128 F.3d at 758 (relying upon the availability of relief under Article IX of the Standard Contract as a basis for denying the mandamus relief requested); see also Northern States Power Co. v. United States, 224 F.3d 1361, 1366 (Fed. Cir. 2000) (determining that, notwithstanding statements in the D.C. Circuit's mandamus writ, the proper forum for pre-performance damage suits is the Court of Federal Claims). The D.C. Circuit has subsequently explained that, in its mandamus order, it "expressed no opinion about the relief the DOE would

have to provide" for breach of what it deemed an unconditional obligation to begin accepting spent nuclear fuel on January 31, 1998. Wisconsin Electric, 211 F.3d at 648. Because the mandamus order was not designed to compel performance in the first place, and because the mandamus order expressly denied the utilities' request for an order compelling acceptance of spent fuel on or before January 31, 1998, there is no basis upon which to conclude that the SNF plaintiffs would not be made whole by a money damage award or that the Court of Federal Claims is not an adequate forum to interpret and provide an appropriate remedy for breach of the Standard Contract. It follows that the APA does not provide a waiver of sovereign immunity upon which the D.C. Circuit could have based its writ of mandamus.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/ Heide L. Herrmann
HEIDE L. HERRMANN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 514-4325
Fax: (202) 307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

ANDREW P. AVERBACH
Trial Attorney
U.S. Department of Justice
Washington, D.C. 20530

July 12, 2006

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 12th day of July, 2006, a copy of foregoing "DEFENDANT'S SUPPLEMENTAL BRIEF CONCERNING MANDAMUS AND WAIVER OF SOVEREIGN IMMUNITY" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Andrew P. Averbach