No. 01-116C
(Judge Allegra)

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

---

NEBRASKA PUBLIC POWER DISTRICT,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

DEFENDANT'S RESPONSE TO PLAINTIFF'S BRIEF DATED JULY 12, 2006

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

HAROLD D. LESTER, JR.
Assistant Director

HEIDE L. HERRMANN
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Telephone: (202) 514-4325
Facsimile: (202) 307-2503

Attorneys for Defendant

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
Department of Energy
1000 Independence Avenue, S.W.
Washington, D.C. 20585

ANDREW P. AVERBACH
Trial Attorney
U.S. Department of Justice
Washington, D.C. 20530

July 31, 2006

TABLE OF CONTENTS

PAGE(S)

DISCUSSION ..................... 1

I. THE WRIT OF MANDAMUS ISSUED IN *NORTHERN STATES* SOUGHT TO VINDICATE RIGHTS GROUNDED IN CONTRACT ..................... 1

II. THE WRIT OF MANDAMUS ISSUED IN *NORTHERN STATES* WAS NOT ISSUED PURSUANT TO A "SPECIFIC STATUTORY REVIEW" PROVISION ..................... 5

III. THE PETITIONERS IN *NORTHERN STATES* HAD ANOTHER ADEQUATE REMEDY IN COURT FOR THE RELIEF THEY OBTAINED ..................... 8

IV. THE FEDERAL CIRCUIT'S DECISIONS DO NOT PRECLUDE ENTERTAINMENT OF THE "UNAVOIDABLE DELAY" DEFENSE .......... 10

# TABLE OF AUTHORITIES

CASES PAGE(S)

Beacon Oil Co. v. O'Leary,
71 F.3d 391 (Fed. Cir. 1995) .......... 11

Block v. North Dakota ex rel. Board of University & School Lands,
461 U.S. 273 (1983) .......... 3

Bowen v. Massachusetts,
487 U.S. 879 (1988) .......... 9

Coggeshall Development Corp. v. Diamond,
884 F.2d 1 (1st Cir. 1989) .......... 5

Cuyahoga Metropolitan Housing Authority v. United States,
57 Fed. Cl. 751 (2003) .......... 10

First Nationwide Bank v. United States,
48 Fed. Cl. 248 (2000) .......... 15

Gevyn Construction Corp. v. United States,
225 Ct. Cl. 580 (1980) .......... 10

Indiana Michigan Power Co. v. Department of Energy,
88 F.3d 1272 (D.C. Cir. 1996) .......... 1, 6

Maine Yankee Atomic Power Co. v. United States,
225 F.3d 1336 (Fed. Cir. 2000) .......... passim

Megapulse, Inc. v. Lewis,
672 F.2d 959 (D.C. Cir. 1982) .......... 3, 4, 9

Nevada v. Watkins,
939 F.2d 710 (9th Cir. 1991) .......... 7, 8

Northern States Power Co. v. United States,
128 F.3d 754 (D.C. Cir. 1997) .......... 1

Northern States Power Co. v. United States,
224 F.3d 1361 (Fed. Cir. 2000) .......... 12, 13

Northern States Power Co. v. United States,
1998 WL 276581 (D.C. Cir. May 5, 1998) .......... passim

TABLE OF AUTHORITIES (cont'd)

CASES PAGE(S)

Roberts v. United States,
242 F.2d 1065 (Fed. Cir. 2001) .......... 9

Tesoro Hawaii Corp. v. United States,
405 F.3d 1339 (Fed. Cir. 2005) .......... 11

STATUTES

5 U.S.C. § 702 .......... 1

5 U.S.C. § 704 .......... 6, 7, 8

28 U.S.C. § 1346 .......... 5

42 U.S.C. § 10132 .......... 7, 8

42 U.S.C. § 10139 .......... 3, 7, 8

42 U.S.C. § 10222 .......... 2, 3, 6

10 C.F.R. § 961.11 .......... 14

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| NEBRASKA PUBLIC POWER DISTRICT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 01-116C |
| | ) | (Judge Allegra) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO PLAINTIFF'S BRIEF DATED JULY 12, 2006

Pursuant to the Court's order dated June 2, 2006, defendant, the United States, respectfully files this response to the supplemental brief that plaintiff, Nebraska Public Power District ("NPPD"), filed on July 12, 2006.

