**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
(Electronically Filed on July 31, 2006)

| | | |
|---|---|---|
| NEBRASKA PUBLIC POWER DISTRICT,<br><br>Plaintiff,<br><br>v.<br><br>UNITED STATES,<br><br>Defendant. | ) | No. 01-116C<br>(Judge Allegra) |

**REPLY BRIEF OF PLAINTIFF NEBRASKA PUBLIC POWER DISTRICT IN RESPONSE TO THE COURT'S ORDER OF JUNE 2, 2006**

Alex D. Tomaszczuk
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1650 Tysons Boulevard
McLean, Virginia 22102
Tel: (703) 770-7940
Fax: (703) 770-7901

*Counsel of Record for Plaintiff Nebraska Public Power District*

*Of Counsel:*

Jay E. Silberg
PILLSBURY WINTHROP
SHAW PITTMAN LLP
2300 N Street, N.W.
Washington, D.C. 20037
Tel: (202) 663-8000

Walter F. Zenner
Daniel S. Herzfeld
Jack Y. Chu
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1650 Tysons Boulevard
McLean, Virginia 22102
Tel: (703) 770-7900

Dated: July 31, 2006

# TABLE OF CONTENTS


TABLE OF AUTHORITIES ........ iii

SUMMARY OF ARGUMENT ........ 1

ARGUMENT ........ 3

I. THE GOVERNMENT'S COLLATERAL ATTACK ON THE D.C. CIRCUIT'S MANDAMUS ORDER IN *NORTHERN STATES I* FAILS BECAUSE IT PROCEEDS ON THE FATALLY ERRONEOUS ASSUMPTION THAT THE ORDER ADJUDICATED A CONTRACT CLAIM, NOT A STATUTORY CLAIM ........ 3

A. The Government Erroneously Assumes that the D.C. Circuit Adjudicated a Contract Claim ........ 3

B. In Issuing Its Limited Mandamus Order, the D.C. Circuit Adjudicated a Statutory Claim Arising Under the NWPA, Not a Contract Claim Arising Under the Standard Contract ........ 4

1. Under *Roberts* and *Megapulse*, the Questions of Jurisdiction and Sovereign Immunity Depend on the Ultimate Source of the Claimant's Rights, Not the Mere Presence of a Contract ........ 5

2. In *Indiana Michigan* and *Northern States I*, the Ultimate Source of the Petitioners' Claims and the Relief Granted Was the NWPA, Not the Standard Contract ........ 6

3. The Statutory Basis for the Mandamus Order Is Not Affected by Any Secondary Consequences It May Have Had for the Performance of the Standard Contract ........ 9

C. Because the D.C. Circuit in *Northern States I* Adjudicated a Statutory Claim, Not a Contract Claim, *Christopher Village* Is Irrelevant and the Collateral Attack Fails ........ 11

1. *Christopher Village* Is Irrelevant Because the Fifth Circuit Adjudicated an Acknowledged Contract Claim There ........ 11

2. *Coggeshall* Is Irrelevant Because It Was Plainly and Exclusively a Contract Case ........ 12

II. BECAUSE THE D.C. CIRCUIT ISSUED ITS LIMITED MANDAMUS ORDER IN *NORTHERN STATES I* TO ENFORCE A STATUTORY CLAIM ARISING UNDER THE NWPA, NOT A CONTRACT CLAIM ARISING UNDER THE STANDARD CONTRACT, IT HAD JURISDICTION UNDER THE NWPA AND A WAIVER OF SOVEREIGN IMMUNITY UNDER THE APA ....................13

A. The Government Acknowledges that the NWPA and the APA Provide the D.C. Circuit with Jurisdiction Over a "Wide Swath" of Cases Arising Under the NWPA ....................13

B. The Government Has Identified No Exception that Would Have Withdrawn the APA's Waiver of Sovereign Immunity with Respect to the Limited Mandamus Order in *Northern States I* ....................14

1. The "Money Damages" Limitation of APA § 702 Did Not Deprive the D.C. Circuit of Jurisdiction ....................14

2. The "Adequate Remedy" Limitation of APA § 704 Did Not Deprive the D.C. Circuit of Jurisdiction ....................14

3. The Government's Statute-of-Limitations Defense Has Already Failed ....................17

III. THE GOVERNMENT'S COLLATERAL ATTACK IS MOOT BECAUSE IT CANNOT OVERCOME THE FEDERAL CIRCUIT'S DECISIONS IN *MAINE YANKEE* AND *NORTHERN STATES III*, WHICH INDEPENDENTLY BIND THIS COURT AND PRECLUDE IT FROM ENTERTAINING ANY "UNAVOIDABLE DELAY" DEFENSE ....................18

CONCLUSION....................19

# TABLE OF AUTHORITIES

**Cases**

*Alabama Power Co. v. U.S. Dep't of Energy*,
307 F.3d 1300 (11th Cir. 2002) ....................18

*Bowen v. Massachusetts*,
487 U.S. 879 (1988)....................10

*Christopher Village, L.P. v. United States*,
360 F.3d 1319 (Fed. Cir. 2004)....................2, 3, 11, 12

*Coggeshall Development Corp. v. Diamond*,
884 F.2d 1 (1st Cir. 1989)....................2, 12

