IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| NEBRASKA PUBLIC POWER DISTRICT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 01-116C |
| | ) | (Judge Allegra) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

NOTICE OF SUPPLEMENTAL AUTHORITY

Defendant, the United States, respectfully submits this notice of supplemental authority to provide the Court with notice of the decision issued by the United States Court of Appeals for the Federal Circuit in PSEG Nuclear LLC v. United States, Fed. Cir. No. 05-5162, on September 29, 2006. A copy of the slip opinion of the decision is attached to this notice.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

HAROLD D. LESTER, JR.
Assistant Director

HEIDE L. HERRMANN
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 514-4325
Fax: (202) 307-2503

OF COUNSEL:

JANE K. TAYLOR
Office of General Counsel
U.S. Department of Energy
1000 Independence Ave., S.W.
Washington, D.C. 20585

ANDREW P. AVERBACH
Trial Attorney
U.S. Department of Justice
Washington, D.C. 20530

October 11, 2006

Attorneys for Defendant

# United States Court of Appeals for the Federal Circuit

05-5162

PSEG NUCLEAR, L.L.C.,
and PUBLIC SERVICE ELECTRIC AND GAS COMPANY,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

Jay E. Silberg, Pillsbury Winthrop Shaw Pittman LLP, of Washington, DC, argued for plaintiffs-appellants. With him on the brief were Alex D. Tomaszczuk, Daniel S. Herzfeld, and Jack Y. Chu, of McLean, Virginia.

Harold D. Lester, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With him on the brief were Peter D. Keisler, Assistant Attorney General; David M. Cohen, Director; Alan J. Lo Re, Senior Trial Counsel; and Heide L. Herrmann, Trial Attorney. Of counsel was Jane K. Taylor, United States Department of Energy, of Washington, DC.

Jerry Stouck, Greenberg Traurig, LLP, of Washington, DC, for amici curiae. With him on the brief was Robert L. Shapiro.

Appealed from: United States Court of Federal Claims

Senior Judge Bohdan A. Futey

# United States Court of Appeals for the Federal Circuit

05-5162

PSEG NUCLEAR, L.L.C.,
and PUBLIC SERVICE ELECTRIC AND GAS COMPANY,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

---

DECIDED: September 29, 2006

---

Before LOURIE, RADER, and PROST, Circuit Judges.

PROST, Circuit Judge.

PSEG Nuclear, L.L.C. and Public Service Electric and Gas Company (collectively "PSEG") appeal the decision of the United States Court of Federal Claims holding that the court lacked subject matter jurisdiction over PSEG's breach of contract claims. Fla. Power & Light Co. v. United States, 64 Fed. Cl. 37, 44 (2005) ("Florida Power I"). Because we hold that the Court of Federal Claims possesses subject matter jurisdiction over the claims under the Tucker Act, 28 U.S.C. § 1491(a)(1), we reverse.

BACKGROUND

I.

The breach of contract claims asserted in this case stem from contracts entered into between PSEG and the Department of Energy ("DOE") under the Nuclear Waste

Policy Act of 1982 ("NWPA" or "the Act"), 42 U.S.C. §§ 10101-10270. Congress enacted the NWPA in January 1983 in order to provide for collection and storage of radioactive waste and spent nuclear fuel (collectively "SNF") by the DOE. Under its scheme, section 302 of the Act authorized the DOE to enter into contracts with companies who generate or hold SNF provided that the companies pay into a fund used to pay for SNF collection and storage. 42 U.S.C. § 10222 (2000). The Act states in pertinent part:

> (a) Contracts
>
> (1) In the performance of his functions under this chapter, the Secretary [of Energy] is authorized to enter into contracts with any person who generates or holds title to high-level radioactive waste, or spent nuclear fuel, of domestic origin for the acceptance of title, subsequent transportation, and disposal of such waste or spent fuel. Such contracts shall provide for payment to the Secretary of fees pursuant to paragraphs (2) and (3) sufficient to offset expenditures described in subsection (d) . . . .
>
> . . .
>
> (5) <u>Contracts entered into under this section shall provide that</u>--
>
> (A) following commencement of operation of a repository, the Secretary shall take title to the high-level radioactive waste or spent nuclear fuel involved as expeditiously as practicable upon the request of the generator or owner of such waste or spent fuel; and
>
> (B) in return for the payment of fees established by this section, <u>the Secretary, beginning not later than January 31, 1998, will dispose of the high-level radioactive waste or spent nuclear fuel</u> involved as provided in this subchapter.

