IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| NEBRASKA PUBLIC POWER DISTRICT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 01-116C |
| | ) | (Judge Allegra) |
| THE UNITED STATES, | ) | |
| | ) | |
| Defendant. | ) | |

DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR CERTIFICATION OF THE COURT'S OCTOBER 31, 2006 OPINION AND ORDER FOR INTERLOCUTORY APPEAL, AND DEFENDANT'S MOTION TO SUSPEND SUBSTANTIVE BRIEFING ON THE MERITS OF THE "UNAVOIDABLE DELAYS" DEFENSE PENDING RESOLUTION OF THE INTERLOCUTORY APPEAL ISSUE

Defendant, the United States, respectfully responds to the plaintiff's motion to certify this Court's opinion, dated October 31, 2006, for interlocutory appeal. For the reasons explained below, we do not oppose that motion. Further, for the reasons explained below, we respectfully request that the Court defer the briefing on the substantive merits of the "unavoidable delays" defense until the resolution of any interlocutory appeal.

DISCUSSION

In April 1983, the Department of Energy ("DOE"), in furtherance of its obligations pursuant to Section 302(a) of the Nuclear Waste Policy Act of 1982 ("NWPA"), 42 U.S.C. §§ 10101-10270, published for notice and comment in the Federal Register a proposed standard contract for disposal of spent nuclear and/or high level radioactive waste (the "Standard Contract"). The Standard Contract, in accordance with Section 302(a)(5) of the NWPA, provided that DOE would begin accepting spent nuclear fuel ("SNF") from nuclear utility contract holders by January 31, 1998. 10 C.F.R. § 961.11, Art. II. However, in the Standard

Contract terms that it promulgated, DOE included a contract provision entitled the "Unavoidable Delays" clause, which provided that neither party would be liable for an inability to perform contractual obligations if performance was unavoidably delayed by "circumstances beyond the reasonable control of the purchaser or DOE — such as . . . acts of Government in either its sovereign or contractual capacity." 10 C.F.R. § 961.11, Art. IX.A.

In 1994, DOE, recognizing that it would not have a Federal repository available by 1998 in which to dispose of the nuclear utilities' SNF, issued a Notice of Inquiry, in which it identified its "preliminary view" that DOE had "no statutory obligation to accept [SNF] beginning in 1998 in the absence of an operational repository or other facility constructed under the [NWPA] . . . ." 59 Fed. Reg. 27007, 27008 (May 25, 1994). After receiving comments from interested parties, DOE issued a Final Interpretation on May 3, 1995, which included DOE's belief that the January 31, 1998 date in the Standard Contract for beginning SNF acceptance was conditional and that, if it were unconditional, the "Delays" clause of the Standard Contract would provide an administrative remedy for DOE's failure to begin acceptance. 60 Fed. Reg. 21793 (May 3, 1995). Pursuant to the "Judicial Review" provision of the NWPA, 42 U.S.C. § 10139, various nuclear utilities and state regulatory bodies challenged DOE's interpretation in the United States Court of Appeals for the District of Columbia Circuit. The court of appeals in Indiana Michigan Power Co. v. Department of Energy, 88 F.3d 1272, 1277 (D.C. Cir. 1996), determined "that section 302(a)(5)(B) [of the NWPA] create[d] an obligation in DOE, reciprocal to the utilities' obligation to pay, to start disposing of the SNF no later than January 31, 1998," and remanded the matter to DOE for further action consistent with that holding.

In late 1996, subsequent to the issuance of the Indiana Michigan decision, DOE issued letters to utilities holding NWPA disposal contracts acknowledging a contractual obligation to begin accepting SNF for disposal by January 31, 1998, but advising that it would be unable to do so by that date. See Northern States Power Co. v. United States Dep't of Energy, 128 F.3d 754, 757 (D.C. Cir. 1997), cert. denied, 525 U.S. 1016 (1998). These letters solicited the views of the recipients regarding the best means to accommodate the anticipated delay in SNF acceptance. Id. In January 1997, while the utilities were responding to these letters, a number of utilities and state agencies filed separate petitions for writs of mandamus in the D.C. Circuit that, among other things, sought to compel DOE to begin accepting SNF by January 31, 1998. See Northern States Power Co. v. United States Dep't of Energy, 128 F.3d 754, 757 (D.C. Cir. 1997), cert. denied, 525 U.S. 1015 & 1016 (1998). On June 3, 1997, during the pendency of briefing on the pending request for a writ of mandamus, DOE, after considering the responses that it received, informed the Standard Contract holders that it viewed its inability to accept SNF beginning January 31, 1998, to constitute an "unavoidable delay" under Article IX.A of the contracts, but that it nonetheless was willing to consider possible contract amendments to mitigate the delay's effect. Id.[1] The petitioners in Northern States provided a copy of that June 3, 1997 letter to the D.C. Circuit.