DISCUSSION

I. THE WRIT OF MANDAMUS ISSUED IN *NORTHERN STATES* SOUGHT TO VINDICATE RIGHTS GROUNDED IN CONTRACT

In the section beginning on page 14 of its brief, NPPD sets out its central argument – that the rights that the petitioners sought to vindicate in Northern States Power Co. v. United States, 128 F.3d 754 (D.C. Cir. 1997) ("Northern States I"), arose from a statutory, as opposed to a contractual, duty. From this premise, NPPD reasons that the petitioners' request for a writ of mandamus to compel the Department of Energy ("DOE") to begin accepting fuel on or before January 31, 1998, was not "impliedly forbidden" by the Tucker Act and was thus not barred by Section 10(a) of the Administrative Procedure Act, 5 U.S.C. § 702(2).

NPPD's analysis ignores the contractual basis of the obligation of the DOE to begin accepting fuel. NPPD goes to great length to highlight the United States Court of Appeals for the District of Columbia Circuit's conclusion in Indiana Michigan Power Co. v. Department of Energy, 88 F.3d 1272, 1277 (D.C. Cir. 1996), that section 302(a)(5)(B) of the Nuclear Waste

Policy Act ("NWPA"), 42 U.S.C. § 10222(a)(5)(B), "creates an obligation in DOE, reciprocal to the utilities' obligation to pay, to start dispensing of the SNF no later than January 31, 1998." Ultimately, NPPD concludes on page 20 of its brief that, in Northern States Power Co. v. United States, 1998 WL 276581 (D.C. Cir. May 5, 1998) (Northern States II), the "D.C. Circuit explained its jurisdictional rationale" in Northern States I and "issued [a] limited mandamus order to enforce only a statutory duty."

However, NPPD's characterization of the mandamus writ is belied by the text of the NWPA itself and the D.C. Circuit's opinion in Northern States II. As the D.C. Circuit expressly acknowledged in Northern States II, the NWPA merely "requires the DOE to include an unconditional obligation in the Standard Contract [and] does not itself require performance. Breach by the DOE does not violate a statutory duty . . . ." Northern States II, 1998 WL 276581, at *2. The only relevant statutory duty with which DOE was charged was the obligation, pursuant to Section 302(a)(5) of the NWPA, 42 U.S.C. § 10222, "to assume an unconditional duty to begin disposal by January 31, 1998," through the terms of the contract promulgated in response to that section. Id. (emphasis added). The United States assumed this duty by promulgating contract terms in April 1983, which formed the basis of contracts that nuclear power owners and generators entered in June 1983. As we have previously explained, the failure of NPPD or any other nuclear utility to challenge the implementation of the contracting provisions of Section 302(a)(5) through an action brought within 180 days of promulgation of the Standard Contract should have precluded any further review of the contract terms or any subsequent contract administration and performance matters pursuant to the NWPA's judicial review provision. See 42 U.S.C. § 10139(c). Once this 180-day period expired without

challenge, the terms of the Standard Contract were fixed, and compliance by the United States with the duty to begin accepting fuel became enforceable solely through an action, pursuant to the Tucker Act, for breach of the Standard Contract, in the form in which the Standard Contract was promulgated and executed. When a statutory provision waiving the Government's sovereign immunity "contains a statute of limitations, the limitations period constitutes a condition on the waiver of sovereign immunity." Block v. North Dakota ex rel. Bd. of Univ. & School Lands, 461 U.S. 273, 287 (1983). Here, once the statute of limitations expired upon the nuclear utilities' ability to challenge DOE's implementation of the contracting provisions in the NWPA, 42 U.S.C. § 10222(a)(5), any waiver of sovereign immunity by the Government through which the D.C. Circuit could have reviewed the contract provisions to ensure compliance with the statutory requirements in Section 302(a)(5) expired.