*Consolidated Edison Co. of New York, Inc. v. United States*,
247 F.3d 1378 (Fed. Cir. 2001)....................2, 15

*Indiana Michigan Power Co. v. Dept' of Energy*,
88 F.3d 1272 (1996)....................1, 6, 7

*Maine Yankee Atomic Power Co. v. United States*,
225 F.3d 1336 (Fed. Cir. 2000)....................2, 18, 19

*Megapulse, Inc. v. Lewis*,
672 F.2d 959 (D.C. Cir. 1982)....................2, 5, 6, 10, 19

*Norby Lumber Co. v. United States*,
46 Fed. Cl. 47 (2000)....................6

*Northern States Power Co. v. U.S. Dep't of Energy*,
128 F.3d 754 (D.C. Cir. 1997) ("*Northern States I*"),
*cert. denied*, 525 U. S. 1016 (1998).................... *passim*

*Northern States Power Co. v. U.S. Dep't of Energy*,
1998 WL 276581 (D.C. Cir. May 5, 1998) ("*Northern States II*")....................9, 10

*Northern States Power Co. v. United States*,
224 F.3d 1361 (Fed. Cir. 2000) ("*Northern States III*")....................2, 15, 16, 18, 19

*Roberts v. United States*,
242 F.3d 1065 (Fed. Cir. 2001)....................2, 5, 19

*Sharp v. Weinberger*,
798 F.2d 1521 (D.C. Cir. 1986)....................12

*Spectrum Leasing Corp. v. United States*,
764 F.2d 891 (D.C. Cir. 1985)....................12

*Transohio Sav. Bank v. Office of Thrift Supervision*,
967 F.2d 598 (D.C. Cir. 1992)....................6

*Yankee Atomic Electric Co. v. United States*,
42 Fed. Cl. 223 (1998)....................18

**Statutes and Regulations**

5 U.S.C. § 702.................... 2, 11-12, 13, 14

5 U.S.C. § 704....................2, 8, 13, 14, 15, 16

28 U.S. C. § 1491 ("Tucker Act") ....................5, 8, 9, 11, 12

42 U.S.C. § 10139 (NWPA § 119) ....................2, 7, 13, 15, 17

42 U.S.C. § 10222 (NWPA § 302) ....................2, 7, 8

59 Fed. Reg. 27,007 (May 25, 1994)....................7

60 Fed. Reg. 21,793 (May 3, 1995)....................7

**Miscellaneous**

Gregory C. Sisk, *The Tapestry Unravels: Statutory Waivers of Sovereign Immunity and Money Claims Against the United States*, 71 Geo. Wash. L. Rev. 602 (2003) ....................10, 12

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
(Electronically Filed on July 31, 2006)

| | | |
|---|---|---|
| NEBRASKA PUBLIC POWER DISTRICT, | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 01-116C (Judge Allegra) |
| UNITED STATES, | ) | |
| Defendant. | ) | |

**REPLY BRIEF OF PLAINTIFF NEBRASKA PUBLIC POWER DISTRICT IN RESPONSE TO THE COURT'S ORDER OF JUNE 2, 2006**

The government's opening supplemental brief on sovereign immunity provides no basis for this Court (or the government) to disregard the *res judicata* effect of the judgment and mandamus order issued by the D.C. Circuit in *Indiana Michigan* and *Northern States I*, respectively.

**SUMMARY OF ARGUMENT**

Distilled to its essence, the government argues in its opening brief that the sovereign immunity exception to the doctrine of *res judicata* permits a collateral attack in this Court on the mandamus order of the D.C. Circuit in *Northern States I*, because the case was one "concerning the performance of the Standard Contract" (*see* Gov't Br. at 9) and Congress has not waived sovereign immunity for the D.C. Circuit to hear contract cases. The argument suffers from a number of flaws, but the overriding one is the government's mere assumption, as ubiquitous as it is unsupported, that because the case was one "concerning" the Standard Contract, it was also one "arising under" the Standard Contract, thereby placing it beyond the reach of the

Administrative Procedure Act's ("APA's") waiver of sovereign immunity and, hence, beyond the jurisdiction of the D.C. Circuit.

As a matter of law, that assumption is incorrect.

As *Roberts* and *Megapulse* instruct, the question of jurisdiction depends on the ultimate source of a claimant's rights (as well as the type of relief sought), not simply whether the facts of the case somehow involve a contract. Under this test, *Northern States I* was not a contract case. As the D.C. Circuit itself expressly determined, the claim and mandamus order in *Northern States I* arose under the Nuclear Waste Policy Act ("NWPA"), and not the Standard Contract. Thus, the court had:

(i) a claim before it for "relief other than money damages" for violation of a substantive right under NWPA § 302 (a statute that makes no provision for money damages);

(ii) subject matter jurisdiction over the claim under NWPA § 119; and

(iii) a waiver of sovereign immunity under APA § 702 and the "specific statutory review" directive of APA § 704 (if not under NWPA § 119 itself).

*See* NPPD Br. at 10-13 (discussing the three requisite elements).

As *Roberts* and *Megapulse* further instruct, these conclusions are not affected by the fact that, in deciding *Northern States I,* the D.C. Circuit made reference to the Standard Contract or the fact that its decision might have had secondary consequences in the future for the parties to the Standard Contract.