<u>Id.</u> (emphases added).

The DOE engaged in an administrative hearing process to create a single contract with identical terms ("the Standard Contract") for use with all parties contraction under section 302. The contract included the terms required by the NWPA and also

many additional terms. In general, the contract required companies with SNF to pay a fee that the DOE would use to develop an SNF storage facility and to collect and maintain the SNF at the facility.[1] Beginning in 1983, utility companies with SNF entered into contracts based on the Standard Contract and started paying into the fund while the DOE, presumably, began preparations to start collecting and disposing of the companies' SNF.[2]

Once it became clear that the DOE would not be prepared to begin SNF collection by the January 31, 1998 date in the Standard Contract, the contracting utility companies, including PSEG, brought suit for breach of the Standard Contract. To date, the government asserts that sixty-six such claims have been filed.

II.

One provision of the NWPA discusses judicial review of DOE actions taken pursuant to the NWPA. This provision, section 119, states:

> (a) Jurisdiction of United States courts of appeals
>
> (1) Except for review in the Supreme Court of the United States, the United States courts of appeals shall have original and exclusive jurisdiction over any civil action--
> (A) for review of <u>any final decision or action of the Secretary, the President, or the Commission under this part</u>; . . . .

42 U.S.C. § 10139 (2000) (emphasis added).

---

[1] The facility, still under development by the DOE, is commonly known as Yucca Mountain.

[2] PSEG entered into a contract based on the Standard Contract on June 13, 1983 and it alleges that it has paid at least $540 million into the SNF fund pursuant to its obligations under the contract.

In several cases, courts of appeals have asserted jurisdiction under section 119 over claims brought challenging DOE actions under the NWPA. The first of these cases was General Electric Uranium v. United States Department of Energy, 764 F.2d 896, 901 (D.C. Cir. 1985). In that case, the plaintiff alleged that the DOE abused its discretion when setting one-time fees under its authority under section 302(a)(3) of the NWPA. Although section 302(a)(3) fell within Title III of the Act and section 119 was in Title I and only conferred the courts of appeals with jurisdiction over agency actions "under this part," the D.C. Circuit held that it possessed jurisdiction over the case. The court reasoned that DOE's rule setting the one-time fee under section 302(a)(3) was "well within the class of agency actions reviewable under section 119(a)(1)(A)." Id. The court based this determination on three considerations: 1) the structure and language of the NWPA evinced congressional intent to vest the courts of appeals with jurisdiction over cases such as this one; 2) relevant legislative history did not compel a contrary result; and 3) policy considerations supported the conclusion. Id. Subsequently, the D.C. Circuit exercised original jurisdiction over several cases brought under the NWPA challenging agency actions without any discussion of its jurisdictional limits under the statute.[3]

---

[3] See Commonwealth Edison v. U.S. Dep't of Energy, 877 F.2d 1042, 1045 (D.C. Cir. 1989) (challenging the Treasury bill rate applied by DOE pursuant to the section 302(a)(4) fee provision); Nat'l Ass'n of Regulatory Utility Comm'rs v. U.S. Dep't of Energy, 851 F.2d 1424 (D.C. Cir. 1988); Wisconsin Elec. Power v. Dep't of Energy, 778 F.2d 1, 3 (D.C. Cir. 1985). In addition to the D.C. Circuit, other circuit courts have also asserted jurisdiction over cases brought under NWPA Title III. See Ala. Power Co. v. U.S. Dep't of Energy, 307 F.3d 1300 (11th Cir. 2002); Natural Res. Def. Council, Inc. v. Abraham, 244 F.3d 742 (9th Cir. 2001).

Subsequently, the DOE began to see claims under the Standard Contract for its failure to begin collecting SNF from the power companies by January 31, 1998. The DOE initially issued a regulation which stated that it "does not have an unconditional statutory or contractual obligation to accept nuclear waste beginning January 31, 1998 in the absence of a repository or interim storage facility constructed under the Act." 60 Fed. Reg. 21,793 (1995) ("Final Interpretation of Nuclear Waste Acceptance Issues"). However, in Indiana Michigan Power Co. v. Department of Energy, the D.C. Circuit held that, contrary to DOE's regulation, the agency was obliged to begin accepting SNF on January 31, 1998, even in the absence of a repository. 88 F.3d 1272, 1277 (D.C. Cir. 1996).[4] However, the court held that no remedy was available to the companies until after the deadline had passed. The court's jurisdiction over the case was not at issue.