On November 14, 1997, the D.C. Circuit issued its decision in Northern States. Asserting jurisdiction over DOE's interpretation of Article IX of the Standard Contract as

[1] A copy of the contracting officer's June 3, 1997 letter to the plaintiff in this case, Nebraska Public Power Company ("NPPD"), was filed with the Court on October 13, 2005, in response to the Court's October 5, 2005 order.

incidental to the court's enforcement of its prior mandate in Indiana Michigan, the Northern States court granted the petitions for mandamus in part by ordering DOE to

> proceed with contractual remedies in a manner consistent with the NWPA's command that it undertake an unconditional obligation to begin disposal of SNF by January 31, 1998. More specifically, . . . DOE [is precluded] from concluding that its delay is unavoidable on the ground that it has not yet prepared a permanent repository or that it has no authority to provide storage in the interim.
>
> This necessarily means, of course, that DOE not implement any interpretation of the Standard Contract that excuses its failure to perform on the grounds of "acts of Government in either its sovereign or contractual capacity."

Northern States, 128 F.3d at 760.

The Solicitor General filed a petition for a writ of certiorari with the United States Supreme Court, arguing that the D.C. Circuit had overstepped its jurisdiction and, in issuing the writ of mandamus, impinged upon the jurisdiction of this Court to interpret and decide contract issues. Nevertheless, the Supreme Court declined to grant the petition.

As the Court is aware, the instant case seeks contract damages based on DOE's failure to accept SNF for disposal. The Government continues to believe that the contract's "Unavoidable Delays" clause eliminates or limits its liability in this situation. However, the D.C. Circuit's mandamus order in Northern States arguably limits the ability of the Government to present its defense based on that clause to this Court. In its October 31, 2006 order, this Court held that the D.C. Circuit lacked jurisdiction to issue the mandamus order and that, because of an accompanying absence of any waiver of sovereign immunity before that court, the Government's ability to present its defenses should be unimpaired.

Despite the fact that the Government has prevailed on this issue, it does not oppose certification of the October 31, 2006 Order for interlocutory review under 28 U.S.C. § 1292(d)(2). The conflicting orders of the Court of Appeals for the D.C. Circuit and this Court place DOE in an awkward, if not untenable, position. Fully articulating its contractual defenses here risks running afoul of the D.C. Circuit's writ of mandamus, while failing to do so risks incorrectly losing those defenses. Resolution of the issues discussed in the Court's October 31, 2006 order by a reviewing court (or courts) would be beneficial before forcing DOE to choose which court's order to follow. For the same reasons, we respectfully request that the Court allow us to defer substantive briefing on the merits of the "unavoidable delays" defense until the Court resolves whether to certify its October 31, 2006 decision for interlocutory appeal and, if it does, the resolution of any such appeal.

## CONCLUSION

For the foregoing reasons, the United States does not oppose the plaintiff's motion for certification of the Court's October 31, 2006 opinion and order for interlocutory appeal and, further, respectfully requests that the Court defer any briefing on the substantive merits of the "unavoidable delays" defense.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

s/ David M. Cohen
DAVID M. COHEN
Director

s/ Harold D. Lester, Jr.
HAROLD D. LESTER, JR.
Assistant Director
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L Street, N.W.
Washington, D.C. 20530
Tele: (202) 616-0478
Fax: (202) 307-2503

December 11, 2006

Attorneys for Defendant

CERTIFICATE OF FILING

I hereby certify that on this 11th day of December, 2006, a copy of foregoing "DEFENDANT'S RESPONSE TO PLAINTIFF'S MOTION FOR CERTIFICATION OF THE COURT'S OCTOBER 31, 2006 OPINION AND ORDER FOR INTERLOCUTORY APPEAL, AND DEFENDANT'S MOTION TO SUSPEND SUBSTANTIVE BRIEFING ON THE MERITS OF THE 'UNAVOIDABLE DELAYS' DEFENSE PENDING RESOLUTION OF THE INTERLOCUTORY APPEAL ISSUE " was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

s/ Harold D. Lester, Jr.