This conclusion renders inapplicable NPPD's discussion of and reliance upon Megapulse, Inc. v. Lewis, 672 F.2d 959 (D.C. Cir. 1982). In Megapulse, the D.C. Circuit declined to adopt a "broad test" for identifying whether a claim is "at its essence" a contract claim and specifically rejected the contention that "any case requiring some reference to or incorporation of a contract is necessarily on the contract and therefore directly within the Tucker Act." Id. at 967-68. The court found that, because the source of the right that the plaintiff sought to enforce was not grounded in the Government's contractual obligations but, rather, its obligations under the Trade Secrets Act, the claim was not "at its essence" a claim for breach of contract available solely through an action pursuant to the Tucker Act. Id. at 969. For this reason, the Court determined that it could entertain the plaintiff's request for injunctive relief,

notwithstanding the fact that the allegedly offending actions might also constitute a breach of the plaintiff's contract with the Government. Id. at 970.

Here, the rights that the petitioners in Northern States I sought to vindicate were, unlike Megapulse, not grounded in a statute. As noted, although the NWPA imposed upon DOE a statutory obligation to enter contracts containing certain terms, the right to challenge any failure to include such terms expired after 180 days of promulgation of the Standard Contract, and the terms of the Standard Contract became fixed at that time. Further, the D.C. Circuit specifically recognized that breach of the obligation to begin accepting fuel "does not violate a statutory duty." Northern States II, 1998 WL 276581 at *2. Thus, far from a case where litigation over statutory rights might, as NPPD suggests, have a "spillover" effect on contractual rights, there was no statutory obligation in this case to begin accepting fuel that the D.C. Circuit's mandamus writ could conceivably have vindicated. Because the terms of the Standard Contract had already been fixed, the only obligation that the mandamus writ could have been designed to protect was an obligation that existed pursuant to the terms of the Standard Contract.

Further, in issuing the writ of mandamus, the Court of Appeals for the D.C. Circuit did not act to compel performance of the duty, as the petitioners in that case had requested, to begin accepting fuel. Instead, it adjudicated the entirely separate question of whether the delay of the United States in performing was "avoidable" or "unavoidable" – terms that appear solely within the Standard Contract and are wholly absent from the NWPA.

The distinction between what the petitioners requested and what the D.C. Circuit actually ordered only serves to magnify the distinction between a writ vindicating rights guaranteed by statute and rights that are properly adjudicated exclusively in an action for breach of contract.

Although Congress might have waived the sovereign immunity of the United States with respect to claims seeking to compel performance of a duty actually required by the NWPA (such as the duty to include particular terms in the Standard Contract), it did not consent to the adjudication in the courts of appeals of disputes concerning the meaning or appropriateness of contractual terms in contracts to which the United States is a party, particularly where the challenge came more than 14 years after the contracts were executed.[1] As the United States Court of Appeals for the First Circuit cogently explained in another context, "Congress did not intend . . . the extraordinary writ of mandamus to be converted into a device for obtaining piecemeal solution of contractual disputes to which the United States is a party." Coggeshall Development Corp. v. Diamond, 884 F.2d 1, 4 (1st Cir. 1989). With all due respect, the D.C. Circuit's writ of mandamus encroached into the realm of interpreting the terms of a contract that had been fixed in accordance with procedures designated by Congress. Its issuance of a writ to correct this process was beyond the scope of its jurisdiction and beyond the waiver of the sovereign immunity of the United States.

## II. THE WRIT OF MANDAMUS ISSUED IN *NORTHERN STATES* WAS NOT ISSUED PURSUANT TO A "SPECIFIC STATUTORY REVIEW" PROVISION

Beginning on page 20 of its brief, NPPD raises its second major argument – that the writ of mandamus issued by the D.C. Circuit was issued pursuant to its authority, pursuant to the Administrative Procedure Act ("APA"), to conduct so-called "specific statutory review" and that

[1] The United States district courts have concurrent jurisdiction over claims for breach of contract that do not exceed $10,000. 28 U.S.C. § 1346(a)(2).

the "no other adequate remedy" provision of Section 10(c) of the APA, 5 U.S.C. § 704,[2] is therefore not applicable to this case. NPPD is correct that, pursuant to the plain terms of Section 10(c) of the APA, the "no other adequate remedy" qualifier does not modify the phrase "agency action made reviewable by statute" and does not apply where "specific statutory review" is available. However, NPPD is not correct in its assertion that the agency action at issue before the D.C. Circuit in Northern States I was "made reviewable by statute" and therefore subject to specific statutory review.