Accordingly, substantially all of the government's brief, including its reliance principally on *Christopher Village*, *Coggeshall*, and *Consolidated Edison*, is irrelevant.

Moreover, nothing in the government's brief overcomes the independently dispositive fact that the Federal Circuit, in *Maine Yankee* and *Northern States III,* has already determined

that DOE's subsequent failure to meet the 1998 deadline was not a "delay" within the meaning of the Delays clause of the Standard Contract and that DOE, therefore, breached the Standard Contract when it failed to meet the deadline.

## ARGUMENT

### I. THE GOVERNMENT'S COLLATERAL ATTACK ON THE D.C. CIRCUIT'S MANDAMUS ORDER IN *NORTHERN STATES I* FAILS BECAUSE IT PROCEEDS ON THE FATALLY ERRONEOUS ASSUMPTION THAT THE ORDER ADJUDICATED A CONTRACT CLAIM, NOT A STATUTORY CLAIM

#### A. The Government Erroneously Assumes that the D.C. Circuit Adjudicated a Contract Claim

Relying on *Christopher Village, L.P. v. United States*, 360 F.3d 1319 (Fed. Cir. 2004), the government argues that it may collaterally attack the D.C. Circuit's mandamus order in *Northern States Power Co. v. U.S. Dep't of Energy*, 128 F.3d 754, 757 (D.C. Cir. 1997) ("*Northern States I")*, *cert. denied*, 525 U.S. 1016 (1998), because the D.C. Circuit "overstepped" its jurisdiction in a way that implicates the "sovereign immunity" exception to the doctrine of *res judicata* (which would otherwise preclude such an attack).

According to the government, the D.C. Circuit did so by adjudicating a case "concerning performance of the Standard Contract," and such cases are beyond the jurisdiction of the D.C. Circuit. *See, e.g.*, Gov't Br. at 9 ("the category of cases arising under the NWPA with respect to which the United States has consented to be sued in the courts of appeals (through an action brought under the APA) does not include those concerning performance of the Standard Contract"); *id.* (dispute here is one "arising out of [the] proper interpretation and application of the "Unavoidable Delays" clause in the Standard Contract"); *id.* at 4 ("the D.C. Circuit has . . . usurped the sole jurisdiction of the Court of Federal Claims to adjudicate claims for breach of

contract against the United States"); *id.* at 5 (arguing that no waiver of sovereign immunity supported the D.C. Circuit's use of mandamus to "adjudicate issues related to performance of the Standard Contract") (capitalization modified); *see also* Gov't PSEG Br. at 56 (arguing that when the D.C. Circuit issued the writ of mandamus, it "overstepped" its jurisdiction by "evaluating . . . DOE's compliance with the terms of its contracts").

Although this assertion that *Northern States I* was a contract case is the linchpin of the government's entire argument, the government makes no attempt to substantiate it. More importantly, even leaving aside the question of how the D.C. Circuit possibly could have evaluated the terms of DOE's compliance with the Standard Contract several years before 1998 (the statutory and contractual start date for performance) even arrived, the government's assertion is simply incorrect.

### B. In Issuing Its Limited Mandamus Order, the D.C. Circuit Adjudicated a Statutory Claim Arising Under the NWPA, Not a Contract Claim Arising Under the Standard Contract

The key issue in determining whether the D.C. Circuit possessed jurisdiction in *Northern States I* is the source of the petitioners' claim. Contrary to the government's facile assertion, the ultimate source of the petitioners' right to mandamus relief in *Northern States I* was the NWPA, not the Standard Contract. The mere fact that the case concerned the Standard Contract or even the fact that the court's decision had potential implications for the Standard Contract did not trump the petitioners' statutory rights and remedies under the NWPA and APA and convert the case into a contract case (any more so than the fact that a contract case might also concern the NWPA could somehow convert it into a statutory case).

### 1. Under *Roberts* and *Megapulse*, the Questions of Jurisdiction and Sovereign Immunity Depend on the Ultimate Source of the Claimant's Rights, Not the Mere Presence of a Contract

As the Federal Circuit has declared, "[t]he answer to the sovereign immunity and jurisdiction questions depends not simply on whether a case involves contract issues, but on whether, *despite the presence of a contract*, plaintiffs' claims are founded *only* on a contract, or whether they stem from a statute or the Constitution." *Roberts v. United States*, 242 F.3d 1065, 1068-69 (Fed. Cir. 2001) (emphasis in original) (citations and quotation omitted).

In *Megapulse*, the D.C. Circuit similarly recognized that an action does not arise under a contract simply because the court may need to refer to a contract, or even resolve a contract issue, to decide the case. *See Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982) ("[i]t is not at all unusual for a court to find it necessary in the course of deciding a dispute over which it does have jurisdiction to decide an issue which would be outside its jurisdiction if raised directly"). As the court there further observed, by elevating the Tucker Act to too exalted a pedestal, a court runs the risk of denying claimants rights and remedies to which they are legitimately entitled:

> Although it is important on the one hand to preserve the Tucker Act's limited and conditioned waiver of sovereign immunity in *contract* actions, we must not do so in terms so broad as to deny a court jurisdiction to consider a claim that is validly based on grounds *other than a contractual relationship* with the government.