The DOE proceeded by arguing that its failure to perform was an "unavoidable delay" under the contract and was therefore not compensable. A group of power companies sought a writ of mandamus from the D.C. Circuit requiring the DOE to comply with Indiana Michigan and begin SNF collection by the contracted deadline. In Northern States Power Co. v. United States Department of Energy, 128 F.3d 754 (D.C. Cir. 1997), the court held that this mandamus request was not proper because the companies had adequate remedies under the Standard Contract. However, so that the companies would be able to enforce the terms of the contract to effectuate the DOE's duty, the court issued a writ of mandamus forbidding the DOE from claiming, in proceedings under its contracts, that its failure to perform was "unavoidable" because a repository was not available.

---

[4] See also N. States Power Co. v. Dep't of Energy, No. 94-1457, 1995 WL

Soon after issuing the Northern States Power opinion just discussed, the D.C. Circuit issued an unpublished opinion clarifying its jurisdictional position in the case. In the opinion, the court sought to reiterate that the 1997 opinion merely "describes the nature of the DOE's obligation, which was created by the NWPA and undertaken by the DOE under the Standard Contract. It does not place the question of contract remedies in this court, nor set up this court as a source of remedies outside the Standard Contract." N. States Power Co. v. U.S. Dep't of Energy, No. 97-1064, 1998 WL 276581, at *2 (D.C. Cir. May 5, 1998). Shortly thereafter, several power companies with NWPA Standard Contracts, including PSEG, filed claims for breach of contract and damages for the DOE's failure to meet the January 1, 1998 deadline in the Court of Federal Claims.

Another company, Wisconsin Electric Power, however, continued to seek remedies at the D.C. Circuit. Wis. Elec. Power v. U.S. Dep't of Energy, 211 F.3d 646, 647 (D.C. Cir. 2000). Wisconsin Electric sought a writ of mandamus that the NWPA required both monetary and non-monetary remedies for breach of the Standard Contract. The company claimed the D.C. Circuit had jurisdiction under two bases: 1) its authority to enforce its prior mandates, or 2) directly under section 119 of the NWPA. The court held that it did not have jurisdiction under its authority to enforce prior mandates because while "[t]hose mandates prohibit the DOE from interpreting the NWPA and its contracts with utilities in a manner that would relieve the Department of its unconditional obligation to begin disposing of SNF on January 31, 1998; [they] expressed no opinion about the relief the DOE would have to provide for breach of that

---

479714, *1 (D.C. Cir. July 28, 1995) (dismissing the case for lack of final agency action).

obligation." Id. at 648. The court also refused to assert jurisdiction under section 119 of the NWPA directly because while the statute "grants the court jurisdiction over cases seeking review of: (1) final action taken by the agency pursuant to the NWPA, and (2) the agency's failure to take any action required by the NWPA[,] . . . a contract breach by the DOE does not violate a statutory duty. The Court of Federal Claims, not this court, is the proper forum for adjudicating contract disputes." Id. (citations omitted).

III.

Several breach of contract cases seeking damages for the DOE's failure to begin SNF collection on January 1, 1998 have proceeded at the Court of Federal Claims and at this court with no discussion of a lack of subject matter jurisdiction over the claims. See Me. Yankee Atomic Power Co. v. United States, 225 F.3d 1336 (Fed. Cir. 2000); N. States Power Co. v. United States, 224 F.3d 1361 (Fed. Cir. 2000). Then, in Boston Edison Co. v. United States, the Court of Federal Claims considered the issue of subject matter jurisdiction over the SNF cases and held that it did possess such jurisdiction. 64 Fed. Cl. 167 (2005), The court held that the plain text of section 119 granted original and exclusive jurisdiction to the courts of appeals in six instances, none of which relate to Title III of the Act. Id. at 179. Therefore, the court held that section 119 did not affect jurisdiction over actions taken under Title III, and accordingly did not displace the Court of Federal Claims of its Tucker Act jurisdiction over an alleged breach of contract. Id.