As noted above, the only action that the NWPA requires DOE to take with respect to the Standard Contract is to include within the contract certain terms, including the obligation to begin accepting fuel no later than January 31, 1998. See 42 U.S.C. § 10222(a)(5). Although the D.C. Circuit's decisions in Indiana Michigan and Northern States I contain language (to which NPPD repeatedly refers in its brief) that might suggest a statutory source for this obligation, the D.C. Circuit refined its analysis in Northern States II and ultimately recognized the limited nature of DOE's obligations under the NWPA. See Northern States II, 1998 WL 276581, at *2 (concluding that the NWPA merely requires DOE to include an unconditional obligation in the Standard Contract, the breach of which does not violate a statutory duty, and does not itself require DOE to accept fuel by a particular date). Any alleged failure to have included a deadline for acceptance within the Standard Contract (including an allegation that the "Unavoidable Delays" clause was so broad as to eviscerate the obligation to commence performance by a date certain) would have been reviewable (within the appropriate 180-day statute of limitations)

[2] Section 10(c) of the APA provides, in relevant part, that "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court are subject to judicial review." 5 U.S.C. § 704.

pursuant to the grant of subject matter jurisdiction afforded by Section 119 of the NWPA, 42 U.S.C. § 10139(a)(1)(B) (permitting review of the Secretary of Energy's failure to take required action, including actions required by Title III of the NWPA), and the waiver of sovereign immunity contained in Section 10(c) of the APA, 5 U.S.C. § 704 (as an "agency action made reviewable by statute"). However, the Government's interpretation of the terms of the Standard Contract and, specifically, its legal conclusion that a failure to perform could be excused by the "Unavoidable Delays" clause do not fall within this "specific statutory review" provision for the simple reason that there is no "statute" that authorizes a review of such an interpretation.

Analysis of Nevada v. Watkins, 939 F.2d 710 (9th Cir. 1991), to which NPPD cites on page 22 of its brief, confirms the inapplicability of "specific statutory review" to disputes concerning interpretation of the Standard Contract. In Watkins, the United States Court of Appeals for the Ninth Circuit explained the process, pursuant to Section 112 of the NWPA, 42 U.S.C. § 10132, by which the Secretary of Energy was to nominate potential sites for the construction of a repository for spent nuclear fuel and issue an environmental assessment for each site. As NPPD notes, the Ninth Circuit stated in Watkins that each environmental assessment "would be a 'final agency action subject to judicial review' in accordance with the APA and the NWPA provisions." Id. at 712. However, in this passage, the Ninth Circuit was merely quoting Section 112(b)(1)(E) of the NWPA, which expressly provides for the judicial review of environmental assessments: "The issuance of any environmental assessment under this paragraph shall be considered to be a final agency action subject to judicial review in accordance with the provisions of chapter 7 of Title 5 and section 10139 of this title." 42 U.S.C. § 10132(b)(1)(E). NPPD can identify no provision of the NWPA governing the issuance of the

Standard Contract that calls for "specific statutory review" of the type described in Watkins and contemplated by 42 U.S.C. § 10132(b)(1)(E). Further, and as discussed above, NPPD can identify no provision of the NWPA that requires DOE to begin accepting fuel on a particular date (outside the context of an enforceable contract with a nuclear power owner or generator that contains terms requiring performance by a particular date) and, therefore, can identify no "final decision or action" or "failure . . . to take action" within the meaning of Section 119(a)(1)(A) & (B) of the NWPA, 42 U.S.C. § 10139(a)(1)(A) & (B), that would warrant specific statutory review. As a result, there is no basis upon which to conclude that Congress specifically authorized the circuit courts of appeal to review of DOE's interpretation of the "Unavoidable Delays" clause, or any other provision, of the Standard Contract, beyond the 180-day period following its promulgation in 1983.