672 F.2d at 968 (emphasis added).

Simply stated, the rule established by *Roberts* and *Megapulse* is that if the ultimate source of a claimant's rights depends not on a contract but on a statute, then the action arises under the statute. *See Roberts*, 242 F.3d at 1068-69 (quoted above); *Megapulse,* 672 F.2d at 969-70 ("we do not accept the Government's argument that the mere existence of such contract-

related issues must convert this action to one based on the contract"); *see also Transohio Sav. Bank v. Office of Thrift Supervision*, 967 F.2d 598, 609-11 (D.C. Cir. 1992) (discussing *Megapulse* in connection with OTS's argument that Transohio's case was purely a "contract" case); *Norby Lumber Co. v. United States*, 46 Fed. Cl. 47, 51 (2000) (Miller, J.) ("[w]hether an action is founded upon a contract is determined by looking to the source of the rights upon which a plaintiff bases its claims and the nature of the relief sought") (citing *Megapulse*, 672 F.2d at 968).

Consequently, claimants do not forfeit rights and remedies properly available and due under other provisions of law merely because they might also have other rights and remedies available under a contract, either then or possibly in the future.

### 2. In *Indiana Michigan* and *Northern States I*, the Ultimate Source of the Petitioners' Claims and the Relief Granted Was the NWPA, Not the Standard Contract

As applied to *Indiana Michigan* and *Northern States I*, the foregoing rules lead ineluctably to the conclusion that the D.C. Circuit did not "overstep" its jurisdiction under the NWPA or the APA.

This Court need not take our word alone for this. As the D.C. Circuit itself explained, it issued its limited mandamus in *Northern States I* to enforce only a statutory duty owed to the petitioners there, and it carefully refrained from enforcing any of their contractual rights, such as by ordering DOE to specifically perform the Standard Contract.

The factual background and procedural history of *Northern States I*, as summarized below, confirm this point.

In the NWPA, Congress expressly mandated that the Standard Contract require that DOE, "beginning not later than January 31, 1998, will dispose of the high-level radioactive waste or

spent nuclear fuel as provided in this subchapter." NWPA § 302 (42 U.S.C. § 10222(a)(5)). In 1994, a full decade after the utilities signed the Standard Contract, DOE addressed its impending failure to meet its 1998 obligation by announcing that it had no absolute statutory or contractual obligation to commence performing then. *See* 59 Fed. Reg. 27,007, 27,008 (May 25, 1994) ("Notice of Inquiry"). One year later DOE issued a "final" pronouncement in which it again took the position that it had no absolute statutory or contractual obligation to meet the 1998 deadline. *See* 60 Fed. Reg. 21,793 (May 3, 1995) (the "Final Interpretation").

A large group of utilities, states, and state agencies promptly challenged DOE's "Final Interpretation." They did so by petitioning the D.C. Circuit for review pursuant to NWPA § 119 (42 U.S.C. § 10139), alleging that DOE's interpretation violated the statutory requirements of NWPA § 302. *See generally Indiana Michigan Power Co. v. Dep't of Energy*, 88 F.3d 1272, 1273-74 (D.C. Cir. 1996) ("*Indiana Michigan*"). The D.C. Circuit accepted jurisdiction under § 119, reviewed DOE's Final Interpretation of its obligations under NWPA § 302(a)(5)(B), and promptly rejected that interpretation, holding, *inter alia*, that DOE's interpretation of the Standard Contract was contrary to the plain language of the NWPA. *Indiana Mich.*, 88 F.3d at 1277. Consequently, the court vacated DOE's Final Interpretation and remanded the matter to DOE for further action not inconsistent with its decision. *Id.* DOE soon responded by sending letters to the utilities advising them that it would not be able to begin accepting spent fuel by the 1998 deadline. *See Northern States I*, 128 F.3d at 757. In mid-1997, DOE further advised the utilities that it considered its inability to meet the deadline to be an "unavoidable delay" cognizable under the Delays clause of the Standard Contracts. *Id.*

Nuclear utilities, states, and state agencies again petitioned the D.C. Circuit for review of DOE's actions, again alleging that DOE's interpretation violated the statutory requirements of

NWPA § 302 and seeking equitable relief, this time including a writ of mandamus. *See Northern States I*, 128 F.3d at 756-58. Applying the traditional discretionary standards for mandamus relief (and not the "adequate remedy" limitation of APA § 704, as the government's opening brief might imply (*see* Gov't Br. at 10)), the court denied a broad writ of mandamus on the ground that the contract provided "a potentially adequate remedy if DOE fails to fulfill its obligations by the deadline." *Id.* at 755.

To prevent DOE from circumventing the court's prior interpretation of the NWPA, however, the D.C. Circuit issued a limited writ of mandamus prohibiting DOE from adopting an interpretation of the Standard Contract that would violate its *statutory* duty to undertake an absolute and unconditional contractual obligation to begin disposing of spent fuel by the 1998 deadline. As the court stated, DOE's interpretation of the Standard Contract could not be a valid one, because "it would allow the Executive Branch to void an unequivocal obligation imposed by Congress," and DOE has no authority to do so. *Northern States I*, 128 F.2d at 760. Accordingly, the court held that "this [unavoidable delays] provision in the Standard Contract, insofar as it is applied to DOE's failure to perform by 1998, is inconsistent with DOE's *statutory* obligation to assume an *unconditional* duty." *Id.* (emphasis added).