In 2005, a judge of the Court of Federal Claims sua sponte issued an order requesting the government and four utility plaintiffs with SNF claims on her docket to show cause why the claims should not be dismissed or transferred for lack of subject

matter jurisdiction. See Florida Power I, 64 Fed. Cl. at 44-63. After briefing by the parties, the court held that it lacked jurisdiction over the four breach of contract claims. Id. at 44. The court first adopted the D.C. Circuit's reasoning for its assertion of jurisdiction in General Electric, agreeing that DOE actions under Title III fall under the class of agency actions reviewable under section 119 of the NWPA. Id. at 40. It then rejected the D.C. Circuit's reasoning in Wisconsin Electric Power which held that section 119 did not vest the courts of appeals with jurisdiction over breach of contract cases under the NWPA. Id. at 63. The court noted that the D.C. Circuit could not confer jurisdiction on the Court of Federal Claims by disavowing jurisdiction contrary to statute. Id. Since the court's analysis of case law, legislative history, and the structure of the statute led it to conclude that only the courts of appeals possessed jurisdiction over all claims regarding the statutorily imposed deadline, she dismissed the case for lack of jurisdiction. Id. at 40.

In Florida Power I, the Court of Federal Claims further held that this court had identified "[t]wo circumstances in which statutory obligations in a contract [are] not enforceable by actions for breach of contract." 64 Fed. Cl. at 39 (citing City of Burbank v. United States, 273 F.3d 1370, 1377 (Fed. Cir. 2001)). The circumstances were 1) that the contract provisions were statutorily mandated, and 2) the existence of a statutory provision that actions taken pursuant to the statute "shall" be filed in the courts of appeals. The court found that here, the contract term was statutorily required and not negotiated, the contract was the result of administrative hearings and rule-making, and all evidence regarding the rule-making fall inside the administrative record. Id. at 40. Therefore, the inclusion of the term was action taken pursuant to the statute and the first

factor was present. Secondly, as in the statute at issue in City of Burbank, the court held that the NWPA required challenges to agency actions pursuant to the statute to be brought in the courts of appeals. It held that City of Burbank thus required that the courts of appeals had exclusive jurisdiction over all actions relating to that contract term and dismissed all four cases. Id. at 40.

Subsequently, the four SNF cases dismissed in Florida Power I were reassigned to other judges at the Court of Federal Claims. The plaintiffs filed motions for reconsideration in each of the four cases, arguing that the Court of Federal Claims did possess jurisdiction to hear their breach of contract claims. In three of the cases, the judges granted the motions for reconsideration and reversed the holding that the court lacked jurisdiction. In one, the court held that the language of section 119 and structure of the Act did not support courts of appeals jurisdiction over Title III cases through section 119. Duke Power v. United States, No. 98-485C, slip op. (Fed. Cl. Mar. 3, 2005). In another, the Court of Federal Claims judge adopted the reasoning in Boston Edison and Duke Power. Neb. Pub. Power Dist. v. United States, No. 01-116C, slip op. at 2 (Fed. Cl. Mar. 30, 2005). And in the third case, the judge agreed with the reasoning in the three opinions above in holding that it had subject matter jurisdiction over the claims. Fla. Power & Light Co. v. United States, 66 Fed. Cl. 93 (2005).

In the fourth case dismissed by Florida Power I, the case before us, the Court of Federal Claims denied the plaintiff's motion for reconsideration on the basis that no new evidence or law had been presented to justify reconsideration of the dismissal for lack of jurisdiction. PSEG Nuclear, L.L.C. v. United States, No. 01-551C, slip op. (Fed. Cl. Apr.

22, 2005). PSEG timely appealed the Court of Federal Claims' decision to this court. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).

DISCUSSION

The sole question before this court is whether the Court of Federal Claims possesses subject matter jurisdiction over PSEG's claims arising out of breach of the Standard Contract. "In a given case, whether Tucker Act jurisdiction exists is a question of law that we review without deference to the decision of the trial court." In re United States, No. 06-M806, --F.3d--, 2006 WL 2597835, at *5 (Fed. Cir. Sept. 11, 2006) (citing Core Concepts of Fla., Inc. v. United States, 327 F.3d 1331, 1334 (Fed. Cir. 2003); Clark v. United States, 322 F.3d 1358, 1362 (Fed. Cir. 2003)). We hold that the NWPA did not strip the Court of Federal Claims of its Tucker Act jurisdiction over PSEG's claims.