## III. THE PETITIONERS IN *NORTHERN STATES* HAD ANOTHER ADEQUATE REMEDY IN COURT FOR THE RELIEF THEY OBTAINED

On page 26 of its brief, NPPD contends that, even if specific statutory review were not available, DOE's interpretation of the Standard Contract constituted "final agency action for which there is no other adequate remedy in a court" within the meaning of Section 10(c) of the APA, 5 U.S.C. § 704. NPPD asserts that this limitation on the APA's waiver of sovereign immunity is inapplicable because this Court – the potential source of the other adequate remedy – "could not have entertained, nor grant[ed] any remedy for, the petitioners' claim."

This argument is flawed because it again mistakes the "prospective equitable relief" (in the form of a petition for a writ of mandamus) that the petitioners sought but did not receive as part of the remedy that the D.C. Circuit actually granted. Whether the United States waived its sovereign immunity with respect to the relief that the petitioners sought is irrelevant. The only

necessary question in considering the validity of the D.C. Circuit's writ of mandamus in light of its implication of issues of sovereign immunity is whether the United States expressly consented to the relief that the D.C. Circuit actually afforded.

Viewed from this perspective, there is no doubt that the relief that the petitioners obtained in Northern States I – the right to be free from an argument by the United States that its nonperformance under the Standard Contract was excused by the "Unavoidable Delays" clause – could have sought in the context of an action for damages in the Court of Federal Claims. Although NPPD suggests on page 27 of its brief, citing Roberts v. United States, 242 F.2d 1065, 1068 (Fed. Cir. 2001), and Megapulse, 672 F.3d at 971, that forcing the Northern States petitioners to wait until the time for performance came due would "trump a specific grant of jurisdiction" and cause them to "forfeit a statutory right to specific relief," the discussion in the preceding section makes clear that they, in fact, had no such "specific" avenue of relief available to them in the first instance, particularly in light of their failure to attempt to challenge DOE's contract terms when they were originally promulgated.

Further, even if a suit under the Tucker Act were more time-consuming than a mandamus action, there is no reason why an action for damages is not an adequate remedy for vindication of the utilities' right to be free of a interpretation of the Standard Contract espoused by the Government. Indeed, actions for breach of contract are the typical manner in which disputes over the proper interpretation of a contract are resolved. See, e.g., Bowen v. Massachusetts, 487 U.S. 879, 925 (1988) (Scalia, J., dissenting) ("[E]ven though a plaintiff may often prefer a

judicial order enjoining a harmful act or omission before it occurs, damages after the fact are considered an 'adequate remedy' in all but the most extraordinary circumstances.").[3]

Notably, in an action for breach of contract, the utilities would remain free to argue, if the United States interposed a defense based upon the "Unavoidable Delays" clause, that the Government's interpretation of this provision is inconsistent with the NWPA and should therefore be rejected. Indeed, this Court, where appropriate, interprets provisions of contracts authorized by statute through reference to the legislation that authorized the contract in the first instance. See, e.g., Gevyn Constr. Corp. v. United States, 225 Ct. Cl. 580, 583 (1980) (contract provisions should be interpreted by reference to implementing statute); Cuyahoga Metropolitan Housing Auth. v. United States, 57 Fed. Cl. 751, 761 (2003) ("the contracts here had their source in legislation passed by the Congress, requiring the court to consider that legislation in construing the contracts"). There is no reason why litigation concerning the Standard Contract should be treated differently, or why the applicability of a potentially available defense to a claim for breach of contract could not have been litigated in its most natural setting: a claim for breach of contract.

## IV. THE FEDERAL CIRCUIT'S DECISIONS DO NOT PRECLUDE ENTERTAINMENT OF THE "UNAVOIDABLE DELAY" DEFENSE

As a final matter, NPPD suggests that the issues of collateral attack and sovereign immunity are of solely academic importance because the United States Court of Appeals for the Federal Circuit has already conclusively determined that DOE has breached every utility's

[3] This conclusion is confirmed by the fact that Northern States Power Company, the lead petitioner in the case in which mandamus relief was sought, is one of the utilities that has asserted a claim in this Court for damages. Northern States Power Company v. United States, No. 98-484C (Fed. Cl. docketed June 8, 1998).