In a subsequent unpublished decision, the court itself described the basis for its mandamus order as statutory, fully aware of and carefully drawing a distinction between the limits of its jurisdiction under the NWPA and APA, and that of the Court of Federal Claims under the Tucker Act:

> The DOE petitions for rehearing, suggesting that this Court has erroneously designated itself as the proper forum for adjudication of disputes arising under the Standard Contract. . . . [W]e did not; we merely prohibited the DOE from implementing an *interpretation* that would place it *in violation of its duty under the NWPA* to assume an unconditional obligation to begin disposal by January 31, 1998. The *statutory* duty to include an unconditional obligation is *independent* of any rights under the *contract*. *The Tucker Act does not prevent us from exercising jurisdiction over an action to enforce compliance with the NWPA.*

*See Northern States Power Co. v. U.S. Dep't of Energy*, 1998 WL 276581, at *1-2 (D.C. Cir. May 5, 1998) (unpublished) ("*Northern States II*") (emphasis added).

In short, the D.C. Circuit issued the limited mandamus order to preclude DOE from violating its *statutory* duty to undertake an absolute contractual obligation to begin performing by the deadline. Thus, it did not "overstep" its jurisdiction.

### 3. The Statutory Basis for the Mandamus Order Is Not Affected by Any Secondary Consequences It May Have Had for the Performance of the Standard Contract

The government contends that the D.C. Circuit "barred" the United States from relying in this Court on a substantive provision of the Standard Contract – that is, the Unavoidable Delays clause – thereby "eliminat[ing] an essential term" from the contract and creating a new and different contract. *See* Gov't Br. at 5 & n.1. Simply put, these contentions are wrong.

In fact, the D.C. Circuit did not eliminate the Unavoidable Delays clause; it only barred DOE from circumventing its statutory duties under the NWPA by adopting its particular, subjective interpretation of the clause "insofar as it is applied to DOE's failure to perform by 1998 . . . ." *Northern States I,* 128 F.2d at 760. The interpretation in question, of course, was DOE's Final Interpretation (and subsequent communications consistent with it), which would have relieved DOE of the absolute, unconditional obligation to meet the 1998 deadline (an obligation that the NWPA had commanded DOE to undertake in the Standard Contract). Hence,

the clause itself remains intact in the contract, and it could yet come into play in appropriate circumstances – specifically, if and when DOE eventually commences performance and subsequently experiences a "delay" legitimately within the meaning of the clause.

More generally, the mere possibility or even the occurrence of some spillover effects of the D.C. Circuit's mandamus order for DOE's performance of the Standard Contract was not enough to transform the claim into one arising under the contract or otherwise divest the D.C. Circuit of its jurisdiction. *See Megapulse*, 672 F.2d at 968. As the D.C. Circuit stated in *Northern States II*, "[t]he *statutory* duty to include an unconditional obligation is *independent* of any rights under the *contract*." *Northern States II*, 1998 WL 276581, at *2 (emphasis added). The courts cannot simply ignore those independent rights. As the *Megapulse* court put it in an analogous setting:

> [i]t is one thing to rely on the generally recognized rule that a plaintiff cannot maintain a contract action in either the district court or the Court of Claims seeking specific performance of a [government] contract. It is quite another to claim, as the Government does in this case, that an agency action may not be enjoined, *even if in clear violation of a specific statute*, simply because that same action might *also* amount to a breach of *contract.*

*Megapulse*, 672 F.2d at 971 (emphasis added); *see also* Gregory C. Sisk, *The Tapestry Unravels: Statutory Waivers of Sovereign Immunity and Money Claims Against the United States*, 71 Geo. Wash. L. Rev. 602, 691 (2003) [hereinafter "Sisk"] (criticizing the liberalizing rule of *Bowen v. Massachusetts*, 487 U.S. 879 (1988), but nonetheless arguing that non-monetary relief under the APA should include "all forms of prospective remedies, *including those that may have financial consequences for the government in the future*") (emphasis added).

### C. Because the D.C. Circuit in *Northern States I* Adjudicated a Statutory Claim, Not a Contract Claim, *Christopher Village* Is Irrelevant, and the Collateral Attack Fails

#### 1. *Christopher Village* Is Irrelevant Because the Fifth Circuit Adjudicated an Acknowledged Contract Claim There

Because the D.C. Circuit did not exceed its jurisdiction, the *Christopher Village* exception to the doctrine of *res judicata* (*see* Gov't Br. at 2-3) has no bearing on *Northern States I* or plaintiff NPPD's case here.

The government, of course, takes the contrary position, arguing that the limited mandamus order in *Northern States I* is "analogous to the 'predicate for a damages action . . . in the Court of Federal Claims'" that the Federal Circuit found so troublesome in *Christopher Village*. Gov't Br. at 4. This contention overlooks important differences between the two cases.