Both parties agree on appeal that the Court of Federal Claims erred in finding no jurisdiction, but propose different rationales as to why that court has jurisdiction. The parties agree that section 119 of the NWPA encompasses judicial review of actions taken under section 302, thereby conferring the courts of appeals with jurisdiction to review those actions. The government urges that section 302 required only a single DOE action, namely the inclusion of the January 1, 1998 deadline in the Standard Contract. Because the term was included in the contract, the government argues, any further claim regarding the deadline does not arise under section 302 of the NWPA, but is a contract performance dispute that falls within the Court of Federal Claims' Tucker Act jurisdiction. Meanwhile, while PSEG agrees that section 119 does not strip the Court of Federal Claims of jurisdiction over its breach of contract damages claim, it

argues that the courts of appeals continue to have jurisdiction under section 119 over agency actions under section 302. The difference in the parties' positions amounts to whether the courts of appeals continue to have jurisdiction to decide the propriety of agency actions under section 302 once the government includes the required language in the Standard Contract. Because this issue need not be resolved in this appeal, we merely agree with the parties that the Court of Federal Claims is vested with jurisdiction over PSEG's breach of contract case and that the NWPA does not strip the court of its Tucker Act jurisdiction.

The Tucker Act generally vests the Court of Federal Claims with jurisdiction to render judgment in government contract disputes. See 28 U.S.C. § 1491(a) (2000). This jurisdiction is supplanted only if, in a specific jurisdictional statute, Congress grants exclusive jurisdiction over a contract dispute to another court. City of Burbank, 273 F.3d at 1377. The NWPA did not strip the Court of Federal Claims of its jurisdiction over PSEG's claims because it did not vest that jurisdiction in another court.

The NWPA contains only one jurisdictional provision, section 119. Section 119 confers the courts of appeals with jurisdiction over, inter alia, "any final decision or action of the Secretary, the President, or the Commission under this part; [or] (B) alleging the failure of the Secretary, the President, or the Commission to make any

decision, or take any action, required under this part . . . ."[5] 42 U.S.C. § 10139 (2000). By its terms, section 119 only refers to agency actions required under Title I, Subtitle A of the NWPA, entitled "Repositories for Disposal of High-Level Radioactive Waste and Spent Nuclear Fuel." Therefore, section 119 of the NWPA confers jurisdiction over agency actions taken during development of a repository for SNF disposal.

The NWPA requires that contracts entered into between the DOE and persons holding title to SNF "shall provide that" the disposal shall begin "not later than January 31, 1998" in section 302. This section is in Title III of the Act, entitled "Other Provisions Relating to Radioactive Waste." We agree with the parties, the Court of Federal Claims in this case, and the D.C. Circuit that agency actions mandated under Title III which

---

[5] NWPA section 119(a)(1) states in its entirety:

> (a) Jurisdiction of United States courts of appeals
>
> (1) Except for review in the Supreme Court of the United States, the United States courts of appeals shall have original and exclusive jurisdiction over any civil action--
>
> (A) for review of any final decision or action of the Secretary, the President, or the Commission under this part;
> (B) alleging the failure of the Secretary, the President, or the Commission to make any decision, or take any action, required under this part;
> (C) challenging the constitutionality of any decision made, or action taken, under any provision of this part;
> (D) for review of any environmental impact statement prepared pursuant to the National Environmental Policy Act of 1969 (42 U. S.C. 4321 et seq.) with respect to any action under this part, or as required under section 10155(c)(1) of this title, or alleging a failure to prepare such statement with respect to any such action;
> (E) for review of any environmental assessment prepared under section 10132(b)(1) or 10155(c)(2) of this title; or
> (F) for review of any research and development activity under subchapter II of this chapter.

42 U.S.C. § 10139 (2000).

relate to the creation of repositories for spent nuclear fuel fall within the class of actions subject to review by the courts of appeals under section 119.

The remaining issue, therefore, is whether the breach of contract alleged by PSEG is also an agency action subject to review by the courts of appeals. PSEG's claims are for breach of the Standard Contract's provision requiring that the government begin SNF collection by the statutorily mandated date. It does not challenge an agency action taken under the agency's statutory mandate.