Standard Contract and that its determinations are binding upon this Court. NPPD Br. 28. Its arguments are misguided.

First, to the extent that NPPD suggests that the determination in Maine Yankee Atomic Power Co. v. United States, 225 F.3d 1336 (Fed. Cir. 2000), prevents consideration of the issue of breach in this case, it is incorrect. Most fundamentally, the statement in Maine Yankee that the breach "involved all the utilities that had signed the contract" does not mean, and certainly does not constitute a holding that, DOE breached the Standard Contract in this case. Moreover, the statement came in the context of a litigation in which the Government was precluded, via a writ of mandamus, from availing itself of a potentially meritorious defense that is the subject of the Court's current inquiry. Particularly where, as here, the Government has repeatedly sought but been denied consolidation of these cases and where the plaintiffs have uniformly sought individual resolution of their own cases, there is no basis – certainly no basis that NPPD has identified – for applying some type of stare decisis effect to appellate court decisions that did not involve consideration of the legal arguments raised in this case. See, e.g., Tesoro Hawaii Corp. v. United States, 405 F.3d 1339, 1346 (Fed. Cir. 2005) (finding that contract clause was legal and that Government did not breach contract, even though Federal Circuit, in prior decision in similar case with same contract clause where liability had not been contested, affirmed award of damages for contract breach); Beacon Oil Co. v. O'Leary, 71 F.3d 391, 395 (Fed. Cir. 1995) (reversing board's finding that appellant was bound by prior no-breach ruling in related case, finding that appellant had raised new legal theory not raised in related case and that "[s]tare decisis applies only to legal issues that were actually decided in a prior action").

Second, NPPD's reliance upon Northern States Power Co. v. United States, 224 F.3d 1361 (Fed. Cir. 2000) ("Northern States III"), is equally misplaced and, given the procedural posture of the case and the familiarity of NPPD's counsel with this case and this particular issue, somewhat mystifying. Although on page 29 of its brief NPPD has accurately quoted language from the Federal Circuit's decision in Northern States III, 224 F. 3d at 1367, that decision contains a typographical error, the circumstances surrounding which we discussed in detail in the supplemental brief that we filed on February 24, 2006. In quoting from the Federal Circuit's decision in Northern States III, NPPD asserts that the appellate court, referencing its opinion in Maine Yankee Atomic Power Co. v. United States, 225 F.3d 1336 (Fed. Cir. 2000), stated that the "unavoidable delays provision" deals only with delays arising after performance under the Standard Contract has begun. NPPD Brief, at 29 (July 12, 2006). However, as we discussed in our February 24, 2006 filing, the Federal Circuit's use of the word "unavoidable" in this sentence in Northern States III, rather than "avoidable," was clearly an error, as evidenced by the context of the paragraph in which it was included, and given that the only issue on appeal in the Northern States and Maine Yankee cases was the applicability of the avoidable delays clause to the circumstances of those cases.

Specifically, in Maine Yankee Atomic Power Co. v United States, 225 F.3d 1336 (Fed. Cir. 2000), the Federal Circuit examined whether the Government could rely upon Article IX.B of the Standard Contract, the avoidable delays clause, to avoid liability for failing to begin acceptance of SNF in 1998. Id. at 1341. The Federal Circuit in Maine Yankee concluded that the avoidable delays clause only applied to delays that occurred after contract performance began and, thus, could not excuse DOE from liability for delay in the commencement of SNF

acceptance. Id. That same day, the Federal Circuit issued its decision in Northern States Power Co. v. United States, 224 F.3d 1361 (Fed. Cir. 2000), in which we had advanced precisely the same avoidable delay position as in Maine Yankee. In rejecting the Government's argument, the Federal Circuit in Northern States expressly referred to its holding in Maine Yankee concerning the avoidable delays clause, but inadvertently used the words "unavoidable delays clause" rather than the avoidable delays clause when referencing the issue that Maine Yankee had decided, as follows:

> On the merits, our opinion in Maine Yankee fully explains why we have concluded that the utilities may maintain their damage suit, and we need not repeat that discussion here. In brief, we hold that the unavoidable delays provision deals with delays arising after performance of the contract has begun, and does not bar a suit seeking damages for the government's failure to begin performance at all by the statutory and contractual deadline of January 31, 1998.