Unlike the D.C. Circuit in *Northern States I*, the Fifth Circuit in *Christopher Village* consciously and explicitly determined that the government had breached the contract there and remanded the case to the district court for entry of a declaratory judgment to that effect, expressly for the purpose of establishing a "predicate" for a subsequent damages suit by the plaintiffs in the Court of Federal Claims. *See Christopher Village*, 360 F.3d at 1324 ("the Fifth Circuit held that the request for a declaratory judgment still 'present[ed] a live dispute' because the appellants 'could use the declaration as a predicate for a damages action against HUD in the Court of Federal Claims'") (citation omitted). By doing so, the Fifth Circuit plainly exceeded its jurisdiction under the APA, whose "impliedly-forbidden-relief" provision withdraws the waiver of sovereign immunity, for both monetary and equitable relief, in cases within the contract jurisdiction of the Court of Federal Claims under the Tucker Act. *See* APA § 702(2) (discussed

in NPPD Br. at 14-20). As we discussed at length above, however, the D.C. Circuit in *Northern States I* did no such thing.

Moreover, the D.C. Circuit could not possibly have declared DOE in breach, not only because the petitioners in *Northern States I* did not allege breach, but also because the court heard and decided the mandamus case in 1997, before the 1998 deadline had even arrived and, therefore, before DOE had failed to timely commence performance.

Consequently, *Christopher Village* is irrelevant here.

### 2. ***Coggeshall*** **Is Irrelevant Because It Was Plainly and Exclusively a Contract Case**

For similar reasons, *Coggeshall Development Corp. v. Diamond*, 884 F.2d 1, 4 (1st Cir. 1989) (discussing use of mandamus in contract cases) (*see* Gov't Br. at 3), is also irrelevant. *Coggeshall* is a straightforward contract case standing for nothing more than the settled proposition that the Tucker Act "impliedly forbids" the remedy of specific performance against the government in contract cases. *See, e.g., Spectrum Leasing Corp. v. United States,* 764 F.2d 891 (D.C. Cir. 1985) (Tucker Act impliedly forbids the remedy of specific performance of government contracts and thereby deprived district court of jurisdiction over contract-based claim); *Sharp v. Weinberger*, 798 F.2d 1521 (D.C. Cir. 1986) (Scalia, J.) ("The waiver of sovereign immunity in the [APA] does not run to actions seeking declaratory relief or specific performance in contract cases, because the waiver is by its terms inapplicable if 'any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought,' and 5 U.S.C. § 702, and the Tucker Act and Little Tucker Act impliedly forbid such relief"); *see also generally* Sisk at 627-32 (Section III.A, "Contract Claims and the Bar on Specific Performance").

In short, the government's collateral attack rests entirely on the unsupported and erroneous assumption that in *Northern States I*, the D.C. Circuit adjudicated a contract claim. That assumption is false, and the attack fails.[1]

## II. BECAUSE THE D.C. CIRCUIT ISSUED ITS LIMITED MANDAMUS ORDER IN *NORTHERN STATES I* TO ENFORCE A STATUTORY CLAIM ARISING UNDER THE NWPA, NOT A CONTRACT CLAIM ARISING UNDER THE STANDARD CONTRACT, IT HAD JURISDICTION UNDER THE NWPA AND A WAIVER OF SOVEREIGN IMMUNITY UNDER THE APA

### A. The Government Acknowledges that the NWPA and the APA Provide the D.C. Circuit with Jurisdiction Over a "Wide Swath" of Cases Arising Under the NWPA

Our opening brief discusses at length the basis for the D.C. Circuit's jurisdiction, and the waiver of sovereign immunity, that underlay and supported its issuance of the mandamus order in *Northern States I*. *See generally* NPPD Br. at 10-28. As we discussed there, the D.C. Circuit had jurisdiction under NWPA § 119 and a waiver of sovereign immunity under APA § 702 and the "specific statutory review" provision of APA § 704 (if not under NWPA § 119 itself). Nothing in the government's brief derogates from that conclusion.

Indeed, the government agrees that the D.C. Circuit generally can take jurisdiction over, and that a waiver exists for, claims arising under the NWPA, as opposed to the Standard Contract. *See* Gov't Br. at 8 (citing NWPA § 119(a) and APA § 702). It is only because the government erroneously assumes that the claim and mandamus order in *Northern States I* arose under the Standard Contract that it contends that the D.C. Circuit overstepped its jurisdiction.

---

[1] The government professes not to take a position on the question of whether the appropriate forum for its collateral attack on the mandamus order is this Court or the D.C. Circuit. *See* Gov't Br. at 5 n.2. It appears to us that the government has already crossed that line and brought the attack in this Court.

For the reasons discussed above, the government's collateral attack fails based on that error alone.

Perpetuating its erroneous assumption, however, the government goes on to argue a number of subsidiary points. Because of their faulty premise, none of these points has merit. We address several of them in turn below.

### B. The Government Has Identified No Exception that Would Have Withdrawn the APA's Waiver of Sovereign Immunity with Respect to the Limited Mandamus Order in *Northern States I*

#### 1. The "Money Damages" Limitation of APA § 702 Did Not Deprive the D.C. Circuit of Jurisdiction

The government argues that the D.C. Circuit lacked jurisdiction because the APA's waiver of sovereign immunity does not extend to claims concerning performance of the Standard Contract, because such claims "effectively seek money damages." *See* Gov't Br. at 9.

We addressed this topic at length in our opening brief. *See* NPPD Br. at 13-14, 16, 20-28. To summarize that presentation, however, the government overlooks the fact that the petitioners in *Northern States I* sought only prospective non-monetary relief under the NWPA (not monetary relief under the Standard Contract); the NWPA is not a money-mandating statute; and the petitioners had no existing claim for damages at that point under the Standard Contract and, thus, no remedy at all that they could have pursued at that point at the Court of Federal Claims as an alternative to their statutory claim, had the law even required them to do that (which it did not).