In this regard, it is instructive to consider our decision in City of Burbank, a breach of contract action against the Bonneville Power Administration ("BPA"). 273 F.3d 1370. There, we considered the scope of the judicial review provision contained in the Pacific Northwest Electric Power Planning and Conservation Act of 1980, 16 U.S.C. §§ 839-839h ("NPA"). The NPA permitted the BPA to enter into contracts which included some statutorily mandated provisions and other provisions that were freely negotiated between the parties. The judicial review provision of the NPA vested the Ninth Circuit with exclusive jurisdiction over certain claims challenging the BPA's actions. This court held that "where disputed contract provisions are statutorily mandated or are arrived at via an administrative hearing under the [Administrative Procedures Act] in which the pertinent facts are reflected in an administrative record, the Ninth Circuit possesses exclusive jurisdiction" under the NPA's judicial review provision. City of Burbank, 273 F.3d at 1380. However, we found that the provision did not strip the Court of Federal Claims of its Tucker Act jurisdiction because 1) the contract terms that the BPA had allegedly breached were not statutorily mandated, and 2) no pertinent facts relevant to the breach or the alleged damages were contained in

an administrative record. The factors applicable in City of Burbank also illuminate our analysis of PSEG's claims.

The contract term at issue, the January 1, 1998 date for beginning SNF collection, was clearly statutorily mandated. However, the key question is not whether the breached contract provision was statutorily mandated, but whether the claims at issue involve the agency's authority under that statutory mandate. As both parties note, section 302 of the NWPA only required that the DOE include certain obligations in its contracts. Therefore, judicial review as to whether the DOE properly incorporated these obligations within its contracts may fall within the jurisdiction conferred to the courts of appeals in section 119. However, the performance of and any damages for failure to meet those obligations were not provided for by statute. The claims at issue here involve only issues of whether the DOE breached its contractual obligations, and if so, to what damages, if any, PSEG is entitled for the breach. Because these are not within the DOE's statutory obligations under the NWPA, City of Burbank does not compel us to conclude that section 119 of the NWPA strips the Claims Court of its Tucker Act jurisdiction over PSEG's claim merely because the claim involves a statutorily mandated provision.

There is also no basis for concluding that PSEG's claims can be resolved by resort to the administrative record. The Court of Federal Claims in Florida Power I seemed to reach this conclusion because the DOE published its proposed Standard Contract in the Federal Register and used an administrative rulemaking to develop the terms of the contract. However, the DOE was not statutorily required to use the administrative rulemaking process or to even develop a Standard Contract. Rather, it

did so because it preferred developing a contract with standard provisions that could be used with multiple contractees to the extent practicable. See 48 Fed. Reg. 5458, 5459 (Feb. 4, 1983). DOE cannot unilaterally confer jurisdiction over contract claims to the courts of appeals by its choice to develop a contract through administrative rulemaking.

In addition, any damages here will require extensive factual findings outside the administrative record. For example, the Standard Contract contains many provisions which were not statutorily mandated but will affect any measurement of damages.[6] In addition, any necessary calculation of damages for different contracting utilities will require individual inquiries into when their SNF would have been collected and stored. Where damages for breach are not within the administrative record, jurisdiction properly lies with the Court of Federal Claims, which is equipped to hear evidence and determine such damages. See General Electric, 764 F.2d at 903 (concluding that section 119 of the NWPA should confer courts of appeals with exclusive jurisdiction over "judicial review of administrative agency actions" considering "there are no factual findings to be made" and "the court of appeals is fully able to consider" an administrative record). Any issues related to the types of damages permitted under the contract, if any, and the extent of those damages can be resolved by solely resolving the DOE's contractual obligations.

---

[6] For example, the government cites the following sections in the Standard Contract, among others, that are relevant to these claims but not statutorily mandated: Article V regarding the procedure through which different nuclear utilities would receive their SNF acceptance allocations; Article VI.B regarding the order in which SNF would be accepted from nuclear utilities; Articles VI.A and Appendix E concerning the technical requirements that SNF being accepted must satisfy to be accepted as part of the initial acceptance queue. See 10 C.F.R. § 961.11.

CONCLUSION

As in City of Burbank, there is no statutory provision conferring jurisdiction over PSEG's claims on another court. Further, these claims do not require the Court of Federal Claims to inquire solely into the administrative record, but to resolve factual issues regarding what damages are provided for by the parties in the contract. Therefore, we hold that the Court of Federal Claims has jurisdiction under the Tucker Act to hear PSEG's breach of contract claims.

COSTS

No costs.

REVERSED