Northern States, 224 F.3d at 1367 (emphasis added). Yet, the issue of the scope and applicability of the unavoidable delays clause was not briefed in either the Maine Yankee or Northern States appeals at the Federal Circuit, and the Maine Yankee appellate court did not purport to rule upon the scope of the unavoidable delays clause. Instead, the parties' briefs in both Maine Yankee and Northern States focused upon the trial court's determination regarding the scope of the avoidable delays clause, and the only issue decided in Maine Yankee, to which the Northern States decision referred, was the scope of the avoidable delays clause.[4]

---

[4] In the Northern States opinion, the Federal Circuit also stated that "in our Maine Yankee opinion we pointed out that it was unclear whether the amount the company had paid for electricity generated before April 17, 1983 could be equitably adjusted at all under the unavoidable delays clause." Northern States, 224 F.3d at 1367 (emphasis added). However, in Maine Yankee, the Federal Circuit discussed that issue in connection with the avoidable delays (continued...)

Consequently, neither the decision in Maine Yankee nor the decision in Northern States could have addressed the argument that, pursuant to Article IX.A of the Standard Contract (rather than the avoidable delay provision in Article IX.B), the Government is excused from liability for delays in meeting its contractual obligations because of events beyond the control of DOE. NPPD's attempt to convert a typographical error into an unassailable and preclusive determination of an appellate court should not be permitted.

Third, NPPD suggests, as it has previously, that the Federal Circuit's analysis of the avoidable delays clause in Maine Yankee and Northern States should apply to the unavoidable delays clause. It believes that, because the Federal Circuit found that the language in the avoidable delays clause regarding "any delay in the delivery, acceptance or transport" of SNF applies only to delays that occur after SNF acceptance begins, the language in the unavoidable delays clause regarding "delay in scheduled delivery, acceptance or transport" of SNF should be similarly interpreted. NPPD Brief, at 29 (July 12, 2006). In making this argument, NPPD has eliminated the very first sentence of the unavoidable delays clause: "Neither the Government nor the Purchaser shall be liable under this contract for damages caused by failure to perform its obligations hereunder, if such failure arises out of causes beyond the control and without the fault or negligence of the party failing to perform." 10 C.F.R. § 961.11, Art. IX.A. Contrary to NPPD's argument, this provision does not contain any language limiting its applicability to situations in which DOE has already started SNF acceptance. To the contrary, it expressly

---

[4](...continued)
clause, not the unavoidable delays clause. Maine Yankee, 225 F.3d at 1342. This error in Northern States further evidences that the Federal Circuit's reference in Northern States to the "unavoidable delays" clause was actually intended to refer to the avoidable delays clause.

applies to DOE's "failure to perform." Id. In Maine Yankee, the Federal Circuit held that DOE's delay here constituted a "failure to perform its contractual obligations." Maine Yankee, 225 F.3d at 1342. Although the remainder of the unavoidable delays clause in Article IX.A provides specific examples of unavoidable delays, those examples do not limit the broad language of the first sentence of the unavoidable delays clause. NPPD's argument that the unavoidable delays clause is as limited as the avoidable delays clause is unsupported by the actual language of the unavoidable delays clause and, in fact, requires the Court to add restrictive language to the clause that is not otherwise there. NPPD's contract interpretation directly conflicts with standard rules of contract interpretation. See, e.g., First Nationwide Bank v. United States,48 Fed. Cl. 248, 262-63 (2000) (when parties have carefully negotiated a contract, court will not infer contractual terms from silence).

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director

s/ Heide L. Herrmann
HEIDE L. HERRMANN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 514-4325
Fax: (202) 307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

ANDREW P. AVERBACH
Trial Attorney
U.S. Department of Justice
Washington, D.C. 20530

July 31, 2006

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 31st day of July, 2006, a copy of foregoing “DEFENDANT’S RESPONSE TO PLAINTIFF’S BRIEF DATED JULY 12, 2006” was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Harold D. Lester, Jr.