#### 2. The "Adequate Remedy" Limitation of APA § 704 Did Not Deprive the D.C. Circuit of Jurisdiction

The government further argues that the D.C. Circuit lacked jurisdiction because the APA's waiver of sovereign immunity does not extend to claims concerning performance of the

Standard Contract, since an "adequate remedy" is available for such claims in an action for damages in the Court of Federal Claims. *See* Gov't Br. at 9.

Again, the government overlooks the actual source of the petitioners' rights in *Northern States I*, as a result of which it also overlooks the fact that the "adequate remedy" provision of APA § 704 does not apply to cases brought under "specific statutory review" provisions, such as NWPA § 119. *See* NPPD Br. at 20-23 (discussing "specific" versus "general" statutory review cases under APA § 704). This fact alone distinguishes *Northern States I* from *Consolidated Edison.* The government further overlooks all of the other reasons why the Court of Federal Claims could not have provided the *Northern States I* petitioners any remedy at all, let alone an adequate one. *See* NPPD Br. at 26-28.

Undeterred, the government intimates that the Federal Circuit may have invoked APA § 704 when it held in *Northern States Power Co. v. United States*, 224 F.3d 1361, 1366 (Fed. Cir. 2000) ("*Northern States III*"), that the proper forum for the utilities' "pre-performance damage suits" is the Court of Federal Claims. *See* Gov't Br. at 10. The government takes this statement wholly out of context, and not just because the petitioners in *Northern States I* were not seeking, and could not seek, damages. The Federal Circuit's point was that the Court of Federal Claims, *rather than the DOE contracting officer*, was the proper forum for pursuing claims for money damages arising in the "pre-performance" time frame – that is, claims arising as a result of and following DOE's breach of contract in 1998 but *before* such time as DOE ultimately commenced performance, following which time claims might arise and properly lend themselves to resolution by the DOE contracting officer. *See Northern States III*, 224 F.3d at 1366 ("the unavoidable delays provision deals with delays arising after performance of the contract has begun, and does not bar a suit seeking damages for the government's failure to

begin performance at all by the statutory and contractual deadline of January 31, 1998"). Thus, the Federal Circuit's decision in *Northern States III* has nothing to do with APA § 704.[2]

Finally, the government seems to suggest that the D.C. Circuit itself recognized in *Northern States I* that APA § 704 properly lodged jurisdiction over the petitioners' claims in the Court of Federal Claims, when it found it had no basis on which to conclude that a money damages remedy would not make the petitioners whole. The government misreads the D.C. Circuit's opinion. The D.C. Circuit's statement reflected only its weighing of the traditional factors for granting equitable relief, not any contemplation of the "adequate remedy" provision of APA § 704, a conclusion made clear by the absence of any citation at that point to APA § 704. In addition, the D.C. Circuit's statement reflected the fact that the petitioners had not yet made any claims for damages but were seeking to compel DOE's performance in the future to prevent such damages.

Even more importantly, in concluding that it knew of no reason why a damages remedy would not make the petitioners whole for any breach that DOE might commit, the D.C. Circuit undoubtedly counted on the fact that its limited mandamus order would preclude DOE from circumventing the will of Congress, imposing an unconditional obligation on DOE, by adopting an interpretation of the Standard Contract that would completely absolve DOE of that unconditional obligation.

---

[2] At the time that the Federal Circuit issued its decision in *Northern States III*, DOE was claiming that it would commence performance by 2010, twelve years beyond the statutory deadline. *See Northern States III*, 224 F.3d at 1364. In testimony to Congress delivered on July 19, 2006, DOE announced a new schedule to begin performance – a "best-achievable" schedule in which DOE would begin receiving spent nuclear fuel on March 31, 2017, almost two decades beyond the date set by Congress. Thus, the "pre-performance" time frame that the Federal Circuit had in mind will now extend even longer into the future.

### 3. The Government's Statute-of-Limitations Defense Has Already Failed

After acknowledging that the D.C. Circuit would have jurisdiction under the NWPA and APA to hear the "wide swath" of claims contemplated by NWPA § 119, the government drags a red herring across the path by offering the example of a claim that the petitioners in *Northern States I* did not make, and then arguing that such a claim would be barred by the 180-day statute of limitations in that section. *See* Gov't Br. at 8 (citing Eleventh Amendment cases involving federal waivers of the sovereign immunity of the States, which implicate federalism concerns not relevant under the NWPA or the Standard Contracts). If the government really means to press this defense (and that is not at all clear), it deserves to meet the same fate that befell it when the government presented it to the Eleventh Circuit in *Alabama Power Co. v. U.S. Dep't of Energy*, 307 F.3d 1300 (11th Cir. 2002), a case that arose under the NWPA.

Contrary to the government's implication, the petitioners in *Northern States I* did not challenge the terms and conditions of the Standard Contract, as DOE had promulgated it in 1983; rather, they challenged DOE's Final Interpretation in 1995 and subsequent actions by which DOE sought to circumvent its statutory duty to undertake an unconditional obligation to begin performance by the 1998 deadline.

Faced with a similar argument by DOE in *Alabama Power*, the court there reached a similar conclusion, holding that the action under review was not DOE's promulgation of the Standard Contract in 1983, but rather DOE's decision to tap into the Nuclear Waste Fund established by the NWPA to fund a settlement agreement under the Standard Contract with one utility at the expense of all the others. *Alabama Power*, 307 F.3d at 1311. Of note, the court did so despite any possible secondary consequences its decision might have on DOE's interpretation or performance of the Standard Contract.

## III. THE GOVERNMENT'S COLLATERAL ATTACK IS MOOT BECAUSE IT CANNOT OVERCOME THE FEDERAL CIRCUIT'S DECISIONS IN *MAINE YANKEE* AND *NORTHERN STATES III*, WHICH INDEPENDENTLY BIND THIS COURT AND PRECLUDE IT FROM ENTERTAINING ANY "UNAVOIDABLE DELAY" DEFENSE

As we noted in our opening brief, the government's collateral attack on the D.C. Circuit's limited mandamus order in *Northern States I* can have no practical consequences in light of the Federal Circuit's rulings in *Maine Yankee* and *Northern States III.* The government's opening brief does not change that fact one whit.

As we had noted, even assuming *arguendo* that the D.C. Circuit erred (which it did not), the Federal Circuit has already held that "'DOE has breached the contract'" by failing to commence performing the Standard Contracts by the 1998 deadline. *Maine Yankee Atomic Power Co. v. United States*, 225 F.3d 1336, 1340 (Fed. Cir. 2000), *aff'g and quoting Yankee Atomic Electric Co. v. United States*, 42 Fed. Cl. 223, 235 (1998) (Merow, J.). Indeed, the Federal Circuit concluded that DOE breached *every* utility's contract. *Maine Yankee,* 225 F.3d at 1341-42 ("[t]he breach involved *all the utilities* that had signed the contract – *the entire nuclear electric industry*") (emphasis added).

No less significantly, in *Northern States III*, the Federal Circuit went further and expressly held that "the unavoidable delays provision deals with delays arising after performance of the contract has begun, and does not bar a suit seeking damages for the government's failure to begin performance at all by the statutory and contractual deadline of January 31, 1998." *Id.*, 224 F.3d at 1367. As effectively as the D.C. Circuit's mandamus order does, *Northern States III* forecloses any "unavoidable delays" argument that the government might make here.

Hence, the government's collateral attack is pointless, other than as a ploy for delaying and disrupting the progress and ultimate resolution of this case.

**CONCLUSION**

The crux of the government's argument in support of its collateral attack on the D.C. Circuit's limited mandamus order in *Northern States I* is that the court overstepped its jurisdiction by adjudicating a contract claim. *Roberts* and *Megapulse*, however, compel a contrary conclusion. As the D.C. Circuit itself stated, it issued its limited mandamus order to enforce a statutory duty arising under the NWPA, not a contractual duty arising under the Standard Contract. As a matter of law, the Standard Contract cannot trump or displace the statutory rights of the petitioners in *Northern States I*, even though the court there made reference to the Standard Contract and even though the order might have had secondary or spillover consequences for the government in the future in connection with the Standard Contract. Thus, the D.C. Circuit had jurisdiction, including the requisite waiver of sovereign immunity, to issue the mandamus order.

Moreover, *Maine Yankee* and *Northern States III* render the issue moot in terms of its practical significance for this case.

The overarching reality here is that Congress in the NWPA chose to impose obligations on DOE directly by statute and indirectly by contract, the better to secure DOE's performance. Congress thereby chose to confer authority both on the regional courts of appeals and on the Court of Federal Claims to hear and decide cases or controversies arising in connection with the government's efforts to achieve the objectives of the NWPA. Necessarily, this allocation of authority must encompass those cases or controversies whose resolution by the courts of appeals might have secondary consequences for later actions in the Court of Federal Claims, or vice versa, since secondary consequences are almost inevitable in the circumstances of such a highly regulated program as the NWPA. Any rule to the contrary would be unworkable by reducing the

courts to an endless cycle of jurisdictional ping-pong. Given this Congressionally prescribed arrangement, the exercise of authority by the D.C. Circuit within the bounds of its designated territory does not "usurp" the authority or encroach upon the territory of the Court of Federal Claims, any more so than the exercise of such authority by the Court of Federal Claims within the bounds of its designated territory usurps that of the D.C. Circuit or the other regional courts of appeals.

For all of the foregoing reasons, the government's collateral attack is ill-taken and pointless. This Court should promptly reject it.

Dated: July 31, 2006

Respectfully submitted,

s/Alex D. Tomaszczuk by s/Daniel S. Herzfeld
Alex D. Tomaszczuk
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1650 Tysons Boulevard
McLean, Virginia 22102
Tel: (703) 770-7940
Fax: (703) 770-7901

*Counsel of Record for Plaintiff*
*Nebraska Public Power District*

*Of Counsel:*

Jay E. Silberg
PILLSBURY WINTHROP
SHAW PITTMAN LLP
2300 N Street, N.W.
Washington, D.C. 20037
Tel: (202) 663-8000

Walter F. Zenner
Daniel S. Herzfeld
Jack Y. Chu
PILLSBURY WINTHROP
SHAW PITTMAN LLP
1650 Tysons Boulevard
McLean, Virginia 22102
Tel: (703) 770-7900